Kurt A. Benshoof
1716 N 128th ST
Seattle, WA 98133
(206) 460-4202
kurtbenshoof@gmail.com

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| A.R.W., *minor son,*<br>by and through his father,<br>Kurt Benshoof, *Pro Se*<br><br>                Plaintiffs,<br><br>vs.<br><br>        Anthony Fauci, Rochelle Walensky, Stephen Hahn, Robert Califf, Janet Woodcock, William Gates, Jay Inslee, Umair Shah, Dow Constantine, Dennis Worsham, Dan Satterberg, Kathleen O'brien, Jim Rogers, Paul Eagle, Sean O'donnel, Brad Moore, Jason Holloway, David Keenan, Denise Fuseini, Danielle Anderson, Ronda Bliey, R.C. Mcmenamy, S.P. Coffin, I.J. Clark, B.J. Mcclennen, Gregory Narver, Paula Montgomery, Justin Booker, Jenny Durkan, Bruce Harrell, Peter Holmes, Ann Davison, Sarah Macdonald, Christopher Karr, Willie Gregory, Anita Crawford-Willis, Mary Lynch, | Case No. <u>2:22-cv-01281-LK</u><br><br>**PETITION FOR**<br>**DECLARATORY JUDGMENT**<br>and<br>**EMERGENCY INJUNCTION**<br>and<br>**VERIFIED CLAIM FOR DAMAGES** |

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED
CLAIM FOR DAMAGES - 1

Adrian Diaz, Brian Coomer, Robert
McClelland, Suzanne Parton, David
Sullivan, Dain Munich, Nicholas
Hughes, Nicholas Alpaugh, Rande
Christiansen, Ryan Ellis, Sgt. Bruce,
Mr. Boyd, Gabriel Ladd, Trevor
Willenberg, Mr. Bauer, Mr. Hogg, Mr.
Weiss, Mr. Williams, Mr. Alden, Mr.
Wallace, A. Clark, Katrina O'dell, Eric
Beseler, Eric Beseler, Jessica Owen,
Magalie Lerman, Laura Rose Murphy,
Dawn Samuelson, Saebyn Cooper,
Owen Hermsen, Nathan Cliber, Amy
Franklin-Bihary, John Tomlinson, Aric
Bomsztyk, Blair Russ, Anthony
Marinella, Andrew Morris, Christina
Jane Does, Laura Jane Doe, James
Ervin, Sprout John Doe #10, Sprouts
John Doe #11, Sprouts Jane Doe #12,
Sprouts CEO Jane/John Doe #13
                    Defendants

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED
CLAIM FOR DAMAGES - 2

# I.   <u>INTRODUCTION</u>

1. COMES NOW Kurt A. Benshoof, ("Plaintiff" herein), in this court of record, a father and grandfather, a church minister for the poor and downtrodden, seeking remedy for himself and his beloved 13-year-old son, A.R.W., (together "Plaintiffs" herein).

2. The harms suffered by A.R.W. have harmed Plaintiff, and the harms suffered by Plaintiff have harmed A.R.W., such is the nature of two empathetic souls, bonded for life as father and son.

3. This pleading is brought before this court as a sacrament of morals and ethics embodied in both the spirit and letter of our laws, born out of Plaintiff's unwavering love and devotion to the safety and well-being of A.R.W., and for all children: a cure for past harms, an intervention for present harms, and a prevention against future harms.

4. The paramount issues are those of bodily autonomy, informed consent, and the sacred rights of fathers to nurture, steward, and safeguard their child. All ancillary claims are proximal to the aforementioned issues.

5. Defendants have have repeatedly subjected Plaintiffs to coerced and medical experimentation.  These abuses were violative of international law and human decency.

6. Plaintiff has been assaulted, arrested and prosecuted, for simply trying to protect his son.

7. Plaintiffs have been separated for more than a year, and are now completely cut off from any communication whatsoever, and A.R.W. is now in the court ordered custody of two of his abusers.

8. The Nuremberg Code irrevocably established universal law of informed consent.

9. Knowledge, mental capacity, and consent are mandatory in all times, in all circumstances, and in all places.

10. Whether 1942 or 2022, whether peacetime or wartime, whether in Germany or Georgia, universal law demands informed consent.

11. Universal laws are inviolable, including times of so called emergency. The Geneva Conventions codified this to prevent abuses even in the fog of war, as fear erodes reason.

12. Not even a cognizant adult prisoner of war can be coerced into medical experimentation. Therefore, the idea that a healthy child could be coerced into an experiment medical treatment at their middle school is repugnant to international law. The very notion defiles human decency.

13. The Geneva Conventions codified that it is a war crime to coerce a prisoner of war into being a subject of medical experimentation.

14. Even an enemy is protected by international law from coerced medical experimentation.

15. It is abhorrent, a crime against humanity, to coerce a healthy child into being subjected to a medical experiment.

16. International law protects children not only from overzealous authorities but also from well-intentioned parents.

17. Governments and schools across our nation have created, allowed, enabled, or enforced policies that have subjected millions of children to medical experimentation without informed consent, including A.R.W.

18. Plaintiff's life has been devoted to teaching his son, in word and deed, the principles of truth, honor, compassion, and devotion, as well as the moral duty of sacrifice for these principles.

19. A.R.W., if asked who Plaintiff's greatest hero is, would answer "Martin Luther King," because Martin Luther King, Jr. drew upon his compassionate faith for the courage and resolve to defend the defenseless, to speak for those who had no voice, to do so through peaceful disobedience to unjust laws and policies, and to do so knowing that it could cost him his life. That is the truth of a father's love.

20. More than a year ago A.R.W., at the transitional age of 12, was separated from his father by the mother and stepmother of A.R.W., Defendants Owen

and Lerman, by their lies to police, and perjurious and slanderous statements in Family Court.

21. The legislative intent is stated thus in Revised Code of Washington 26.09.002: "the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm." First do no harm.

22. The precept of "first do no harm" (attributed to Hippocrates) has been fundamental to every ethical practice for more than two thousand years, from Sir William Blackstone's "It is better that ten guilty persons go free, than one innocent suffer" to Yogi Berra's "If it ain't broke, don't fix it."

23. This past year's custody events visited upon Plaintiffs have surfaced an abusive inversion of compassion and common sense throughout every agency delegated the authority, and responsibility, to safeguard our rights and our children.

24. This suit is not brought in anger for retribution or recompense.

25. This suit is brought out of compassion and love, for the recognition of, and respect for, the moral imperative of every adult; the duty as elders is to safeguard all children with the shield of morals and ethics embodied in the principle of first do no harm.

26. As we instruct children playing in the sandbox to act in accordance with the Golden Rule, so must we expect adults of able mind and body be held to, at minimum, the same ethical standard as stewards and role models, lest we devolve as a species into the callous ignorance of hypocrisy.

27. Plaintiffs have suffered irreparable harms caused by Defendants, many of which are presently ongoing, and pose the known risk of causing permanent disability or death to A.R.W. without immediate intervention.

28. This pleading is written out of necessity to seek remedy for the injustices and crimes that have been systemically committed against Plaintiff for simply trying to follow the principles of MLK, for defending the principle of "first do no harm," and for trying to nurture his son and protect him from ignorance, lies, abuse.

29. Plaintiff will show that he and A.R.W., were subjected to deprivation of rights secured by the United States Constitution, under the color of state law.

30. Through common sense, diligent scrutiny, methodical questions, and deductive reasoning, Plaintiff will present clear and convincing evidence that Defendant Gates has planned and orchestrated the largest racketeering, influence and corrupt organization in American history, knowingly and willfully causing, directly or indirectly, the deaths of untold

thousands and the impoverishment of millions, while enriching himself and unknown others.

31. Plaintiff will similarly show that through the creation, approval, enablement, implementation, or enforcement, of policies, guidelines, proclamations, or orders, state actor Defendants, or individuals jointly engaged with state actors, acted, or neglected to act, in furtherance, directly or indirectly, of Defendant Gates' schemes of fraud.

32. Plaintiff possesses no secret documents, nor superior intellect, nor will Plaintiff present stunning revelations.  What Plaintiff will show is well within the intellectual grasp of an average high school student, and the evidence exists in the public domain.

33. Plaintiff will show that said deprivation of constitutionally secured rights amounted to predicate acts, practiced, and participated in, by all Defendants, most of them public servants.

34. Plaintiff will show that private individuals Defendants were acting in a proximal nexus of joint action with the public servants, under color of state law.

35. Plaintiff will show that public servant Defendants exceeded their authority granted to them by the United States Constitution, and the Washington

Constitution, and ultimately by We the People, and as such their actions were *ultra vires.*

36. Plaintiff will show that Defendants failed to exercise objective reasonableness in ways that shock the conscience, violating the constitution and clearly established state and federal laws.

37. Plaintiff will show that the above referenced combination of acts amounted to a criminal enterprise, perpetrated in concert by Defendants toward the outcome of depriving Plaintiffs of their constitutionally secured rights, in order to reduce population, secure federal funding, professional approval or advancement, favors, financial gain, or control of Plaintiffs, or others similarly situated.

38. Winston Churchill is attributed to saying, "If I'd had more time, I would have written you a shorter letter." Exigent matters involving A.R.W.'s safety have forced Plaintiff to submit this to the court expeditiously.

39. Plaintiff is a man devoted to truth and honor and has endeavored to be accurate. Plaintiff will earnestly correct any error that may be brought to his attention and will welcome all constructive criticisms from the court.

40. The following issues have given rise to the causes of action contained herein:

   a) Violation of informed consent regarding Emergency Use Authorization ("EUA" herein) experimental medical treatments and devices, protected by the Nuremberg Code.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 9

b) Violation of a father's right of association with his son, right of free speech, right to petition for redress of grievances, and right of freedom of conscience, protected by the 1st Amendment of the U.S. Constitution.

c) Violation of the right to privacy, to not to be subject to unreasonable search and seizure, protected by the 4th Amendment of the U.S. Constitution.

d) Deprivations of life, liberty, or property without due process, protected by the 5th Amendment of the U.S. Constitution.

e) Violation of the right, at Common Law, to a Jury Trial, protected by the 7th Amendment of the U.S. Constitution.

f) Violation of non-enumerated Rights, protected by the 9th Amendment of the U.S. Constitution.

g) Violation of the protection of rights against state infringements, protected by the 14th Amendment of the U.S. Constitution.

# I.    PARTIES

41. The Plaintiffs, Kurt Benshoof and his 13 year-old son, A.R.W.

42. Plaintiff has designated Children's Health Defense, founded by Robert F. Kennedy, Jr., either by 10 percent financial interest in Champerty, or Maintenance by charity, to litigate all causes of action herein on behalf of A.R.W., including full vestment of all rights, privileges, and authorities of

Plaintiff, in the event that Plaintiff experiences an untimely or unforeseen death, disappearance, or solitary confinement.

43. Defendant Anthony Fauci, a man, in his official and private capacity, is a citizen of the United States, employed as Director of the National Institute of Allergy and Infectious Diseases ("NAIAD" herein), and can sue and be sued.

44. Defendant Rochel Walensky, a woman, in her official and private capacity, is a citizen of the United States, employed as Director of the Centers for Disease Control and Prevention ("CDC" herein), and can sue and be sued.

45. Defendant Robert Califf, a man, in his official and private capacity, is a citizen of the United States, employed as Commissioner of the Food and Drug Administration ("FDA" herein), and can sue and be sued.

46. Defendant Janet Woodcock, a woman, in her official and private capacity, is a citizen of the United States, employed as Commissioner of the FDA, and can sue and be sued

47. Defendant Stephen Hahn, a man, in his official and private capacity, is a citizen of the United States, employed as Commissioner of the FDA, and can sue and be sued.

48. Defendant William Gates, a man, in his private capacity, is a citizen of the United States, is a part-time resident of Washington, is co-founder of Microsoft, the Bill and Melinda Gates Foundation ("BMGF" herein), is directly involved with the Coalition for Epidemic Preparedness Innovations,

("CEPI" herein), which was co-founded and co-funded by the BMGF, and can sue and be sued.

49. Defendant Jay Inslee, a man, in his official and private capacity, is a citizen of the State of Washington, employed as Governor of Washington, and can sue and be sued.

50. Defendant Umair Shah, a man, in his official and private capacity, is a citizen of the State of Washington, employed as Secretary of Washington Department of Health ("DoH" herein), and can sue and be sued.

51. Defendant Dennis Worsham, a man, in his official and private capacity, is a citizen of the State of Washington, employed as Interim Directory of King County Department of Public Health, and can sue and be sued.

52. Defendant Dow Constantine, a man, in his official and private capacity, is a citizen of the State of Washington, employed as Executive of King County, and can sue and be sued.

53. Defendant Dan Satterberg, a man, in his official and private capacity, is a citizen of the State of Washington, employed as King County Prosecuting Attorney, and can sue and be sued.

54. Defendant Kathleen O'Brien, a woman, in her official and private capacity, is a citizen of the State of Washington, employed in the King County Prosecutors Office, and can sue and be sued.

55. Defendant Sean O'Donnel, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Judge for King County Superior Court, and can sue and be sued.

56. Defendant Paul Eagle, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Judge or Commissioner for King County Family Court, and can sue and be sued.

57. Defendant Brad Moore, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Judge or Commissioner for King County Family Court, and can sue and be sued.

58. Defendant Jason Holloway, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Commissioner for King County Family Court, and can sue and be sued.

59. Defendant David Keenan, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Judge for King County Family Court, and can sue and be sued.

60. Defendant Steve Rosen, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a Judge for King County Superior Court, and can sue and be sued.

61. Defendant Denise Fuseini, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a clerk for King County Superior Court, and can sue and be sued.

62. Defendant Danielle Anderson, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a clerk for King County Superior Court, and can sue and be sued.

63. Defendant Ronda Bliey, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as Public Access Specialist for King County Superior Court Administration.

64. Defendant Mitzi Johanknecht, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff, and can sue and be sued.

65. Defendant Patti Cole-Tindall, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff, and can sue and be sued.

66. Defendant R.C. McMenamy, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff Deputy, and can sue and be sued.

67. Defendant S.P. Coffin, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff Deputy, and can sue and be sued.

68. Defendant I.J. Clark, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff Deputy, and can sue and be sued.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 14

69. Defendant B.J. McClennen, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Sheriff Deputy, and can sue and be sued.

70. Defendant KC John Doe #4, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Jail employee, and can sue and be sued.

71. Defendant KC John Doe #5, a man, in his official and private capacity, is a citizen of the State of Washington, employed as a King County Jail employee, and can sue and be sued.

72. Defendant KC Jane Doe #1, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a King County Jail medical staff employee, and can sue and be sued.

73. Defendant KC Jane Doe #2, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as a King County Jail medical staff employee, and can sue and be sued.

74. Defendant Brent Jones, a man in his official and private capacity, is a citizen of the State of Washington, employed as Superintendent of Seattle Public Schools ("SPS" herein), and can sue and be sued.

75. Defendant Gregory Narver, a man in his official and private capacity, is a citizen of the State of Washington, employed as Chief Legal Counsel for Seattle Public Schools, and can sue and be sued.

76. Defendant Paula Montgomery, a woman, in her official and private capacity, is a citizen of the State of Washington, employed as the Principal at Jane Addams Middle School, and can sue and be sued.

77. Defendant Devin Booker, a man, in his official and private capacity, is a citizen of the State of Washington, employed as Vice-Principal at Jane Addams Middle School, and can sue and be sued.

78. Defendant Jenny Durkan, a woman in her official and private capacity, a citizen of the State of Washington, formerly employed as Mayor of City of Seattle, and can sue and be sued.

79. Defendant Bruce Harrell, a man in his official and private capacity, a citizen of the State of Washington, employed as Mayor of City of Seattle, and can sue and be sued.

80. Defendant Peter Holmes, a man, in his official and private capacity, is a citizen of the State of Washington, employed with the Seattle Attorneys Office, and can sue and be sued.

81. Defendant Ann Davison, a woman, in her official and private capacity, is a citizen of the State of Washington, employed with the Seattle Attorneys Office, and can sue and be sued.

82. Defendant Sarah MacDonald, a woman, in her official and private capacity, is a citizen of the State of Washington, formerly employed with the Seattle Attorneys Office, and can sue and be sued.

83. Defendant Christopher Karr, a man, in his official and private capacity, is a citizen of the State of Washington, employed with the Seattle Attorneys Office, and can sue and be sued.

84. Defendant Willie Gregory, a man, in his official and private capacity, is a citizen of the State of Washington, employed by CITY OF SEATTLE as a Seattle Municipal Court ("SMC" herein) Judge, and can sue and be sued.

85. Defendant Anita Crawford-Willis, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by CITY OF SEATTLE as a Seattle Municipal Court Judge, and can sue and be sued.

86. Defendant Mary Lynch, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by CITY OF SEATTLE as a Seattle Municipal Court Judge, and can sue and be sued.

87. Defendant Catherine McDowall, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by CITY OF SEATTLE as a Seattle Municipal Court Judge, and can sue and be sued.

88. Defendant Adrian Diaz, a man, in his official and private capacity, is a citizen of the State of Washington, employed by City of Seattle as Chief of Seattle Police Department ("SPD" herein), and can sue and be sued.

89. Defendant Brian Coomer, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

90. Defendant Robert McClelland, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

91. Defendant David Sullivan, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

92. Defendant Dain Munich, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

93. Defendant Nicholas Hughes, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

94. Defendant Nicholas Alpaugh, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

95. Defendant Suzanne Parton, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

96. Defendant Ryan Ellis, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

97. Defendant Rande Christensen, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

98. Defendant Mr. Bruce, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

99. Defendant Gabriel Ladd, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

100. Defendant Trevor Willenberg, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

101. Defendant Yvonne Ortiz, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

102. Defendant Mr. Bauer, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

103. Defendant SPD John Doe #1, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

104.     Defendant Mr. Hogg, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

105.     Defendant Mr. Weiss, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

106.     Defendant Mr. Williams, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

107.     Defendant SPD John Doe #2, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

108.     Defendant SPD John Doe #3, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

109.     Defendant J. Wallace, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

110.     Defendant J. Alden, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

111.    Defendant Katrina Odell, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

112.    Defendant Ashlie Clark, a woman, in her official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

113.    Defendant Mr. Chu, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

114.    Defendant Eric Beseler, a man, in his official and private capacity, is a citizen of the State of Washington, employed by the Seattle Police Department, and can sue and be sued.

115.    Defendant Jessica Owen, a woman, in her private capacity, is a citizen of the State of Washington, and can sue and be sued.

116.    Defendant Magalie Lerman, a woman, in her private capacity, is a citizen of the State of Washington, and can sue and be sued.

117.    Defendant Owen Hermsen, a man, in his private capacity, is a citizen of the State of Washington, and can sue and be sued.

118.    Defendant Dawn Samuelson, a woman, in her private capacity, is a citizen of the State of Washington, and can sue and be sued.

119.     Defendant Laura Rose Murphy, a woman, in her private capacity, is a citizen of the State of Washington, and can sue and be sued.

120.     Defendant Saebyn Cooper, a woman, in her private capacity, is a citizen of the State of Washington, and can sue and be sued.

121.     Defendant Nathan Cliber, a man, in his private capacity, is a citizen of the State of Washington, a family law attorney with Seattle Divorces Services, is representing Defendant Owen, and can sue and be sued.

122.     Defendant John Tomlinson, a man, in his private capacity, is a citizen of the State of Washington, a partner of Tomlinson, Bomsztyk & Russ, represented Defendant Owen, and can sue and be sued.

123.     Defendant Aric Bomsztyk, a man, in his private capacity, is a citizen of the State of Washington, a partner of Tomlinson, Bomsztyk & Russ, represented Defendant Owen, and can sue and be sued.

124.     Defendant Blair Russ, a man, in his private capacity, is a citizen of the State of Washington, a partner of Tomlinson, Bomsztyk & Russ, represented Defendant Owen, and can sue and be sued.

125.     Defendant Anthony Marinella, a man, in his private capacity, is a citizen of the State of Washington, an attorney at Tomlinson, Bomsztyk & Russ, and can sue and be sued.

126.    Defendant Andrew Morris, a man, in his private capacity, is a citizen of the State of Washington, an attorney at Tomlinson, Bomsztyk & Russ, and can sue and be sued.

127.    Plaintiffs reserved the right to amend the list of Defendants to include others heretofore unknown, as the process of discovery uncovers the names and conduct of other actors liable for the claims herein.

## REQUEST FOR ALTERNATIVE SERVICE

128.    Inasmuch as some Defendants, though sued in their individual capacities, are public officials, Plaintiff requests leave of the court to allow service of those Defendants at their places of public employment.

129.    Plaintiff does not have the home address of any public official and will not seek the same out of respect for their privacy, unless required to give personal service to said Defendants' homes.

## II.    JURISDICTION AND VENUE

130.    This court has federal question jurisdiction over Plaintiffs 42 U.S.C. §§ 1982; 1983; 1985(2)(3); 1986 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a), because the Defendants have violated Plaintiffs' property rights, civil rights, and privileges and immunities secured by the United States Constitution and federal law.

131.    Plaintiff brings this action under 42 USC §1983 against individuals employed by the FDA, CDC, State of Washington, City of Seattle, Seattle Public Schools, King County, or private individuals and their attorney, alleging that Defendants, in joint action, have deprived Plaintiffs of the rights and protections secured by the First, Fourth, Fifth, Seventh, Ninth, and Fourteenth Amendments of the US Constitution under color of law of policies, practices, rules, proclamations, procedures, codes or statutes of the State of Washington, Washington State Department of Health, City of Seattle, Seattle Police Department, Seattle City Attorneys Office, Seattle Municipal Court, King County, King County Public Health, King County Prosecutors Office, King County Superior Court, King County Family Court, and Seattle Public Schools.

132.    42 USC § 1982 Property rights of citizens.

133.    42 USC § 1985 (2)(3) Conspiracy to interfere with civil rights.

134.    42 USC § 1986 Action for neglect to prevent.

135.    This court has jurisdiction and is authorized to grant declaratory relief under the Declaratory Relief Act 28 U.S.C. §§ 2201 and 2202, and implemented through the Federal Rules of Civil Procedure, Rule 57, and 28 U.S.C. § 1331 (federal question jurisdiction)

136.    Supplemental jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1367 over the state law claims which are so related and intertwined to the

federal claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

137.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this judicial district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Western Washington.

138.    Pursuant to 28 U.S.C. § 1391(e), venue is proper in the Western District of Washington, where Plaintiff Kurt Benshoof resides. Under 5 U.S.C. § 703, venue is proper in any court of competent jurisdiction.

139.    This Court is authorized to grant Plaintiff's prayer for preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## NATURE OF CLAIMS

140.    This action arises under 42 U.S.C. § 1983 to redress deprivations of Plaintiffs' rights through acts and/or omissions of Defendants committed under color of law. Specifically, Defendants deprived Plaintiffs of their rights under the First, Fourth, Fifth, Seventh, and Fourteenth Amendments to the Constitution for the United States of America.

141.    Additionally, Plaintiff relies upon the Court's pendent jurisdiction to assert the Washington state claims of abuse of office, official misconduct.

## REQUEST OF GRAND JURY EMPANELMENT

142.    If this court determines the evidence presented and discovered in this proceeding surpasses the threshold of probable cause, Plaintiff respectfully requests that this court impanel a Grand Jury for the purpose of investigating the crimes uncovered in this matter.

143.    Oregon State Senators Dennis Linthicum and Kim Thatcher, along with Dr. Henry Ealy III, have filed a petition for the empanelment of a Grand Jury in U.S. District Court for the District of Oregon Portland Division Case No: 3:22-cv-356-HZ. (Exhibit P20A).

EXHIBIT P20A: 2022-3-7-Fed.Grand.Jury.Pet. - Google Drive
EXHIBIT P20B:   Exhibit-B-Fed.Grand.Jury - Google Drive
EXHIBIT P20C:   Exhibit-C-Fed.Grand.Jury - Google Drive
EXHIBIT P20D: DEATH CERTIFICATES.Fed.Grand.Jury - Google Drive
EXHIBIT P20E:   Fed.Grand.Jury.Objective.Analysis.pdf - Google Drive

144.    Rochelle Walensky, current Director of the CDC, is a Defendants named in Plaintiff's action, as well as a named Defendant in the aforementioned Grand Jury petition.

145.    Upon information herein and Plaintiff's belief, employing deductive reasoning, probable cause exists to conclude Defendants Gates and Fauci have knowingly and willfully conspired to facilitate mass homicide of U.S.

citizens by proxy under the guise of so called Covid-19 pandemic response measures, experimental "vaccines", and guidance.

# III.   STATEMENT OF FACTS

146.     Plaintiff is not an attorney; this pleading, "however unartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  Also, a *pro se* petitioner's pleadings should be "liberally construed to do substantial justice." *Haines v. Kerner*, 404 U.S. 519 (1972).

147.     Plaintiff invokes the Full Faith and Credit Clause for all citations herein of state and federal court decisions throughout the United States.

148.     The following documents are incorporated herein by reference, as if restated in their entirety:

- All hyperlinked EXHIBITS contained herein.
- Beacraft STATEMENT OF FACTS.pdf - Google Drive
- Real.Anthony.Fauci.pdf - Google Drive, *Robert F. Kennedy, Jr.*
- MO-LA.v.BIDEN--Petition.pdf - Google Drive Case 3:22-cv-01213-TAD-KDM
- CDC-messages.pdf - Google Drive Case 3:22-cv-01213-TAD-KDM

## A. CURRENT STATUS OF PLAINTIFFS---SEPTEMBER 6, 2022.

149.     Plaintiff's son is at immediate risk of serious injury or death, and is effectively imprisoned with his mother Defendant Owen, and his stepmother Defendant Lerman.

150.     Defendants Owen and Lerman are habitual liars and career prostitutes who, for the last year, have subjected A.R.W. to ongoing physical, mental and emotional abuses that shock the conscience in their disregard for A.R.W.'s well-being.

151.     A.R.W. has been callously used as a pawn by Defendants Owen and Lerman, with the assistance of family law attorney, Defendant Cliber, in order to extort tens of thousands of dollars from Plaintiff.

152.     Defendants Owen and Lerman have, twice to Plaintiff's knowledge, subjected A.R.W. to ongoing medical experimentation without informed consent.

153.     Plaintiff has prevented from any communication with A.R.W. since August 19, 2022, and a King County Family Court order was issued on August 23, 2022, making Plaintiff subject to immediate arrest for even a third-party message to his son.

154.     Family Court Commissioner, Defendant Moore, asserted that Plaintiff had abused his son by warning A.R.W. that current data from the Vaccine Adverse Event Reporting System ("VAERS" herein) indicates that

under no circumstances whatsoever should A.R.W. be injected with another Pfizer BioNTech 162b2 Covid-19 "vaccine".

155.    The dishonesty, denial, or willful ignorance exhibited by Defendants Moore, Cliber, Owen and Lerman are, at best, so grossly negligent that they shock the conscience.

156.    In order to deny the truth, the denier must first be aware of it.

157.    Only 5% of U.S. children between the ages of six months and five years have been injected with Pfizer Covid-19 "vaccines" after more than ten weeks of availability under an Emergency Use Authorization ("EUA" herein).

158.    The only emergency our children are facing is the criminal negligence of health agencies and multinational pharmaceutical corporations, given cover by advertising money paid to media companies across the nation, enabled, coerced, or enforced, by the gross negligence, or worse, of politicians, judges, police, schools, and parents, that shocks the conscience in its disregard of informed consent, available facts, and common sense.

159.    For the first time in medical history the Food and Drug Administration ("FDA" herein), directed by Defendant Hahn, just authorized the use of bi-valent Covid-19 "vaccines" without having tested them on a single human being.  Eight (8) mice were deemed sufficient.  And, the trial data is being concealed.  Trust the science.

160.     The systemic gross negligence on public display is more aptly called mass negligent homicide. It is beyond the limits of logical credulity that our city, county, state, and federal health experts are unaware of the vast amount of publicly available data showing that these experimental Covid-19 "vaccines" are undeniably killing more people than they are saving.

161.     While some Defendants are assuredly facilitating the ongoing fraud, other Defendants may only be complicit in their intellectual dishonesty and callous neglect.

162.     If individual Defendants have not acted with premeditated and psychopathic malice, then have knowingly and willfully failed to consider, acknowledge, or respond, with objective reasonableness, and their passive complicity evinced foreseeable consequences of grievous and irreparable harm to Plaintiffs.

163.     It is indisputable that people in powerful positions of influence and control have facilitated or orchestrated an international fraud of unprecedented scope.  The actions of brilliant men, such as Defendants Gates and Fauci, exhibit dishonesty, void of human empathy: their ongoing fraud is a proximal cause of the immediate danger Plaintiff's son is in.

164.     Plaintiff's efforts to protect A.R.W. from the threat of ongoing medical experimentation have resulted in A.R.W.'s father being subjected to

criminal and malicious discrimination, segregation, and unlawful imprisonment.

165.     Plaintiff is currently living in constant fear of unlawful arrest.

166.     On August 29, 2022, Plaintiff was once again denied his right to personally appear in Seattle Municipal Court as a named defendant, unless he wore a face mask, despite his medical exemption and the explicit protections of *Washington Constitution Article I § 22.*

167.     Plaintiff connected by telephone to the hearing.

168.     After Plaintiff's motions for summary judgment and vacating judgment were dismissed by Defendant Gregory, Plaintiff politely stated by telephone, "I have nothing further to say and thank you both for your time," before disconnecting the call.

169.     Defendant Judge Willie Gregory then issued $60,000 in bench warrants, accusing Plaintiff of "leaving the hearing early.

## B. COVID-19 PANDEMIC RECAP

170.     January 2020 an allegedly new and unique virus, SARS CoV-2 appears, and the World Health Organization ("WHO" herein) declares it an unprecedented threat to humanity.

171.     A computer model of SARS CoV-2 is provided to four multinational pharmaceutical corporations and within a couple days, in spite of the fact a

safe and effective coronavirus vaccine had never been developed in history, they all miraculously develop Covid-19 "vaccines" to immunize every human.

172.     As early as February 2020, there was persuasive and compelling evidence that SARS-CoV-2 posed no more threat than a severe flu, evidenced by the *Diamond Princess* cruise ship, an enclosed system of more than one thousand individuals.  Adjusted for age, the predictable public health threat did not justify the fearmongering.

173.     PCR testing was rolled out as a diagnostic testing tool.  Never before had millions of healthy and well people been subjected to mass testing.

174.     The noble prize-winning inventor of the PCR test, Kerry Mullis, was on record stating that the PCR test cannot be used to accurately diagnose an illness.

175.     On March 24, 2020, the CDC changed how death certificates were to be reported, but only for Covid-19.  The change allowed them to deemphasize every pre-existing condition and elevate Covid-19 as the primary cause of death recorded.  In doing this, the CDC violated three federal laws.

176.     The Administrative Procedures Act:  Every single federal agency is required to do the same thing the same way.

177.     The Paperwork Reduction Act:  The CDC removed the ability for public comment.

178.     The Information Quality Act:  No federal agency can publish information that is not verifiable and accurate.

179.     The entire health care system was financially incentivized to designate any hospital admission as Covid-19.  An automobile collision victim who "tested positive" with a PCR test upon admission to the ER.

180.     The seasonal flu abruptly disappeared.

181.     Masks were imposed, not as safe or effective EUA medical devices, but as divisive, dehumanizing symbols of compliance.

182.     Early treatment protocols for Covid-19 that were preventing sickness and saving lives around the world were either ignored, ridiculed, or labeled as dangerous.

183.     Emergency Use Authorization could only be legal for experimental Covid-19 "vaccines" if there were no safe and effective alternative treatments.

184.     Hydroxychloroquine has been used safely for 65 years in many millions of patients. And so, the message was crafted that the drug is safe for its other uses, but dangerous when used for Covid-19.  It did not make sense.

185.    Ivermectin, an anti-viral used safely and effectively over the counter throughout Africa and southeast Asia, both a prophylaxis and a treatment, was ridiculed as a "horse de-wormer".

### 1.  ESTABLISHED PUBLIC HEALTH RISKS

186.    By August of 2020 even a layman's common-sense analysis could accurately presume the crimes and abuses that would eventually be perpetrated against Plaintiffs, or those similarly situated, by observing the lies, inconsistent statements, and deceptive omissions regarding Covid-19 from public health officials and private "experts".

187.    The official Covid-19 narrative went unchallenged by media organizations, heavily funded by Pfizer and the B&MGF.

188.    For decades Defendant Fauci has held dominion over the issuance of our government's medical research grants.

189.    Two thirds of private funding for medical research grants come from only three sources.  One of those is the Bill and Melinda Gates Foundation.

190.    Defendant Gates and Fauci have been in close communication throughout the Covid-19 pandemic.

191.    In February of 2011, Gates was quoted as saying, "" [Fauci] and I were talking about the critical path [Covid-19 pandemic] in our last call and how to orchestrate Gates Foundation resources and government resources

to get to the bottom of those questions….It's a helpful collaboration, which we've always had."

192.     Defendant Gates has been aware of dissenting perspectives regarding the Covid-19 pandemic.  "Dr. Fauci and I are out in the conspiracy theory threads quite a bit.  It's disappointing that that kind of titillating, oversimplistic explanation is easier to click on then, you, the truth about what a great job the world has done to get these vaccines going," Gates stated.

193.     Defendant Gates stated he considers Defendant Fauci "a hero to millions of people, including me."  Defendants Gates and Fauci have been constant fixtures throughout the Covid-19 pandemic speaking authoritatively on public health strategies, recommendations, treatments, and risks.

194.     We were told that "every life is precious" by politicians and billionaires who have neglected to appropriate, or even mention, the humanitarian necessity to drill wells to ensure that everyone on earth has access to clean drinking water.

195.     Lack of clean drinking water has killed an estimated 5,000,000 children per year.  Deafening silence.  Lies of omission are more difficult to detect.

196.     Unemployment and homelessness proportionally correlate to

increases in poverty and mortality.

> *"As reported recently, millions of Americans are losing their jobs in the COVID-19 recession/depression. For every 2% increase in unemployment, there are about 3.5 million lost jobs. The U.S. Secretary of Treasury has predicted a 20% unemployment level, which translates to 12 million lost jobs. If the 45,000 excess deaths due to lack of medical coverage increases uniformly by unemployment rate, we can expect about 225,000 deaths annually due to lack of medical coverage in the U.S. at 20% unemployment. Extrapolating this over a 6-year period would mean 1.35 million deaths. This assumes that funding for important health-related programs are not further cut or ignored, a bad assumption that means the estimate is probably low."*

> EXHIBIT P25: More Will Die from the Response to COVID-19 Than From the Virus | Dig Within

197.     Objectively reasonable public health experts knew, or should have

known, before lockdowns were implemented that the lockdowns would

eventually lead to the deaths of hundreds of thousands of Americans.

### 2.  NATURAL IMMUNITY

198.     Suddenly, and without precedent, natural immunity was either

ignored or dismissed, as if immunity came from a vial produced by a

multinational pharmaceutical corporation.

199.     Prior to the "COVID-19" hysteria, before common sense became a

victim of the media's cancel culture, Anthony Fauci was interviewed on C-

SPAN.  Fauci was asked by the interviewer if a girl who had got the flu should get a flu shot.  Fauci responded thus:

> *"If she got the flu for fourteen days then she's as protected as anybody, because the best vaccination is to get infected yourself.  If she really has the flu, she definitely doesn't need a flu vaccine."*

200.     We were sold the lie of "asymptomatic spread" to induce terrified compliance with mask mandates and lockdowns.


### 3. ASYMPTOMATIC SPREAD

201.     Dr. Maria Van Kerkhove, head of WHO's emerging diseases unit, stated on June 8, 2020, "We have a number of reports from countries who are doing very detailed contact tracing.  They're following asymptomatic cases. They're following contacts. And they're not finding secondary transmission onward. It's very rare."

202.     It has been known for decades that "asymptomatic transmission" is not a public health concern.  On September 11, 2020, Defendant Fauci stated, "the one thing historically people need to realize that even if there is some asymptomatic transmission in all the history of respiratory borne viruses of any type of asymptomatic transmission has never been the driver of outbreaks the driver of outbreaks is always a symptomatic person even if

there's a rare asymptomatic person that might transmit an epidemic is not driven by asymptomatic carriers."

EXHIBIT P26: Dr. Fauci Says Asymptomatic Transmission Doesn't Drive Epidemics - YouTube

203.    A study of nearly 10,000,000 Chinese published in November 2020 further verified that "asymptomatic spread" found *zero cases* of "asymptomatic transmission" resulting in sickness.

EXHIBIT P27: https://rdcu.be/cUUym

204.    To date, there are no available FDA Approved tests for the detection of COVID-19 or SARS CoV-2.

**4. PANDEMIC RESPONSE 2020**

205.    Under Defendant Inslee declared a statewide Covid-19 pandemic emergency on February 29, 2020.  Defendant Inslee asserted that Covid-19 constituted a continuing threat to the life and health of Washingtonians.

EXHIBIT P28B: 2020-7-24--INSLEE--PROC.pdf - Google Drive

206.    Defendants Inslee and Shah, the Director of the Washington State Department of Health, cited the assessments and recommendations of the WHO to validate restrictive measures upon the lives of Washingtonians, including proclamations and orders to wear cloth face masks.

207.    The proclamations and orders from Defendants Inslee and Shah

asserted that anyone would be subject to fines or incarceration for non-

compliance.

208.    Orders commanding everyone to wear cloth masks was oddly

juxtaposed with the guidance issued by the WHO on January 29, 2020,

which stated, "Cloth (e.g., cotton or gauze) masks are not recommended

under any circumstances."

EXHIBIT P30A: WHO-nCov-IPC_Masks-2020.1-eng.pdf - Google Drive

209.    The proclamations and orders that severely encroached upon our

lives were initially sold to us as short-term inconveniences for the "greater

good".  Just "two weeks to flatten the curve."

210.    Businesses were forcibly shut down, many never to re-open.

211.    Schools were shuttered, isolating our children.  Kids were treated as

if they were disease vectors who could kill gramma, isolated for the alleged

threat they posed.

212.    Parks were closed and swings for children were chained and

padlocked.

213.    Gyms were closed, but liquor stores were essential, so those stayed

open.

214.    Everyone was suddenly isolated, denied fresh air, sunlight, exercise, and social interactions in the interests of "public health".  Fast food drive-throughs were allowed to remain open.

## 5.  EARLY TREATMENTS AND PROTOCOLS

215.    Federal law only allows an Emergency Use Authorization ("EUA"" herein) for a "vaccine", "gene therapy treatment", or "gene therapy product", if there is no known alternative that is safe and effective.

216.    Early treatment protocols were ignored or suppressed.   Defendant Fauci asserted that Hydroxychloroquine killed more people than it saved. Ivermectin was ridiculed as a horse de-wormer by federal agencies and the corporate media.

217.    The FDA parroted the ridicule of anyone foolish enough to think Ivermectin was a safe and effective treatment for Covid-19.  On August 21, 2021, @US_FDA tweeted, "You are not a horse.  You are not a cow. Seriously, y'all. Stop it."

218.    However, more than two months prior to that tweet the CDC and FDA knew in June 2021 that Ivermectin had shown miraculous results.

219.    India's Uttar Pradesh, home to 230 million people, was being devastated by India's "Delta Surge" at the start of May 2021.  On May 5, 2021, the WHO coordinated with government teams to move swiftly across

the Indian state.  The WHO Rapid Response Teams deployed across Uttar Pradesh derive support from the CDC.

220.     The WHO committed to assist in the release of final reports detailing the results of the Rapid Response Teams, stating, WHO will also support the Uttar Pradesh government on the compilation of final reports."

221.     The WHO explained that the teams worked quickly to coordinate the distribution of "a medicine kit" to every Indian considered at risk of Covid-19.

222.     Within only 5 weeks, on June 14, 2021, active cases of Covid-19 dropped an astounding 97.1 percent.  By July 2, 2021, they were down a full 99 percent.

223.     At the end of April 2021, Uttar Pradesh had 310,783 active Covid-19 cases.

224.     By September 12, 2021, there were only 187 active Covid-19 cases left in the entire state of Uttar Pradesh.

          EXHIBIT: P30B:  IVERMECTIN-UTTAR-PRADESH.pdf - Google Drive

225.     The inexpensive kits delivered by the Rapid Response Teams contained the following: Ivermectin tablets, Vitamin C, Vitamin D3, Zinc, Multivitamin, Paracetamol tablets [Tylenol], and Doxycycline tablets.

226.     Working in partnership for the public health of Americans, Facebook and PolitiFact assured the public on November 12, 2021, that the stories of

Ivermectin's effectiveness at ending the Covid-19 pandemic in Uttar

Pradesh were false, according to PolitiFact's Truth Meter.

EXHIBIT P30C:  FACEBOOK-2021-11-12.pdf - Google Drive

227.    World renowned doctors, pathologists, and epidemiologists were

censored and banned from Facebook and Twitter for informing people about

Ivermectin as both a prophylaxis and treatment for Covid-19.

228.    Defendants Gates, Fauci,


6.  FACE MASKS

229.    A face mask used to mitigate the transmission, or infection, of "SARS-

CoV-2" ("virus" herein) is an EUA "medical device", pursuant to the U.S.

Code of Federal Regulations.

230.    None of the Defendants have made available for inspection any

Randomized Control Trial ("RCT" herein), proving that EUA face masks

used to mitigate transmission or infection of SARS CoV-2 provide more

benefit than harm.

231.    The WHO specifically advised against the wearing of cloth face masks

in January 2020.

EXHIBIT P30A: WHO-nCov-IPC_Masks-2020.1-eng.pdf - Google Drive

232.     Plaintiff consulted with one of the nation's preeminent authorities on the efficacy of face masks, Stephen E. Petty, P.E., CIH, who testified to the uselessness of face masks as an expert witness on the effectiveness of "social distancing" and "mask mandates"  for Kentucky's Boone Circuit Court, Case No. 20-CI-00678, which struck down Kentucky's mask mandate in July 2020.

EXHIBIT P10A:  PETTY---Professional Experience.pdf - Google Drive
EXHIBIT P10B:  PETTY---Expert Case List.pdf - Google Drive
EXHIBIT P10C：  PETTY---Declaration---2021-09-24 - CA.pdf - Google Drive
EXHIBIT P10D:  PETTY---Background Experience.pdf - Google Drive
EXHIBIT P10E:  PETTY---Affidavit - 2021-06-01 - signed.pdf - Google Drive

233.     Stephen E. Petty, P.E., CIH has served as an expert witness in approximately 400 cases relating to toxic or infectious exposure, personal protective equipment ("PPE"), and as a warning expert.

234.     To date, no face masks have been approved by the FDA for the prevention of infection with, or transmission of, SARS CoV-2.

### 7.  PFIZER BIONTECH 162B2 "VACCINE"

235.     Denying knowledge of safe and effective treatments for Covid-19, such as HCQ and Ivermectin, on December 11, 2020, the FDA issued an Emergency Use Authorization (EUA) for the Pfizer-BioNTech COVID-19 "vaccine".

236.    On May 10, 2021, Pfizer BioNTech 162b2 was given Emergency Use Authorization by the FDA for children twelve years or older.

237.    On August 23, 2021, the FDA approved (fully licensed) the first COVID-19 "vaccine" Biologics License Application ("BLA" herein) under the trade name COMIRNATY.  The FDA ended its legal marketing status that same day.

238.    FDA may issue an EUA when certain criteria are met, which includes that there are no adequate, approved, and available alternatives. In addition, the FDA decision must be based on the totality of the scientific evidence available showing that the product may be effective to prevent Covid-19 during the Covid-19 pandemic and that the known and potential benefits of the product outweigh the known and potential risks of the product. All these criteria must be met to allow the product to be used during the Covid-19 pandemic under an EUA.

EXHIBIT P36:  2022-8-31-FDA-PFIZER-Fact.Sheet.pdf - Google Drive

239.    Headlines deceptively asserted that the FDA had approved Pfizer's Covid-19 "vaccine", giving the false impression that parents could have their twelve-year-old children injected with a Pfizer Covid-19 "vaccine" that had been proven "safe" and "effective".  Contemporaneously, Defendants Inslee,

Durkan, Gates, Fauci, and Walensky made similar false assertions to the public.

240.     None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid-19 vaccine" is a "vaccine" as defined by RCW 70.290.010, which states:

> *(10) "Vaccine" means a preparation of killed or attenuated living microorganisms, or fraction thereof, that upon administration stimulates immunity that protects against disease and is approved by the federal food and drug administration as safe and effective and recommended by the advisory committee on immunization practices of the centers for disease control and prevention for administration to children under the age of nineteen years.*

241.     City of Seattle, Seattle Public Schools, King County, and Washington, public officials have referred to Pfizer BioNTech 162b2 as a "vaccine".

242.     None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid vaccine" is not a "gene therapy treatment", "biologic product", or "gene therapy product" ("GTP" herein).

243.     By calling the Pfizer BioNTech 162b2 mRNA injections "vaccines," Defendants Gates, Fauci, Redfield, Walensky, Hahn, Inslee, and Durkan, mislead the public by misrepresenting the Pfizer EUA GTP as a "vaccine".

244.     Defendants Gates, Fauci, Redfield, Walensky, Hahn, Inslee, and Durkan, knowingly and willfully called the Pfizer EUA GTP a "vaccine".

245.    Our state, federal, and international law justly enshrine the principle that where there is risk, there must be legally effective informed consent.

246.    None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid vaccine" prevents transmission or infection of a virus.

247.    None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid vaccine" has completed clinical trials.

248.    None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid vaccine" is "safe".

249.    None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 mRNA "Covid vaccine" prevents transmission or infection of a virus.

250.    The Pfizer BioNTech 162b2 mRNA "Covid vaccine" has not received FDA approval.

251.    The Pfizer BioNTech 162b2 mRNA "Covid vaccine" is legally distinct from the COMIRNATY "Covid vaccine".

252.    All references hereinafter to a Pfizer "Covid-19 vaccine", unless expressly stated otherwise, are regarding the BioNTech 162b2 mRNA product injected into Plaintiff's minor son, A.R.W. on July 21, 2021 and October 20, 2021.

253.     Pfizer's COMIRNATY and BioNTech 162b2 are legally distinct products.

EXHIBIT P33:  FDA Purplebook

254.     Biosimilarity and interchangeability are specific requirements of 42 USC § 262(k).

255.     By law, Pfizer's COMIRNATY and BioNTech 162b2 cannot be declared interchangeable until August 24, 2033.

256.     This legal distinction was clearly cited by the FDA in every Pfizer BioNTech re-issuance letter since full licensure.

257.     None of Defendants have made available for inspection proof that the Pfizer BioNTech 162b2 is BLA-compliant.

258.     None of Defendants have made available for inspection proof that the Pfizer EUA GTP twice injected into A.R.W., without Plaintiff's knowledge or consent, was done so with informed consent.


## 8.  VAERS---VACCINE ADVERSE EVENT REPORTING SYSTEM

259.     None of Defendants have publicly acknowledged or forthrightly addressed the safety signals of the CDC's Vaccine Adverse Event Reporting System ("VAERS" herein) data, to ensure the safety of A.R.W., or any other child in the United States.

260.     According to the publicly available VAERS data, as of August 26, 2022, there have been 32,251 deaths from experimental EUA COVID-19 injections and 1,488,204 adverse events.

EXHIBIT P34: 2022-8-26---VAERS DATA CDC.jpeg - Google Drive

261.     The number of reports to VAERS has been steadily increasing for the last year and one half, whereas the number of doses administered has gone down.

262.     None of Defendants can claim ignorance of publicly available information directly affecting the health and well-being of every child who has been, or might be, injected with a Pfizer BioNTech 162b2 Covid-19 "vaccine".

263.     On September 16, 2020 the CDC released the "*Covid-19 Vaccination Program Interim Playbook for Jurisdiction Operations.*

EXHIBIT P31: WA-COVID-19-Vaccination-Plan.pdf - Google Drive

264.     On page 3 of the *Interim Covid-19 Vaccination Plan* it states: "Overall, Washington State is well positioned to receive, handle, distribute, and administer Covid-19 vaccine to its residents once a safe and effective vaccine is available. The Washington State Department of Health has started its planning by coordinating with tribal nations, state agencies, local

government, community leaders, health care providers, neighboring states, and other partners."

265.     On page 59 of the *Interim Covid-19 Vaccination Plan* it states: "Ongoing updates for providers will occur with updates through education campaigns, monitoring of VAERS reports, and feedback from communities. In addition, we will add links to the CDC Covid-19 webpages that contain the fact sheets and forms."

## C. PLAINTIFF BACKGROUND & BELIEFS

266.     Plaintiff is a U.S. Citizen, born in Seattle, Washington.

267.     Plaintiff is Caucasian, of Norwegian and Danish ancestry, but identifies as a "human".

268.     A.R.W. is a U.S. Citizen, of European and Mexican ancestry.

269.     Plaintiff is a father, and grandfather.

270.     Plaintiff is a man with firmly held beliefs, both spiritual and secular.

271.     Plaintiff's Creed is founded upon selfless devotion to the principles of truthfulness, honor, fairness, equality, acceptance, empathy, gentleness, compassion, and forgiveness: principles embodied in the unbreakable oath to protect all children.

272.     Plaintiff firmly believes that the Breath of Life is sacred and should not be infringed.

273.     Plaintiff believes that forthright honesty is the sacred foundation of all that is benevolent and kind, and that it is what nourishes and nurtures the growth and well-being of our body, mind, and spirit.

274.     Conversely, dishonesty is the foundation of all that is malicious and cruel, it is the poison that destroys from within the body, mind, and spirit.

275.     Plaintiff believes that just and fair courts of judicial record are as sacred as any temple or church, as such courts have the delegated authority to separate fact from fiction for issues at controversy, bound with lawful reason.

276.     Plaintiff believes that the divine and natural development of a child's innate immune system is superior to anything developed in a laboratory.

277.     Plaintiff believes that the principle of "First Do No Harm" is an ethical and legal requisite in the care and stewardship of every child.

278.     Plaintiff ministers a home church, the Church of the Golden Rule.

279.     Plaintiff devotes considerable time and resources to outreach and assistance for those in need of counseling, shelter, food, and protection from segregation and discrimination in any form.

280.     Plaintiff has one or more invisible disabilities that preclude him from being forced, or coerced, to wear an EUA face mask (interchangeably "medical device" herein) as a means of mitigating the transmission or infection of a virus.

281.     Plaintiff suffered childhood sexual abuse by someone in a position of trusted authority.  Having his breathing restricted, or his face covered, causes Plaintiff grievous harm and suffering.

282.     Plaintiff's firmly held beliefs, both spiritual and secular, preclude him from wearing an EUA medical device as a means of mitigating the transmission or infection of a virus.

283.     Plaintiff's firmly held beliefs, both spiritual and secular, preclude him from injecting his body with a Pfizer EUA GTP, as a means of mitigating the transmission or infection of a virus.

284.     Plaintiff's firmly held beliefs, both spiritual and secular, preclude him from consenting to have his healthy minor son, A.R.W., injected with a Pfizer EUA GTP as a means of mitigating the transmission or infection of a virus.

285.     Plaintiff's firmly held beliefs preclude him from wearing an EUA medical device ("face mask" herein) on his face.

286.     Plaintiff's firmly held beliefs preclude him from consenting to allow his minor son, A.R.W., or requiring A.R.W. to wear, an EUA face mask as a means of mitigating the transmission or infection of a virus.

### D. PLAINTIFF'S NON-COMPLIANCE

287.    Plaintiff hasn't been sick since 2016, which was with food poisoning, which is not contagious, yet Seattle businesses began to demand customers wear face masks in the Summer of 2020, asserting that Governor Jay Inslee's COVID-19 Proclamations were "the law".

288.    Plaintiff declined to be coerced into restricting his breathing and the systemic discrimination began, perpetrated by businesses, police, prosecutors, judges, clerks, and other public officials employed by City of Seattle, King County, the State of Washington, and the U.S. Government.

> *"There are just laws and there are unjust laws. I would be the first to advocate obeying just laws. One has not only a legal but a moral responsibility to obey just laws. Conversely, one has a moral responsibility to disobey unjust laws."*
>
> ---*Martin Luther King Jr.*

289.    Truth does not mind being questioned.  A lie does not like being challenged.  At the root of every crime and abuse alleged herein is a lie, whether from ignorance, negligence, or malice.

290.    Plaintiff contacted every conceivable government agency, city, county, and state, to have his concerns addressed.  Aside from Attorney General Ferguson's response, and the Department of Labor and Industries informing Plaintiff that his concerns were not their responsibility, every other agency ignored Plaintiff's pleas for assistance.

291.     Plaintiff decided to oppose, through peaceful non-compliance, Governor Inslee's mask mandates in the Summer of 2020. Plaintiff was concerned that if wearing useless face masks became normalized, it could lead to the coerced injection of children, including A.R.W., Pfizer Covid-19 "vaccines".

292.     Beginning in July 2020 Plaintiff was humiliated, harassed, assaulted, or forced out of businesses by police and sheriffs for simply trying to buy groceries for himself and his son, without wearing a mask.

- PCC Natural Markets, Greenlake, Fremont, Ballard
- Sprouts Farmer Market, Seattle
- Central Market, Shoreline
- Madison Market, Seattle
- R.E.I., Seattle
- Office Depot, Seattle
- Fluevog Shoes, Seattle
- Rite Aid, Northgate
- Card Kingdom/Mox Café, Ballard
- Big Sporting Goods, Northgate, Ballard, Bellingham
- Wing Dome, Aurora

293.     When Plaintiff called 911 to report the discrimination and crimes perpetrated against him, he was arrested by police multiple times.

294.     Plaintiff's complaints were rebuffed by Washington Attorney General Bob Ferguson.  Mr. Ferguson's job is to defend the State of Washington, he informed Plaintiff.

295.     Plaintiff repeatedly emailed complaints of discrimination and

harassment to the customer relations personnel at the headquarters of

Sprouts Farmers Market.

296.     Defendants Laura Jane Doe and Christina Jane Doe both asserted to

Plaintiff that Sprouts employees had the legal authority to refuse service to

Plaintiff, and Plaintiff's entrance into their stores, if Plaintiff did not wear a

mask.

297.     Plaintiff specifically cite RCW 49.60.030, .040 as protecting him from

discrimination based upon disability.

298.     Defendants Laura Jane Doe and Christina Jane Doe refused to

acknowledge that RCW 49.60.030,.040 protected Plaintiff from

discriminatory action by Sprouts Farmers Market employees.

299.     On September 11, 2020 Plaintiff called 911 because he was harassed,

intimidated, and denied service by employees of Sprouts Farmer Market,

located at 130th and Aurora Avenue North in Seattle, Washington.

300.     Defendants Ervin, and Sprouts John Doe #10 called the SPD to allege

that Plaintiff was "trespassing" because Plaintiff wasn't wearing a mask.

301.     One of the Sprouts employees stole Plaintiff's printed out copies of the

Revised Code of Washington and absconded down an aisleway.

302.     Plaintiff was concerned that without the photocopies of the RCW he

wouldn't be able to explain Criminal Trespass law to anyone accurately.

303.     Plaintiff chased the thief down the aisle.  Plaintiff grabbed the thief

with Plaintiff's left arm embrace and snatched his photocopies with his right

hand.  Plaintiff then walked to another part of the store to call 911 to report

the theft and harassment and continue shopping for groceries.

304.     SPD officers Defendants Coomer, McClelland, Parton, Sullivan, and

Munich eventually arrived.

305.     Plaintiff tried to provide Defendants Coomer, McClelland, Parton,

Sullivan, and Munich, photocopies of the Revised Code of Washington that

Plaintiff had printed out.

306.     Plaintiff tried to explain state law regarding allegations of Criminal

Trespass.

307.     Plaintiff explained to Defendants Coomer, McClelland, Parton,

Sullivan, and Munich, that Plaintiff was precluded from any requirement to

wear a mask, citing RCW 49.60.030, .040, which prevented any "public

accommodation" from discriminating against someone because of a

disability.

308.     Defendants Coomer, McClelland, Parton, Sullivan, and Munich

arrested Plaintiff for Criminal Trespass and Assault.

309.     Plaintiff requested that Defendants Coomer, McClelland, Parton,

Sullivan, and Munich, review Plaintiff's GoPro video recording and the store

security camera video.  Plaintiff explained that he was the victim of Theft and Harassment.

310.     Defendants Coomer, McClelland, Parton, Sullivan, and Munich, refused to watch Plaintiff's GoPro video evidence and Defendants Coomer, McClelland, Parton, Sullivan, and Munich, asserted that Plaintiff was the assailant.

311.     Plaintiff was taken to King County Jail, where jail guards coerced Plaintiff under threat, duress, or coercion, to have a mesh bag put over Plaintiff's head.

312.     After researching the RCW futher, and upon information and Plaintiff's belief that he had been the victim of unlawful arrest by Defendants Coomer, McClelland, Parton, Sullivan, and Munich, on September 11, 2021, Plaintiff drove to the parking lot of Sprouts Farmers Market at 130th and Aurora Avenue North.

313.     Plaintiff called 911 from the parking lot, an estimated 150 feet from the store entrance.  Plaintiff told 911 Dispatch that he wished to report multiple crimes committed against him on September 11, 2020, including Unlawful Imprisonment by Defendants Coomer, McClelland, Parton, Sullivan, and Munich, and Theft and Assault by employees of Sprouts Farmers Market.

314.    SPD officers Defendants Nicholas Hughes, Nicholas Alpaugh, Dain Jones, Benjamin Cooper, Robert McLlelland, Suzanne Parton responded and again arrested Plaintiff, alleging Criminal Trespass.

315.    Plaintiff explained that the parking lot was not the property of Sprouts.  Plaintiff explained that Defendants Nicholas Hughes, Nicholas Alpaugh, Dain Jones, Benjamin Cooper, Robert McLlelland, Suzanne Parton, could not charge him for Criminal Trespass for standing 150 feet from the storefront.

316.    One of the male SPD Defendants, the superior officer, asserted as fact that Sprouts owned the parking lot.

317.    Plaintiff was taken to King County Jail and again subjected to being coerced under threat, duress, or coercion, to have a mesh bag put over Plaintiff's head.

318.    Defendant Mary Lynch set Plaintiff's bail at $100,000.

319.    Plaintiff spent over four days in King County jail before he was able to bail out.

320.    Plaintiff took to Twitter to propose a public debate with Governor Inslee regarding "The Science", offering a $100,000 for the winner of a 30-minute debate, given to a charitable institution of the winner's choice.

321.    Plaintiff attended several Seattle potlucks where acquaintances discussed concerns and solutions regarding bodily autonomy and the

increasing coercion and enforcement of mask wearing compliance in Seattle. Plaintiff participated in a Zoom call with Sheriff Rob Sanzaa.

322.     Washington State Patrol was shortly thereafter granted a search warrant from Thurston County Superior Court, empowering the Washington State Patrol to search and seize, Plaintiff's phones, computer, and Gmail account.

### E. SEATTLE MUNICIPAL COURT:  JULY 2021-AUGUST 2022

323.     Consequences of Plaintiff's peaceful non-compliance initiated an ongoing two-year saga with Seattle Municipal, the most recent 14 months is summarized herein.

324.     On the morning of July 21, 2021, Plaintiff had to appear by Zoom video to Seattle Municipal Court Case No. 656748 before Defendant Judge Willie Gregory.  Defendant Gregory ordered Plaintiff to appear in person in Seattle Municipal Court with either a mask covering his face, or an exemption letter from a medical professional.

325.     Plaintiff requested that Defendant Gregory cite the lawful authority by which such a demand could be made of Plaintiff.  Defendant Gregory asserted that it was a "court order" that Plaintiff was legally required to comply with.

326.     *Washington Constitution Article I § 22* protects Plaintiff's inalienable right as a named defendant of a criminal allegation to appear in person before the court.

327.     RCW 46.60.030 (7)(d) restrict the demand to that Plaintiff's impairment be known or shown to purposes of employment.

> *RCW 49.60.040*
> *(7)(a) "Disability" means the presence of a sensory, mental, or physical impairment that:*
> *(i) Is medically cognizable or diagnosable; or*
> *(ii) Exists as a record or history; or*
> *(iii) Is perceived to exist whether or not it exists in fact.*
> *(b) A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter.*
> *(d) Only for the purposes of qualifying for reasonable accommodation in employment, an impairment must be known or shown through an interactive process to exist in fact*

*328.*     Defendant Judge Anita Crawford-Willis did not provide Plaintiff factual evidence that the order issued by Defendant Gregory, and repeated by Defendant Crawford-Willis, complied with the *Washington Constitution* and *Revised Code of Washington.*

329.     Defendant Crawford-Harris then threatened Plaintiff that if Plaintiff refused to comply, she would hold the trial without the presence of Plaintiff.

330.     On July 22, 2021, prior to the 900am trial hearing, Plaintiff faxed SMC his *Declaration of Truth and Fact in the Form of an Affidavit*, his *Notice of*

*Lawful Intent*, his *Notice of Violations,* and his *Notice and Demand to Cease and Desist*

> EXHIBIT P16A: 2021-7-22-SMC-AFFIDAVIT.pdf - Google Drive
> EXHIBIT P16B: 2021-7-22-SMC-NTC.LAW.INT.pdf - Google Drive
> EXHIBIT P16C: 2021-7-21--NoV.pdf - Google Drive
> EXHIBIT P16D: 2021-7-23-SMC-CEASE.pdf - Google Drive

331.    Plaintiff appeared by Zoom, with Defendant Crawford-Harris presiding.  Defendant MacDonald represented the City Attorneys Office.

332.    Defendant Crawford-Harris again denied Plaintiff's right to appear in person.

333.    Defendant Crawford-Harris then prompted Defendant MacDonald by saying, "Don't you have something for me?"

334.    Plaintiff observed Defendant MacDonald startled at the prompt from Defendant Crawford-Willis.

335.    Defendant MacDonald replied affirmatively by stating that the City of Seattle was proposing a $20,000 bench warrant that Defendant MacDonald moved the court to enter against Plaintiff for "failure to appear".

336.    Plaintiff deduced that prior to the court permitting his Zoom connection to the courtroom at approximately 900am, that Defendants MacDonald and Crawford-Willis had engaged in *ex parte* communications (violative of *WA CJC Rule 2.9*) regarding their intentions to issue bench warrants against Plaintiff.

337.    Defendant Crawford-Harris asserted that Plaintiff's refusal to comply with the court order had regrettably forced her to issue a $10,000 bench warrant for the arrest of Plaintiff.  Plaintiff felt fear for his life, liberty and pursuit of happiness, and Plaintiff felt coerced by Defendant Crawford-Harris under threat, duress and coercion to pay the $10,000 bail.

338.    Plaintiff was shocked.  Plaintiff immediately made complaint to SPD officer Eric Beseler, who advised Plaintiff to turn himself in.

339.    Later, Plaintiff composed a sworn affidavit as complaining witness that detailed the alleged criminal law violations by Defendant Crawford-Willis, including Class B felony theft.

340.    On, or around, August 26, 2021, Plaintiff paid the $10,000 bench warrant under threat, duress and coercion, because he was worried for the safety of A.R.W. and Plaintiff couldn't risk being arrested.

341.    On the morning of September 8, 2021, Plaintiff was unable to enter Seattle Municipal Court to personally appear in courtroom 1101 before Defendant Judge Catherine McDowall.

342.    Plaintiff cited RCW 49.60.030 as protecting him from discrimination in a public accommodation based upon disability, and that it was a violation of RCW 9.91.010 to violate Plaintiff's creed.

343.    Defendant McDowall ordered that Plaintiff had to wear a face mask or provide an "exemption letter" to physically enter a courtroom.

344.     Plaintiff, at considerable expenditure of time and money scheduling multiple appointments with different medical professionals, obtained a medical "exemption letter" in order to appear in person in Seattle Municipal Court, to avoid the forfeiture of the $10,000 bail money he had paid.

345.     After Plaintiff was forced to provide his private and personal exemption letter to Officers of Seattle Municipal Court, an unknown Officer of Seattle Municipal Court then posted it into the public domain on the web portal of Seattle Municipal Court.

> *RCW 42.23.070(4) Prohibited Acts, states:*
> *(4) No municipal officer may disclose confidential information gained by reason of the officer's position,*

*346.*     Plaintiff has a right to privacy with regard to his own personal medical information which is protected by *Washington Constitution Article I § 7* and *Article I § 9.*

347.     Plaintiff connected by Zoom video on November 18, 2021, before Defendant Judge Mary Lynch in Seattle Municipal courtroom 902. Attorney Richard Pope argued for Vacating Plaintiff's September 23, 2021 conviction of alleged criminal trespass and shoplifting at Puget Consumer Co-op in SMC Case No. 656749.

348.     Defendant Lynch dismissed Mr. Pope's motion to vacate.

349.     On, or around, December 23, 2021, Plaintiff was shocked to receive an arraignment hearing notice in the mail for Seattle Municipal Court Case No. 662870, for the traffic stop arrest that had occurred on December 15, 2020, in which SPD officers threw Plaintiff to the ground in an empty parking lot.  SPD officers accused Plaintiff of "Obstruction of Justice" for standing outside of his Toyota FJ Cruiser with license, insurance, and registration in his hands, in full view of A.R.W.  Plaintiff's son was so traumatized by seeing his father dog-piled by SPD officers that A.R.W.'s body started involuntarily spasming.  One SPD officer who had drawn his gun and pointed it at Plaintiff, told Plaintiff, "You're lucky I didn't pop you."

350.     Plaintiff was charged with Obstructing a Public Officer, DUI, and Reckless Endangerment.  SPD Officers at PCC Natural Markets Fremont who had forced Plaintiffs out of the store had made no mention of thinking Plaintiff was under the influence of any drugs.  Plaintiff had not even had a cup of coffee that day, let alone any other drug, prescription or otherwise.

351.     Plaintiff filed a Motion to Strike / Dismiss Complaint in Case No. 662870 on January 3, 2022.

          EXHIBIT P13H:  2022-1-3 SMC.662870.MTD.pdf - Google Drive

352.     Plaintiff connected to the hearing via Zoom video before Defendant Lynch on January 4, 2022, for an arraignment of Seattle Municipal Case

No. 662870, which pertained to the traffic stop arrest in the empty parking lot.

353.     Defendant Lynch confirmed on the record that Plaintiff had the right to enter an informed and voluntary plea.

354.     Plaintiff asked to see the factual evidence City of Seattle had provided the court that established the all threshold elements of subject matter jurisdiction required for the court to proceed.

355.     Defendant Lynch entered a plea of not guilty for Plaintiff.

356.     Plaintiff objected, reminding Defendant Lynch that she had just confirmed that Plaintiff had the right to enter an informed and voluntary plea.

357.     Defendant Lynch disconnected Plaintiff from the Zoom audio, silencing Plaintiff's ability to say anything into the court record.

358.     Plaintiff re-connected by Zoom to re-establish the ability to speak before the court.

359.     Defendant Lynch scheduled a pre-trial hearing for April 11, 2022, more than ninety days after the arraignment hearing.

360.     On Jan 13, 2022, Plaintiff entered Seattle Municipal Courtroom 1003 to attend a hearing regarding his requests that Seattle Municipal Court cease the discrimination against Plaintiff for not wearing an EUA face mask.

361.     After waiting more than twenty minutes without any sign of
Defendant Gregory, two courthouse guards approached Plaintiff and said
that Defendant Gregory had ordered that Plaintiff be removed from the
courthouse for not wearing a face mask.

362.     Plaintiff was forced to appear by Zoom video to Seattle Municipal
Courtroom 1003 before Defendant Gregory on Jan 14, 2022.

363.     Defendant Gregory declared that Plaintiff was compelled by court
order to appear on January 19, 2021 in person, with a face mask on.

364.

365.     On January 19, 2021, Plaintiff was denied entrance into Seattle
Municipal Court, instead appearing by Zoom video before Defendant
Crawford-Willis in courtroom 1002.

366.     Defendants Crawford-Willis and MacDonald accused Plaintiff of
"failure to appear".

367.     Defendant MacDonald requested that Defendant Crawford-Willis to
issue three $15,000 bench warrants for the arrest of Plaintiff for his "failure
to appear".

368.     Plaintiff explained that his right to appear in person was being
violated by *ultra vires* actions of Defendants Gregory and Crawford Willis.

369.     Defendant Crawford-Willis expressed her regret that Plaintiff again
forced her to issue three $10,000 bench warrants for Plaintiff's arrest.

1
2
3

## F.  BIRTH OF PLAINTIFF'S SON A.R.W.

4
5

370.     Plaintiff, in or around mid-August 2008, attempted to end his dating

6

relationship with Defendant Owen.

7
8

371.     Plaintiff objected to Defendant Owen's pattern of dishonesty and her

reluctance to stop working as a professional escort.

9
10

372.     Contemporaneously, Defendant Owen informed Plaintiff that she was

11

pregnant with his child, and Plaintiff committed himself body, mind and

12

soul, to his unborn son, which required continuing a relationship with

13

Defendant Owen.

14

373.     There was never any doubt about Plaintiff's paternity, and Defendant

15
16

Owen asserted the date of conception as July 18, 2008, which is also the day

17

of Plaintiff's birth in 1969.

18

374.     Plaintiff was at Defendant Owen's side for the delivery of their son,

19

and Plaintiff has cared for his son, with love and devotion, his entire life.

20
21

375.     Plaintiff has never yelled at, threatened, hit, slapped, or spanked,

22

A.R.W., nor has Plaintiff ever considered doing so.

23

376.     Defendant Owen did not put Plaintiff's name on their son's birth

24

certificate in April 2009 solely because it was unknown if a warrant might

25
26

be issued for Plaintiff, based upon prior King County Sheriff Department

allegations of Plaintiff growing cannabis in June 2008.

27

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 66

28

## G. PLAINTIFF'S 2011 TOYOTA FJ CRUISER

377.     In, or around, September 2017, Defendant Owen offered to get a car

loan through her credit union, Washington State Employees Credit Union,

(hereinafter "WSECU"), on behalf of Plaintiff, so that she wouldn't have to

keep driving Plaintiff to the mechanic to repair his old cars.  Plaintiff found

an original owner, limited edition, 2011 Toyota FJ Cruiser, VIN

#JTEBU4BFXBK114595, and purchased it with Ms. Owen's procured loan.

378.     Plaintiff and Defendant Owen agreed that Plaintiff would

recompense Defendant Owen the $29,500 loan amount in full, plus any

accrued interest, within twelve (12) months.

379.     Plaintiff and Defendant Owen agreed that the FJ Cruiser was

entirely Plaintiff's vehicle, and under Plaintiff's sole control.

380.     In, or around, June 2018 Plaintiff gave Defendant Owen cash and

money orders totaling approximately $29,500 to pay off the entire

outstanding balance of the car loan Ms. Owen had taken out from WSECU,

as well as accrued interest, making Plaintiff a legal owner.

381.     Unknown to Plaintiff, Defendant Owen did not, as agreed, pay off the

WSECU loan for the FJ Cruiser.

382.     On August 9, 2019, Ms. Owen signed, under penalty of perjury, the

Vehicle Registration for Plaintiff's FJ Cruiser, which states,

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 67

*"I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct and, as a owner or authorized agent of this vehicle, it is free of any claim of lien, mortgage, conditional sale or other security interest of any person, except the person or persons set forth as legal owners."*

383.     The 2019 Vehicle Registration which Defendant Owen signed, under penalty of perjury, did not list Plaintiff's name as a legal owner, only WSECU.

EXHIBIT P..: 2019-8-19---REGISTRATION FJ CRUISER.jpg - Google Drive

384.     In, or around, September 29, 2020, Defendant Owen finally paid off the WSECU loan for Plaintiff's FJ Cruiser but did not provide Plaintiff with the title to his FJ Cruiser.

EXHIBIT P..: 2020-9-29---WSECU CLOSED.jpg - Google Drive

## H.  PARENTAL MEDICAL CARE DECISIONS REGARDING A.R.W.

385.     Plaintiff and Defendant Owen always made shared medical decisions regarding their son, A.R.W. from conception through 2021.

386.     After Defendant Owen moved out of the house during the end of August 2020, Plaintiff and Defendant Owen used a flexible parenting agreement where A.R.W. spent alternating weeks at each house.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 68

387.    A.R.W. was given the authority to decide, on any given day, which house he preferred to be at that day, as the alternating week schedule was not an imposition upon A.R.W.

388.    Plaintiff noticed in 2021 that Defendant Owen exhibited less respect and interest in Plaintiff's research for what would be in the best interests of A.R.W.'s medical decisions.

389.    In, or around, June 2021, Defendant Owen and Defendant Lerman took A.R.W. on a road trip, during which they all believed they contracted Covid-19.

390.    A.R.W. presented mild, common-cold like symptoms and quickly recovered.

391.    Plaintiff concluded that A.R.W. developed natural immunity to "Covid-19" by getting sick, and recovering, during the road trip.

392.    In, or around, early July, 2021, Plaintiff texted Defendant Owen, asking for her assurance that she would not have A.R.W. vaccinated for "Covid-19".

393.    Defendant Owen explicitly texted in response "of course not".

394.    When summer camp classes began for A.R.W. in July, 2021, Plaintiff expressed his concerns to Defendant Owen about the potentially harmful effects of A.R.W. wearing a face mask for hours at a time.

395.    Plaintiff informed Defendant Owen that a common face mask is useless for mitigating the transmission, or infection, of a virus.

396.    Plaintiff informed Defendant Owen that a face mask is an Emergency Use Authorization ("EUA" herein) "medical "device" that requires informed consent.

397.    Defendant Owen ridiculed Plaintiff's concerns, or simply ignored them, and refused to discuss the risk/benefit analysis of prolonged mask wearing,

398.    Beginning in September 2021 Plaintiff had multiple phone calls and email exchanges, regarding face masks, with one of our country's pre-eminent experts in industrial hygienics, Stephen E. Petty.

399.    Stephen E. Petty, P.E., CIH, has provided testimony regarding the uselessness of face masks for mitigating the transmission or infection of SARS CoV-2.

400.    Stephen E. Petty has provided testimony as an expert witness on the validity of "social distancing" and "mask mandates" on "COVID-19" for Kentucky's Boone Circuit Court, Case No. 20-CI-00678, which struck down Kentucky's mask mandate in July 2020.

401.    Stephen E. Retty, P.E., CIH has served as an expert witness in approximately 400 cases relating to toxic or infectious exposure, personal protective equipment ("PPE"), and as a warning expert.

EXHIBIT P10A:  PETTY---Professional Experience.pdf - Google Drive
EXHIBIT P10B:  PETTY---Expert Case List.pdf - Google Drive
EXHIBIT P10C :  PETTY---Declaration---2021-09-24 - CA.pdf - Google Drive
EXHIBIT P10D:  PETTY---Background Experience.pdf - Google Drive
EXHIBIT P10E:  PETTY---Affidavit - 2021-06-01 - signed.pdf - Google Drive

402.     Despite having always shared medical decisions regarding A.R.W. for

A.R.W.'s entire life, Plaintiff was concerned that Defendant Owen might, in

light of her unilateral decisions regarding face masks when she had A.R.W.

in her care, have A.R.W. injected with an EUA Pfizer BioNTech 162b2

"vaccine".

403.     Defendant Owen repeatedly texted Plaintiff that he needed to give

her more money, which Plaintiff did not believe he owed Defendant Owen.

404.     Defendant Owen had A.R.W. injected with a Pfizer EUA GTB for the

first time on July 21, 2021, without informed consent or the knowledge of

Plaintiff.


## I.  PFIZER INJECTION DISCOVERED & EXTORTION ANTICIPATED

405.     In, or around, July 2021, Plaintiff began to suspect that Defendant

Owen and Defendant Lerman intended to extort money from him.

406.     Plaintiff texted Defendant Owen that she needed to provide him with

the title to his FJ Cruiser before Plaintiff would sit down to go over their

receipts for shared parenting and house expenses.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 71

407.     Defendant Owen refused to.

408.     On August 14, 2021, during A.R.W.'s week at Plaintiff's house, Plaintiff had a feeling that Defendant Owen may have lied to Plaintiff, and Plaintiff asked A.R.W. if Defendant Owen had vaccinated A.R.W. for "Covid-19".

409.     A.R.W. burst into tears and told Plaintiff that Defendant Owen had him vaccinated for "Covid-19".

410.     Defendant Owen requested to take A.R.W. to a friend's wedding the night of August 14, 2021, and Plaintiff dropped A.R.W. off at Defendant Owen's house.

411.     On the morning of August 15, 2021, Defendant Owen told A.R.W. that she was going to take A.R.W. for a second Pfizer "vaccine" shot the next day.

412.     A.R.W. texted Plaintiff to come pick him up.

413.     Plaintiff immediately drove to Defendant Owen's house and picked his son up.

414.     After Plaintiff and A.R.W. returned home to Plaintiff's house on August 15, 2021, they discussed Defendant Owen's intentions of injecting A.R.W. with a second Pfizer "vaccine" shot.

415.     Plaintiff and A.R.W. examined the current data from the Vaccine Adverse Event Reporting System ("VAERS" herein), and agreed that the

dangers of a Pfizer "vaccine" shot were greater than the potential benefit to A.R.W.

416. On August 16, 2021, Defendant Owen texted Plaintiff that she would "repossess the FJ and evict you. All of these things are within my power."

417. Plaintiff replied via text, "Did you just threaten me?"

418. Defendant Owen replied via text, "Definitely."

419. At that time A.R.W. did not wish to text with Defendant Owen, speak with her on the phone, or go back to Defendant Owen's house.

420. Plaintiffs concluded that Defendant Owen posed a direct and imminent risk to A.R.W.'s physical safety due to the likelihood of further coercion by Defendant Owen to inject A.R.W. with a second Pfizer "vaccine" shot.

421. Defendant Owen accused Plaintiff of keeping A.R.W. from her, and Plaintiff assured Defendant Owen that A.R.W. was exercising his right to decide which house A.R.W. was staying at.

422. On, or around, August 19, 2021, Plaintiff pleaded with A.R.W. to call Defendant Owen to assure Defendant Owen that Plaintiff was not interfering with the communication of Defendant Owen and A.R.W.

423. When A.R.W. called Defendant Owen, Defendant Owen was so verbally abusive that A.R.W. set his phone down and walked to his room.

424.     Defendant Owen refused to come to Plaintiff's house to have a family conversation.

425.     Plaintiff invited Defendant Owen to come to Plaintiff's house and sit down to have a family discussion with A.R.W., but Defendant Owen refused.

426.     Plaintiff and A.R.W. both examined the VAERS data to ascertain that more people had died as a proximal cause of the COVID-19 "vaccines" than all other vaccines combined in the thirty-year history of VAERS.

427.     Plaintiff and A.R.W. shared valid, reasonable concerns that Defendants Owen and Lerman would subject A.R.W. to further medical experimentation with a Pfizer BioNTech 162b2 injection that could cause irreparable harm, or death, to A.R.W.

428.

## J. CASE NO. 21-2-11149-8 SEA PROTECTION ORDER

429.     On August 21, 2021, Defendant Owen filed a Petition for Order of Protection, Case No. 21-2-11149-8 SEA, in King County Superior Court.

430.     In her petition, Defendant Owen falsely asserted that she was the "sole legal guardian" of A.R.W.

431.     In her petition, Defendant Owen falsely asserted that Plaintiff's FJ Cruiser was hers.

432.     Defendant Owen requested the court order the return of both A.R.W. and Plaintiff's FJ Cruiser to her sole possession.

433.     Defendant Owen did not inform the court that Plaintiff had paid Defendant Owen in full for his FJ Cruiser in 2018.

434.     Defendant Owen invoked *In Rem* jurisdiction over Plaintiff's FJ Cruiser without providing evidence to the court of an ownership interest in Plaintiff's FJ Cruiser.

435.     Defendant Owen stated in her Declaration that she wanted "my house back", in reference to the house.

436.     Defendant Owen did not inform the court in her Declaration that she and Plaintiff bought the house together and co-owned it.

437.     Defendant Owen included two police reports from 2015 as Exhibits accompanying her sworn Declaration.

438.     In both police reports Defendant Owen stated to police that she and Plaintiff co-owned the house.

439.     Defendant Owen declared that Plaintiff had acted as A.R.W.'s father for 12 years.

440.     Defendant Owen declared that A.R.W. was related to Plaintiff as Plaintiff's child.

441.     Defendant Owen did not provide King County Superior Court with a court order determining her to be the "sole legal guardian" of A.R.W.

442.     On the afternoon of August 25, 2021, Plaintiff learned that an SPD officer had come to his house with a thick stack of papers.

443.     Plaintiff immediately suspected that Defendant Owen had filed for a

Temporary Restraining Order to seize custody of A.R.W.

444.     Plaintiff then phoned King County Superior Court and was told by a

court clerk that a Petition for Temporary Restraining Order had been filed

against him.

445.     On the evening of August 25, 2021 Plaintiff called the north precinct

of the SPD and asked if he could come by the precinct to get the Petition for

Temporary Restraining Order filed by Defendant Owen.

446.     The duty officer told Plaintiff that no Respondent for a TRO had ever

proactively asked to be provided a copy of a TRO against themself, and that

the duty officer needed to ask a superior officer what to do.

447.     The duty officer informed Plaintiff that Plaintiff should call back in

the morning to obtain the copy of the TRO.

448.     On the morning of August 26, 2021, before Plaintiff was legally

served with the Temporary Order of Protection by SPD, A.R.W. left the

house for his own safety.

449.     Around the same time that morning, one of Plaintiff's friends took

Plaintiff's FJ Cruiser to an unknown location for safekeeping to prevent

Defendant Owen from stealing it.

450.     A.R.W. left a note on the dining room table for Plaintiff, which stated,

"Hey dad I ran away because I'm afraid of what mom will do to me."

451.    A.R.W. left his cell phone and iPad inside Plaintiff's home, where they remained unused until September 3, 2021.

452.    Later that morning, on August 26, 2021, Plaintiff was legally served with a Temporary Order of Protection by SPD when Plaintiff drove to the north precinct of the SPD to pick it up.

## K.  SPD CALLED TO SEARCH PLAINTIFF'S HOME

453.    On, or before, August 29, 2021, Defendants Owen and Lerman, knowing that Judge Crawford-Willis had issued a $10,000 bench warrant for Plaintiff's arrest, planned and intended to get SPD officers to arrest Plaintiff by making a false report that A.R.W. was at Plaintiff's house so that SPD would respond to Plaintiff's house.

454.    Suspecting the planned intentions of Defendants Owen and Lerman, Plaintiff paid the $10,000 bench warrant to foil their plot.

455.    On, or around, August 29, 2021, Defendant Owen reported to SPD that she knew A.R.W. was in Plaintiff's home, because she could see activity on A.R.W.'s iPad inside Plaintiff's home.

456.    Defendant Owen asserted to SPD that she was the "sole legal guardian" of A.R.W., without providing a court order substantiating that.

457.     Defendant Owen asserted to SPD that Plaintiff's FJ Cruiser was hers, without mentioning that Plaintiff had paid Defendant Owen in full for his FJ Cruiser in 2018.

458.     On, or around, August 31, approximately ten (10) SPD officers came to Plaintiff's home, including Defendant Odell, asking to search it for A.R.W.

459.     Defendant Odell stated that Defendant Owen had told SPD that Defendant Owen knew A.R.W. was inside Plaintiff's home because Defendant Owen allegedly could see "activity" on A.R.W.'s iPad at Plaintiff's address.

460.     Plaintiff informed Defendant Odell, and other officers, that Defendant Owen was lying about the iPad activity, and that the digital history of the devices is provable.

461.     Defendant Odell did not want to verify the digital history of the iPad.

462.     Plaintiff assured Defendant Odell that A.R.W. was not in the house, and that A.R.W. had not been in the house since he left for his own safety on the morning of August 26, 2021.

463.     Plaintiff told Defendant Odell that if SPD wished to search it, they were welcome to have half of the officers stand guard at Plaintiff's house while the other half of the officers went to obtain a search warrant.

464.     Defendant Odell and other SPD officers declined Plaintiff's offer and all officers left.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 78

## L.  JANE ADDAMS MIDDLE SCHOOL ENROLLMENT

465.     On, or around, September 1, 2021, Defendant Owen enrolled A.R.W. in Jane Addams Middle School, ("school" herein).

466.     Unknown to Plaintiff at the time, Defendant Owen told school staff that she was the "sole legal guardian" of A.R.W. and that Plaintiff was not allowed custody of A.R.W.

467.     Defendant Owen did not provide Jane Addams Middle School with a court order substantiating her claim to be the "sole legal guardian" of A.R.W.


## M. SPD INVESTIGATION---PLAINTIFF SUSPECT

468.     On, or around, September 2, 2021, Defendant Christiansen returned Plaintiff's phone call and recorded it with Plaintiff's consent.

469.     Plaintiff informed Defendant Christiansen that Defendant Owen had subjected A.R.W. to a Pfizer BioNTech 162b2 EUA GTP without informed consent.

470.     Plaintiff informed Defendant Christiansen that the VAERS database shows the Pfizer COVID-19 "vaccine" to be the most dangerous "vaccine" in the history of the VAERS database.

471.     Plaintiff informed Defendant Christiansen that A.R.W. was fearful that Defendant Owen intended to subject A.R.W. to a second Pfizer

BioNTech 162b2 EUA GTP without the informed consent of both Plaintiff and Defendant Owen.

472.     Defendant Christensen did not, as a mandatory reporter pursuant to RCW 26.44.030, notify Department of Children Youth and Family "DCYF" of his knowledge that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy or safety of the injections.

473.     Plaintiff informed Defendant Christiansen that A.R.W. had chose to run away for his own safety until the scheduled hearing on September 3, 2021.

474.     Defendant Christiansen disregarded Plaintiff's complaint and did not mention it in his notes.

475.     Defendant Christiansen disregarded Plaintiff's valid concern for the safety and well-being of A.R.W.

476.     Defendant Christiansen disregarded Plaintiff's valid concern that Defendant Owen posed an immediate threat to the physical safety of A.R.W.

477.     Defendant Christiansen did not take action to protect A.R.W. from Defendants Owen and Lerman.


N. DENIAL ORDER 21-2-11149-8

478.     On September 3, 2021, before Commissioner Schaefer presiding over the Temporary Restraining Order hearing, Plaintiff and Defendant Owen both gave verbal testimony.

479.     Commissioner Schaefer found Plaintiff's "testimony to be credible", and Commissioner Schaefer issued a full Denial Order of Defendant Owen's requests.

480.     Plaintiff had to plead with A.R.W. to call Defendant Owen, as Plaintiff wanted to assure Defendant Owen that A.R.W. was safe and sound.

481.     Defendant Owen told A.R.W. that she wanted him to come over to her house for a couple hours, and A.R.W. reluctantly agreed.

482.     While A.R.W. was on the phone with Defendant Owen, Plaintiff asked A.R.W. whether Defendant Owen wished to pick A.R.W. up from Plaintiff's house, or if Plaintiff should drop A.R.W. off at Defendant's house.

483.     A.R.W. said that Defendant Owen wanted Plaintiff to bring A.R.W. to her house, and Plaintiff agreed.


## O. PLAINTIFF ACCUSED OF KIDNAPPING A.R.W. & ARRESTED

484.     Defendant Lerman then called SPD and reported that Plaintiff had kidnapped "her" stepson, A.R.W.

EXHIBIT P23A: 2021-9-3-SPD-LERMAN-21-230480.pdf - Google Drive

485. Defendant Owen asserted to SPD that Plaintiff had possession of "her" FJ Cruiser, and that Plaintiff was keeping A.R.W. from her.

486. Defendants Ladd and Willenberg responded to the house of Defendants Owen and Lerman at around 120pm.

487. Defendants Ladd and Willenberg were informed by Defendant Owen that Commissioner Schaefer had issued a full Denial Order at the TRO hearing that morning.

488. A longtime family friend, Daniel Heller, came to Plaintiff's house to assist Plaintiff with the return of Plaintiff's FJ Cruiser.

489. Soon thereafter, while Plaintiff and A.R.W. were getting a ride to pick up Plaintiff's FJ Cruiser, SPD Officer Gabriel Ladd called Mr. Heller's cell phone, accusing Mr. Heller of kidnapping A.R.W.

490. Plaintiff immediately called the cell phone of Officer Ladd and explained that Commissioner Schaefer had denied Defendant Owen's petition in full.

491. Officer Ladd asserted that his computer system ("WACIC) still showed that there was a Restraining Order in effect that prevented Plaintiff from being within 500ft of A.R.W.

492. Officer Ladd demanded that Plaintiff and A.R.W. meet him at the North Precinct.

493.     Plaintiff and A.R.W. picked up Plaintiff's FJ Cruiser moments later. Plaintiff called attorney Pope, who told Plaintiff to immediately obtain a certified copy of the Denial Order from the King County clerk's office.

494.     Attorney Pope informed Plaintiff that Attorney Pope's professional opinion was that the conduct of Defendant Ladd indicated that the SPD "had it out" for Plaintiff, specifically the fact that Defendant Ladd was asserting ignorance of the full Denial Order issued by Commissioner Schaefer hours prior.

495.     Plaintiff and A.R.W. immediately drove to the King County Court house and obtained an official copy of the Denial Order from the clerk's office.

496.     Plaintiff suspected that Defendant Ladd intended to arrest Plaintiff.

497.     Plaintiff suspected Defendant Ladd was falsely asserting ignorance of Commissioner Schaefer issuing a full Denial Order that morning.

498.     As soon as Plaintiff returned to the parking lot outside the courthouse, he texted images of each of the four pages of the Denial Order to Officer Ladd's phone, and then texted the same images to Plaintiff's attorney, Richard Pope.

499.     Plaintiff then instructed attorney Richard Pope to also text the images of the four-page Denial Order to Officer Ladd's cell phone.

500.     Plaintiff and A.R.W. then left downtown Seattle, heading toward the North Precinct of the SPD.

501.     In route, Plaintiff was speaking with attorney Pope on his cell phone, and attorney Pope and Plaintiff agreed that the SPD were acting as if they had every intention of arresting Plaintiff, despite sending Officer Ladd the images of the Denial Order.

502.     Mr. Pope advised Plaintiff that Plaintiff was under no obligation to go to the North Precinct and could simply drop A.R.W. off at Defendant Owen's house as planned.

503.     In between Plaintiff's house and Defendant Owen's house, Plaintiff pulled onto the shoulder of N 128th Street to call Mr. Pope again.

504.     Plaintiff again sent the images of the four-page Denial Order to Officer Ladd at 3:58 pm from phone number (206) 966-3158

505.     At that moment, Officer Ladd pulled around the corner and told Plaintiff that he was under arrest for violating the court order restraining Plaintiff from A.R.W.

506.     Plaintiff handed the four pages of the Denial Order to Officer Ladd.

507.     Officer Ladd refused to acknowledge the Denial Order and handcuffed Plaintiff.

508.    Plaintiff informed Defendant Ladd that Defendant Owen had

subjected A.R.W. to a Pfizer BioNTech 162b2 EUA GTP without informed

consent.

509.    Plaintiff informed Defendant Ladd that the VAERS database shows

the Pfizer COVID-19 "vaccine" to be the most dangerous "vaccine" in the

history of the VAERS database.

510.    Plaintiff informed Defendant Ladd that A.R.W. was fearful that

Defendant Owen intended to subject A.R.W. to a second Pfizer BioNTech

162b2 EUA GTP without the informed consent of both Plaintiff and

Defendant Owen.

511.    Plaintiff informed Defendant Ladd that A.R.W. had chosen to run

away for his own safety until the scheduled hearing on September 3, 2021.

512.    Defendants Ladd and Willenberg disregarded Plaintiff's complaint

and did not mention it in their report.

513.    Defendants Ladd and Willenberg did not assert that Plaintiff

intended to hold A.R.W. from Defendant Owen for a permanent or

protracted period.

514.    The fact that Plaintiff requested that A.R.W. call his mother to

arrange dropping A.R.W. off at Defendant Owen's house is prima facie

evidence that Plaintiff had no intention of keeping A.R.W. from Defendant

Owen for a protracted period.

515.    Defendants Ladd and Willenberg disregarded Plaintiff's valid concern for the safety and well-being of A.R.W.

516.    Defendants Ladd and Willenberg disregarded Plaintiff's valid concern that Defendant Owen posed an immediate threat to the physical safety of A.R.W.

517.    Defendants Ladd and Willenberg, as mandatory reporters pursuant to RCW 26.44.030(1)(a), did not report that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy or safety of the injections.

518.    Defendant Willenberg was legally required to inform A.R.W. that he was being recorded electronically.

> *RCW 10.122.040 Consent not required—Notice.*
> *Notwithstanding RCW 9.73.030 and 9.73.090, a law enforcement officer conducting a custodial interrogation is not required to obtain consent to electronic recording from the individual being interrogated, but must inform the individual that an electronic recording is being made of the interrogation.*

519.    Defendant Ladd was required to strictly follow electronic recording requirements during his arrest of Plaintiff.

> *RCW 9.73.090 Certain emergency response personnel exempted from RCW 9.73.030 through 9.73.080—Standards—Court authorizations— Admissibility.*
> *(b) Video and/or sound recordings may be made of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court. Such video and/or sound recordings shall conform strictly to the following: (i) The arrested person shall be informed that such recording is being made and the statement so informing him or her shall be included in the recording; (ii) The recording shall commence*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 86

*with an indication of the time of the beginning thereof and terminate with an indication of the time thereof; (iii) At the commencement of the recording the arrested person shall be fully informed of his or her constitutional rights, and such statements informing him or her shall be included in the recording;*

520.    Defendants Ladd and Willenberg did not acknowledge that Plaintiff's right to protect his own son from the threat of direct and imminent harm was an affirmative defense to the criminal allegations of Defendants Christensen, Ladd, Willenberg, Owen and Lerman.

521.    Defendants Ladd and Willenberg did not take action to protect A.R.W. from Defendants Owen and Lerman.

522.    Defendants Ladd and Willenberg, employed as public servants, may not avoid culpability for harms done, or endangerment caused, to Plaintiffs simply because Plaintiffs were not under their direct supervision.  Just as any parent is eminently responsible for whom they entrust their child with, so to were Defendants Ladd and Willenberg responsible for resultant harms to Plaintiffs.

523.    The Non-delegable Doctrine holds that Defendants Ladd and Willenberg, employed as public servants, by being duly informed by Plaintiff of harms that were likely to result from Defendants' neglect to prevent, were responsible for their reckless disregard of what would happen to Plaintiffs when transferred to the care or custody of another.

1
2
3

## P.  FJ CRUISER STOLEN

4   524.     Within a few minutes, Defendant Lerman arrived, got into Plaintiff's

5
6   FJ Cruiser with A.R.W.

7   525.     Plaintiff protested to Defendant Ladd, explaining that the FJ Cruiser

8   was Plaintiff's, and that he possessed evidence of that fact in his cell phone

9   messages from Defendant Owen.

10   526.     Defendant Ladd refused to acknowledge Plaintiff's evidence showing

11
12   Plaintiff to be the legal owner and allowed Defendant Lerman to drive off in

13   Plaintiff's FJ Cruiser.

14   527.     Defendants Ladd and Willenberg alleged violations of RCW 9A.40.060

15
16   Custodial interference in the first degree, and violation of a domestic

17   violence no contact restraining order in Case No. 2021-003578.

18   *RCW 10.31.100 Arrest without warrant.*
*A police officer having probable cause to believe that a person has*
19   *committed or is committing a felony shall have the authority to arrest the*
*person without a warrant. A police officer may arrest a person without a*
20   *warrant for committing a misdemeanor or gross misdemeanor only when*
*the offense is committed in the presence of an officer, except as provided in*
21   *subsections (1) through (11) of this section.*
*(2) A police officer shall arrest and take into custody, pending release on*
22   *bail, personal recognizance, or court order, a person without a warrant*
*when the officer has probable cause to believe that:*
23   *(a) A domestic violence protection order, a sexual assault protection order, a*
*stalking protection order, or a vulnerable adult protection order has been*
24   *issued, of which the person has knowledge, under 26.09, *26.10, 26.26A, and*
*26.50 RCW.*
25
26
27   PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 88
28

528.    A violation by Plaintiff of the protection order issued in King County Superior Court Case No. 21-2-11149-8 SEA would have been a Gross Misdemeanor.

529.    As there was no valid protection order in effect at the time of the arrest, Defendants Ladd and Willenberg had no legal authority to arrest Plaintiff pursuant to RCW 10.31.100(2)(a).

530.    For the arrest of Plaintiff by Defendants Ladd and Willenberg to have been valid, Defendants Ladd and Willenberg needed probable cause to believe that Plaintiff intended to hold A.R.W. permanently or for a protracted period.

531.    Plaintiff and Defendant Owen, beginning in August 2020, had used a flexible shared parenting plan of exchanging A.R.W. on a weekly basis.

532.    Eight days elapsed between when Plaintiff was served the restraining order and when Officers Ladd and Willenberg arrested Plaintiff as Plaintiff was on his way to drop A.R.W. off at Defendant Owen's house.

533.    Eight days is one more day than a week.  One day cannot, by any rational conclusion, be construed as "permanently or for a protracted period."

534.    Defendants Ladd and Willenberg did not have probable cause to arrest Plaintiff on September 3, 2021.

*RCW 9A.40.080 Custodial interference—Defense*
*(2) In any prosecution of custodial interference in the first or second degree, it is a complete defense, if established by the defendant by a preponderance of the evidence, that: (a) The defendant's purpose was to protect the child, incompetent person, or himself or herself from imminent physical harm, that the belief in the existence of the imminent physical harm was reasonable, and that the defendant sought the assistance of the police, sheriff's office, protective agencies, or the court of any state before committing the acts giving rise to the charges or within a reasonable time thereafter;*

535.    Plaintiff had repeatedly expressed to multiple SPD Officers the previous week, including Defendant Christensen, his grave concern that Plaintiffs had good cause to fear for the physical safety of A.R.W. if left in the custody of Defendants Owen and Lerman for more than a few hours.

536.    Plaintiff explained to Defendant Christensen that Defendants Owen and Lerman had subjected A.R.W. to a potentially life-threatening medical experiment without informed consent several weeks prior, and intended to do so again.

537.    Plaintiff explicitly stated to Defendants Ladd and Willenberg. the same concern: Defendants Owen and Lerman had subjected A.R.W. to a potentially life threatening medical experiment without informed consent several weeks prior, and intended to do so again. Defendants Ladd and Willenberg.

538.    Defendants Ladd and Willenberg, after being informed that A.R.W. would be recklessly endangered in the extended custody of Defendants

Owen and Lerman, did knowingly and willfully enable Defendant Lerman to take custody of A.R.W.

539.     Before entering King County Jail, Plaintiff informed Defendants Ladd and Willenberg that Plaintiff had a disability precluding him from wearing anything obstructing his face.

540.     Plaintiff informed Defendants Ladd and Willenberg that King County Jail personnel would most assuredly violate Plaintiff's disability rights, protected by the ADA and RCW 49.60.030, 040, if Defendants Ladd and Willenberg transferred Plaintiff to King County Jail.

541.     Defendants Ladd and Willenberg disregarded Plaintiff's concerns, and knowingly and willingly transferred custody of Plaintiff to King County Jail personnel with the knowledge and understanding that Plaintiff would then be subjected to coercion or being forced to wear an EUA medical device face mask, be forced to undergo PCR test, or have an EUA mesh bag forced over Plaintiff's head, in violation of federal ADA law, and RCW 49.60.030, .040.

542.     Upon entrance to the King County Jail, Plaintiff declined to wear an EUA medical device "face mask".

543.     Defendants KC John Doe #4 and KC Jane Doe #1 forced a mesh "spit bag" over Plaintiff's head, against his will.

544.      Defendants KC John Doe #4 and KC Jane Doe #1 told Plaintiff that if he refused to be subjected to a PCR test that no judge would allow Plaintiff into court for arraignment and that Plaintiff would be held in jail indefinitely.

545.      Defendants KC John Doe #4 and KC Jane Doe #1 told Plaintiff that if he refused to wear a face mask that he would be held in solitary confinement indefinitely.

546.      Plaintiff suffers from PTSD due to childhood sexual abuse trauma and was irreparably harmed by having a mesh bag and face mask forced over his head and face.

547.      Plaintiff was forced under threat, duress, or coercion, by Defendants KC John Doe #4 and KC Jane Doe #1, against his will, to be subjected to a PCR test.  Defendants KC John Doe #4 and KC Jane Doe #1 told Plaintiff that he would never be allowed to enter Seattle Municipal Court without submitting to a PCR test, and that Plaintiff would be trapped in a holding cell indefinitely.

548.      Defendant Willenberg signed two reports regarding SPD Incident #21-003578.

      EXHIBIT P23C:  Willenberg   Incident/offense
      EXHIBIT P23D:  Willenber  arrest report

549.    Officer Ladd omitted any mention that Plaintiff texted Officer Ladd

images of the four page Denial Order issued by Commissioner Schaefer in

his Statement of Probable Cause.

EXHIBIT P23B:  Denial order

550.    Officer Ladd omitted any mention in his Statement of Probably Cause

that Plaintiff handed him the four-page Denial Order issued by

Commissioner Schaefer.

551.    In his Statement of Probable Cause Officer Ladd falsely asserted that

A.R.W. "stated on scene that he had been with his father for the previous

two weeks."

552.    In his Statement of Probable Cause Officer Ladd wrote that "The

order was still in WACIC with an expiration listed as 09/03/2021."

EXHIBIT P23E:  Ladd incident 2 report
EXHIBIT P23F:  Ladd incident 3 report

553.    In his Statement of Probable Cause Officer Ladd omitted the fact that

the TRO explicitly stated that it expired at the conclusion of the hearing

that commenced at 830am for Family Court case no. 21-2-11149-8 SEA.

*RCW 9A.76.175 Making a false or misleading statement to a public servant.*
*A person who knowingly makes a false or misleading material statement to*
*a public servant is guilty of a gross misdemeanor. "Material statement"*
*means a written or oral statement reasonably likely to be relied upon by a*
*public servant in the discharge of his or her official powers or duties.*

554.     After Plaintiff was released from King County Jail on September 4,

2021, he discovered that the text message images of the Denial Order he

had sent to Officer Ladd and attorney Pope at approximately 330pm had

been deleted from his phone while in the possession of the SPD.

555.     On September 6, 2021, Defendant Lerman posted to her Facebook

page, under the pseudonym "Justice Rivera" the following, in part:

> *Seattle King County is not booking misdemeanor warrants. Great! I thought until my fiancée's abuser kidnapped her kid and we had to flee as soon as we could because he wouldn't be arrested on his active warrant or for violating conditions of his bail…*
>
> *I was in full support of the eviction moratorium until my finance's abuser refused to leave the house she owns and hasn't been paying rent despite having tons of money. He still hasn't and he won't, but it will now take us months to evict him…*
>
> *I'm a prison abolitionist because I know that the police, family court, and prison systems were not designed to help us. They are serving the exact function they were meant to – to protect a cishet white male moral order. Tamir Rice was killed for being black and playing with a toy gun but a cishet white man with a rifle is given a slap on the wrist. Breonna Taylor was killed by police in her sleep in THE WRONG HOUSE. But, GPS evidence isn't enough to go into a white man's house to rescue a child. I know without a doubt that if this abuser wasn't white, the police and prosecutors would care. Instead, the courts have said there isn't enough evidence for a DV protection order and that this abusive man has rights to my stepson even though he isn't on the birth certificate or any other legal documents.*

556.     At that time, Plaintiff was subject to arrest because Defendant

Crawford-Willis had issued a $10,000 "failure to appear" bench warrant for

the arrest of Plaintiff on July 22, 2021.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 94

557.    Defendants Owen and Lerman had expected that, by falsely reporting to SPD that A.R.W. was in Plaintiff's house, that the responding SPD officers would arrest Plaintiff and Defendants Owen and Lerman would be able to deprive Plaintiff of his property rights to the house.

558.    Defendant Crawford-Willis issued the "failure to appear" bench warrant after Defendant Crawford-Willis' denied Plaintiff's access to Seattle Municipal Court without wearing an EUA face mask.

559.    Plaintiff later filed a criminal complaint in the record of SMC Case No. 656748 detailing the violations by Defendant Crawford-Willis.

EXHIBIT P13B: 2021-12-24-CC-WILLIS.pdf - Google Drive

## Q. PLAINTIFF COMPLAINTS TO SPD

560.    Plaintiff repeatedly attempted to report the felony theft of his FJ Cruiser to SPD Auto Theft Unit, naming Defendants Owen and Lerman.

561.    SPD Auto Theft Unit repeatedly refused to act on Plaintiff's complaints, pursuant to policies of the SPD or CITY OF SEATTLE.  SPD officers only documented that Plaintiff had submitted records in a Supplement Report to the arrest of Plaintiff on September 3, 2021.

562.    Pursuant to SPD policy, officers did not act on Plaintiff's proof of felony law violations by Defendants Ladd, Willenberg, Owen and Ladd.

EXHIBIT P23G:  Supplement Report Yvonne Ortiz

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 95

563.    Plaintiff repeatedly attempted to report felony custodial interference to the SPD, naming Defendants Owen and Lerman as the perpetrators.

564.    Defendant Sgt. Bruce took no action after being informed by Plaintiff that A.R.W. had been subjected to coerced medical experimentation, as the policy of SPD and CITY OF SEATTLE was that the Covid-19 "vaccines" were fully approved by the FDA as "safe" and "effective".

565.    Plaintiff repeatedly attempted to report to the SPD that A.R.W. was in immediate danger of being subjected to a second Pfizer BioNTech 162b2 experimental "vaccine" without informed consent.

566.    SPD repeatedly refused to act on Plaintiff's complaints.

567.    On September 15, 2021, attorney Richard Pope withdrew as attorney for Plaintiff in King County Family Court Case No. 21-5-00680-6 SEA.

EXHIBIT P1H: 2021-11-15---POPE WITHDRAWAL.pdf - Google Drive

568.    Plaintiff was unable to reach A.R.W. by phone call for the next several weeks and suspected that the text message responses from his son's phone were, in fact, from Defendant Owen pretending to be A.R.W., repeatedly texting "I'm busy."

569.    A.R.W. later confirmed to Plaintiff that Defendant Owen had been pretending to be A.R.W. by texting Plaintiff from A.R.W.'s cell phone to tell Plaintiff he was "busy".

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 96

## R.  CASE NO. 21-5-00680-6 INITIATED BY OWEN

570.      On or around September 21, 2021, Defendant Owen, by and through

her attorney, Nathan Cliber, initiated Case No. 21-5-00680-6 SEA in King

County Family Court by filing a Petition to Decide Parentage.   This was

done without Plaintiff's knowledge or consent.

EXHIBIT  P1K:  Petition to Decide Parentage

571.      The Petition to Decide Parentage, signed under penalty of perjury

under the laws of the state of Washington by Defendants Owen and Cliber,

falsely stated, "To my knowledge, no one is already presumed to be a parent

by marriage, domestic partnership or holding out."

572.      The Petition to Decide Parentage, signed under penalty of perjury

under the laws of the state of Washington by Defendants Owen and Cliber,

falsely stated, "The Respondent (Plaintiff Benshoof) has, at all times,

refused to sign an Acknowledgment of Parentage or otherwise agree to legal

recognition as a parent of the child."

573.      The Petition to Decide Parentage filed by Defendant Owen, by and

through Defendant Cliber, was without merit, given what Defendant Owen

had already stated under penalty of perjury in her Declaration in Case No.

21-2-11149-8 SEA several weeks prior.

**RCW 26.26A.435 Adjudicating parentage of child with presumed parent.**

*(2) A presumption of parentage under RCW 26.26A.115 cannot be overcome
after the child attains four years of age unless the court determines:
(a) The presumed parent is not a genetic parent, never resided with the
child, and never held out the child as the presumed parent's child; or
(b) The child has more than one presumed parent.*

574.     Defendant Owen had already declared under penalty of perjury in

Case No. 21-2-11149-8 SEA that Plaintiff had acted as A.R.W.'s father for 12

years.

575.     Defendant Owen had already declared under penalty of perjury in

Case No. 21-2-11149-8 SEA that A.R.W. was related to Plaintiff as

Plaintiff's child.

576.     On September 22, 2021, Defendants Owen and Cliber, under penalty

of perjury under the laws of the state of Washington, signed a Motion for

Immediate Restraining Order (Ex Parte) in Case No. 21-5-00680-6 SEA

against Plaintiff, without Plaintiff's knowledge or consent.

EXHIBIT P1L:  2021-9-28---Ex.Part.R.O.pdf - Google Drive

577.     Defendant Owen falsely declared, under penalty of perjury under the

laws of the state of Washington that Plaintiff has a "history of violence and

threats against me".

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 98

578.     Defendant Owen falsely declared, under penalty of perjury under the laws of the state of Washington, that Plaintiff "withheld A.R.W. from me for nearly three weeks without my permission or any legal authority".

579.     In fact, between August 18, 2021, and August 25, 2021, Plaintiff repeatedly invited Defendant Owen by text message to come to his house to sit down and have a family conversation between Plaintiff, A.R.W. and Defendant Owen.

580.     At that time A.R.W. did not wish to speak to Defendant Owen by text or phone call.

581.     Defendant Owen falsely declared, under penalty of perjury under the laws of the state of Washington, that Plaintiff "currently has no legal right to any time with A.R.W. whatsoever as he is not A.R.W.'s legal parent and has not, at this time, sought to be recognized as one.  His parenting rights do not exist and cannot be affected by a Restraining Order."

582.     Defendant Owen falsely declared, under penalty of perjury under the laws of the state of Washington, that Plaintiff "has not let me see or speak to A.R.W. and refused to return him to my care."

583.     On September 22, 2021 Defendant Owen stated, under penalty of perjury under the laws of the state of Washington, in her Declaration of JESSICA R. OWEN, Plaintiff "has always refused to be legally recognized or acknowledged as a parent to my son, A.R.W.  This despite Kurt (Plaintiff)

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 99

having acted as A.R.W.'s father for A.R.W.'s whole life, and a near certainty

that he is, in fact the biological father.'""

EXHIBIT P2C:  Declaration Owen

584.    Defendant Cliber, acting as Defendant Owen's attorney, thus had

knowledge that the Petition to Decide Parentage, pursuant to RCW

26.26A.435 (2)(a) was meritless.


## S.  JANE ADDAMS MIDDLE SCHOOL

585.    On September 23, 2021, Plaintiff drove to A.R.W.'s school to speak to

A.R.W. without interference from Defendant Owen.

586.    Plaintiff was told by Defendant Vice Principal Justin Booker that he

could not come inside the school without a mask.

> *RCW 28A.642.010 Discrimination prohibited—Definitions. Discrimination*
> *in Washington public schools on the basis of race, creed, religion, color,*
> *national origin, honorably discharged veteran or military status, sexual*
> *orientation including gender expression or identity, the presence of any*
> *sensory, mental, or physical disability, or the use of a trained dog guide or*
> *service animal by a person with a disability is prohibited.*

587.    Plaintiff was told by Defendant Booker that he could not speak to his

son or see his son.

> *RCW 28A.605.020 Parents' access to classroom or school sponsored*
> *activities—Limitation. Every school district board of directors shall, after*
> *following established procedure, adopt a policy assuring parents access to*

*their child's classroom and/or school sponsored activities for purposes of observing class procedure, teaching material, and class conduct*

**RCW 28A.605.010 Removing child from school grounds during school hours.**
*The board of directors of each school district by rule or regulation shall set forth proper procedure to ensure that each school within their district is carrying out district policy providing that no child may be removed from any school grounds or building thereon during school hours except by a person so authorized by a parent or legal guardian having legal custody thereof,*

588.    Plaintiff does not lose parental rights when his son enters a Seattle Public School building.

589.    Plaintiff provided a sworn Affidavit to Defendant Booker of Jane Addams Middle School, asseverating that Plaintiff had full rights as the father of A.R.W.

EXHIBIT P6A:  Affidavit to SPS

590.    Plaintiff asked to see A.R.W.'s school records.

591.    Plaintiff had the right to review his son's school records.

**RCW 28A.605.030 Student education records—Parental review— Release of records—Procedure.**
*The parent or guardian of a student who is or has been in attendance at a school has the right to review all education records of the student.*

592.    Plaintiff was denied access to A.R.W.'s school records.

593.    Plaintiff was told to contact Seattle Public Schools Administration.

594.    On Friday September 24, 2021, Plaintiff drove to 849 NE 130th ST, outside Defendant Owen's home, to take A.R.W. to school.

595.     Plaintiff was unable to contact A.R.W. at Defendant Owen's home.

596.     Plaintiff called 911 to do a wellness check on A.R.W. and determine his son's location.

597.     Plaintiff drove to A.R.W.'s school to verify if his son was at school.

598.     School staff refused to verify if A.R.W. was at school.


## T.  A.R.W. WELLNESS CHECK CALL TO SPD

599.     Plaintiff returned to Defendant Owen's Street, where SPD had responded with two officers, SPD Incident #21-96302.

600.     Plaintiff was met by SPD Officer Bauer and SPD Officer John Doe #1.

601.     Defendants Bauer and SPD John Doe#1 refused to take Plaintiff's complaint of Custodial Interference by Defendant Owen.

602.     Defendant Bauer asserted to Plaintiff that Defendant Owen was the "sole legal guardian" of A.R.W.

603.     Plaintiff tried to provide Defendants Bauer and SPD John Doe #1 with the sworn Declaration that Plaintiff was the father of A.R.W. with full rights as his father which had been provided to Jane Addams Middle School Defendant Booker.

604.     Defendants Bauer and John Doe #1 refused to take Plaintiff's Declaration and refused to provide Plaintiff's Declaration to Defendant Owen.

605.     Defendant Bauer, in refusing to read Plaintiff's Declaration, told Plaintiff, "We know you are trying to set us up."

606.     Plaintiff was, in fact, trying to have his rights as a father, and those of A.R.W., respected and protected.

607.     The belief of Defendants Bauer and John Doe #1 that Plaintiff had intentions to "set them up" has had a causal relationship with the SPD policy to discriminate and refuse assistance to Plaintiff.

608.     Defendant Bauer then told Plaintiff that he would be subject to arrest for harassment of Defendant Owen, if Plaintiff returned to NE 130th ST outside Defendant Owen's home trying to speak with, or see, A.R.W.

609.     Plaintiff informed Defendants Bauer and John Doe #1 that such a threat constituted a violation of RCW 9A.80.010 Official misconduct, and threatening Plaintiff with Unlawful Imprisonment, and such threat constituted a Gross Misdemeanor.

## U. JANE ADDAMS DENIAL OF PLAINTIFF'S ACCESS

610.     On September 24, 2021, Robin Wyman, from the Office of Legal Counsel of Seattle Public Schools ("SPS" herein) emailed Plaintiff.

611.     Wyman informed Plaintiff that SPS required Plaintiff to provide SPS with a copy of A.R.W.'s birth certificate showing Plaintiff as the father of A.R.W. for Plaintiff to be provided with A.R.W.'s school records.

612.     On September 25, 2021, Plaintiff emailed Defendant Paula

Montgomery, Principal of Jane Addams Middle School.

613.     Plaintiff informed Defendant Montgomery that Defendants Owen and

Lerman were actively violating Plaintiff's parental rights by lying to school

officials and SPD officers.

614.     On September 27, 2021, Plaintiff again emailed Defendant

Montgomery, repeating the fact that Plaintiff has full parental rights

pursuant to RCW 26.26A.115, as a "presumed parent", which does not

require that Plaintiff's name be on the birth certificate of A.R.W.

615.     Upon information and belief of Plaintiff, not all parents of school kids

in WA have their names on their child's birth certificate.

616.     Plaintiff informed Defendant Montgomery that the burden of proof

for denying Plaintiff's parental rights is upon Defendants Owen, SPS and

Jane Addams Middle School Staff.

617.     SPS staff exhibited a discriminatory policy against Plaintiff in which

Defendant Owen's falsehoods were accepted as valid without need for

validation, whereas Plaintiff's sworn statements were presumed false

without a court order.

618.     On September 30, 2021, Defendant Montgomery emailed Plaintiff

requesting that Plaintiff not come on the campus of Jane Addams "unless

our district legal team indicates that you are a legal guardian" of A.R.W.

619.     Seattle Public Schools does not have the legal authority to adjudicate the rights of parents under RCW Title 26.   Seattle Public Schools does not have the legal authority to deny Plaintiff's rights as a father, except by court order.

## V.  PROTECTION ORDER 21-5-00680-6

620.     On September 28, 2021, Defendant Owen was granted a second Temporary Protection Order (Ex Parte) against Plaintiff in King County Family Court Case No. 21-5-00680-6 SEA.  This was done without Plaintiff's knowledge.

   EXHIBIT P2A:  2021-9-28···Ex.Part.R.O.pdf - Google Drive

## W. SEATTLE PUBLIC SCHOOLS

621.     On September 30, 2021, Gregory Narver, Chief Legal Counsel for SPS emailed Plaintiff and asserted that under FERPA, 34 CFR S 99.3 SPS was denying Plaintiff's access to A.R.W.'s school records.

622.     Mr. Narver informed Plaintiff that SPS would not provide Plaintiff with A.R.W.'s school records, unless Plaintiff provided SPS with A.R.W.'s birth certificate showing Plaintiff's name, or a court order under RCW 26.26A.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 105

623.     Seattle School District #1 received $145,077,274.00 from the CARES Act.

624.     Jane Addams Middle School is part of Seattle School District #1.

625.     Jane Addams Middle School is part of Seattle Public Schools.

626.     The CARES Act required compliance with COVID-19 measures, including the requirement that children wear EUA medical device "face masks".

627.     Defendants Montgomery and Booker required that A.R.W. wear an EUA medical device "face mask" while in attendance at Jane Addams Middle School from September 2021 through June 2022.

628.

## X.  KING COUNTY PROSECUTOR---FJ COMPLAINT

629.     On September 27, 2021, Plaintiff served the King County Prosecutor Office with sworn and witnessed criminal complaint against Defendant Owen for violation of RCW 9A.40.060 and RCW 9A.56.075.

         EXHIBIT P4E:  EXHIBIT-A--OWEN--FJ.pdf - Google Drive

630.     The sworn criminal complaint also alleged the involvement of Defendant Lerman (aka Justice Rivera).

631.     Kathleen O'Brien of the King County Prosecutor Office mailed the complaints back to Plaintiff with a cover letter stating, "If you would like The King County Prosecuting Attorney's office to review your criminal

allegations against Ms. Jessica Owen you will need to file a police report with local law enforcement.  And await a possible referral from that agency to our office."

EXHIBIT P4F:  Defendant O'brien Letter

632.     The Revised Code of Washington explicitly states that a prosecuting attorney has duties they shall perform when the prosecuting attorney "has information that any such offense has been committed."

633.     The Revised Code of Washington does not state that such information must come from the SPD or Sheriff Department.

634.     The refusal of Kathleen O'Brien to provide Plaintiff with redress for his grievances of criminal conduct is the "policy" of the King County Prosecuting Attorney's Office.

*RCW 36.27.020 Duties. The prosecuting attorney shall:*
*(6) Institute and prosecute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of felonies when the prosecuting attorney has information that any such offense has been committed and the prosecuting attorney shall for that purpose attend when required by them if the prosecuting attorney is not then in attendance upon the superior court;*

635.     "Shall" justly removes the option of "prosecutorial discretion" that could foreseeably corrupt our public institutions.

636.     RCW 36.27.020 commands a prosecuting attorney of the King County Prosecuting Attorney's Office to institute proceedings upon receipt of Plaintiff's sworn criminal complaints.

637.     The proceedings duly instituted by the prosecuting attorney are for the preliminary examination by a magistrate, in order that the magistrate shall be satisfied upon the whole examination that an offense has, or has not, been committed.

> **RCW 10.16.110 Statement of prosecuting attorney if no information filed— Court action.**
> It shall be the duty of the prosecuting attorney of the proper county to inquire into and make full examination of all the facts and circumstances connected with any case of preliminary examination, as provided by law, touching the commission of any offense wherein the offender shall be committed to jail, or become recognized or held to bail; and if the prosecuting attorney shall determine in any such case that an information ought not to be filed, he or she shall make, subscribe, and file with the clerk of the court a statement in writing containing his or her reasons, in fact and in law, for not filing an information in such case, and such statement shall be filed at and during the session of court at which the offender shall be held for his or her appearance: PROVIDED, That in such case such court may examine such statement, together with the evidence filed in the case, and if upon such examination the court shall not be satisfied with such statement, the prosecuting attorney shall be directed by the court to file the proper information and bring the case to trial.

638.     No such proceeding was instituted by the King County Prosecuting Attorney's Office, pursuant to the policies of said office, headed by Dan Satterberg.

639.     On October 20, 2021 Defendant Owen, against the express objections of Plaintiff, coerced A.R.W. into being injected with a second Pfizer BioNTech 162b2 EUA GTA without informed consent.

## Y.  CASE NO. 21-5-00680-6 SEA TRO HEARING OCTOBER 25, 2021

640.     In her sworn Declaration for Case No. 21-5-00680-6 SEA, Defendant Owen alleged Plaintiff to be a direct and imminent threat to her safety, as well as A.R.W.'s.

641.     The hearing for the Protection Order was scheduled for October 25, 2021.

642.     Commissioner Jason Holloway presided over the hearing in King County Family Court by Zoom.

643.     Plaintiff retained legal counsel from Richard Pope.

644.     Plaintiff was not allowed to appear in court in person.

645.     Plaintiff was not allowed to speak.

646.     Plaintiff was not allowed to face his accuser.

647.     Plaintiff was not allowed to question Defendant Owen.

648.     Commissioner Holloway allowed attorney Nathan Cliber to submit more than 100 pages of hearsay documents before the court for Commissioner Holloway's consideration.

649.    Commissioner Holloway allowed attorney Nathan Cliber to make

material statements of fact which Nathan Cliber did not know to be true.

650.    Commissioner Holloway stated on the record that "Mr. Benshoof is

not a domestic violence perpetrator."

> *RCW 26.50.010 Definitions. (Effective until July 1, 2022.)*
> *As used in this chapter, the following terms shall have the meanings given them:*
> *(3) "Domestic violence" means:*
> *(a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one intimate partner by another intimate partner; or*
> *(b) physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, sexual assault, or stalking as defined in RCW 9A.46.110 of one family or household member by another family or household member.*

651.    Defendant Holloway thus acknowledged the fact that Plaintiff had

never caused physical harm or injury, or even the infliction of fear of

physical harm, injury, or stalking.

652.    Defendant Holloway asserted there was "clear and convincing

evidence" to support Commissioner Holloway's assertion that Plaintiff posed

a "credible threat" to A.R.W. or Defendant Owen.

653.    Defendant Holloway asserted that Plaintiff posed a "credible threat"

to Defendant Owen and A.R.W., despite Defendant Holloway acknowledging

that in the previous twelve years Plaintiff had never done anything

remotely close to being a "credible threat".

654.   "Credible threat" is not defined in the Revised Code of Washington.

655.   Defendant Holloway did not disclose to Plaintiff that he had

consulted the judicial information system or any related database to

determine the criminal history of Plaintiff.

> *RCW 2.28.210 Court consultation of judicial information system—*
> *Disclosure to parties.*
> *(1) Before granting an order under any of the following titles of the laws of*
> *the state of Washington, the court may consult the judicial information*
> *system or any related databases, if available, to determine criminal history*
> *or the pendency of other proceedings involving the parties:*
> *(a) Granting any temporary or final order establishing a parenting plan or*
> *      residential schedule or directing residential placement of a child or*
> *      restraining or limiting a party's contact with a child under Title 26*
> *      RCW;*
> *(2) In the event that the court consults such a database, the court shall*
> *disclose that fact to the parties and shall disclose any particular matters*
> *relied upon by the court in rendering the decision. Upon request of a party,*
> *a copy of the document relied upon must be filed, as a confidential*
> *document, within the court file, with any confidential contact information*
> *such as addresses, phone numbers, or other information that might disclose*
> *the location or whereabouts of any person redacted from the document or*
> *documents.*

656.   Defendants Holloway and Keenan refused to provide Findings of Fact

and Conclusions of Law substantiating the slanderous assertion that

Plaintiff posed a "credible threat" to his own beloved son, A.R.W.

657.   Defendant Holloway did not, as a mandatory reporter pursuant to

RCW 26.44.030, notify Department of Children Youth and Family "DCYF",

or law enforcement, of his knowledge that A.R.W. had been subjected to two

Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or

proof of necessity, efficacy or safety of the injections.

658.     Without being provided with any alternative explanation, Plaintiff

has reason to believe, and does believe, that Defendants Holloway and

Keenan considered Plaintiff to be a "credible threat" simply because

Plaintiff researched and questioned the safety and efficacy of EUA medical

device "face masks" and EUA GTP COVID-19 "vaccines".

659.     On November 3, 2021, Defendants Holloway and Cliber signed the

Temporary Parenting Plan and Temporary Restraining Order.

660.     Plaintiff did not sign the Temporary Parenting Plan or Temporary

Restraining Order, and never willingly consented to either of them.

661.     The Washington State Legislature was explicit with their intent in

crafting and passing statutes under RCW Title 26 Domestic Relations.

> *RCW 26.09.002  Policy.*
> *Parents have the responsibility to make decisions and perform other*
> *parental functions necessary for the care and growth of their minor*
> *children. In any proceeding between parents under this chapter, the best*
> *interests of the child shall be the standard by which the court determines*
> *and allocates the parties' parental responsibilities. The state recognizes the*
> *fundamental importance of the parent-child relationship to the welfare of*
> *the child, and that the relationship between the child and each parent*
> *should be fostered unless inconsistent with the child's best interests.*
> *Residential time and financial support are equally important components of*
> *parenting arrangements. The best interests of the child are served by a*
> *parenting arrangement that best maintains a child's emotional growth,*
> *health and stability, and physical care. Further, the best interest of the*
> *child is ordinarily served when the existing pattern of interaction between a*
> *parent and child is altered only to the extent necessitated by the changed*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 112

1
2
*relationship of the parents or as required to protect the child from physical, mental, or emotional harm.*

3
4    662.    Plaintiff and Defendant Owen had always either co-parented A.R.W.

5    in their shared home, or co-parented living nearby by splitting parenting

6
7    time evenly.

8    663.    The determination by Defendant Holloway to prevent Plaintiff from

9    any contact with A.R.W. outside of Tuesday and Thursday evening recorded

10   Zoom calls, and one four hour supervised visitation per weekend in a

11
12   windowless room egregiously disregarded the intent of the Washington

13   State Legislature.

14   664.    The Revised Code of Washington specifically addresses mandatory

15   requirements when the established pattern of interaction between a parent

16
17   and child is to be altered.

18   **RCW 26.09.191**
     **Restrictions in temporary or permanent parenting plans.** *(Effective until*
19   *July 1, 2022.)*
     *(1) The permanent parenting plan shall not require mutual decision-making*
20   *or designation of a dispute resolution process other than court action if it is*
     *found that a parent has engaged in any of the following conduct:*
21   *(a) Willful abandonment that continues for an extended period of time or*
     *substantial refusal to perform parenting functions;*
22   *(b) physical, sexual, or a pattern of emotional abuse of a child; or*
     *(c) a history of acts of domestic violence as defined in RCW 26.50.010(3) or*
23   *an assault or sexual assault that causes grievous bodily harm or the fear of*
     *such harm or that results in a pregnancy.*
24   *(2)(a) The parent's residential time with the child shall be limited if it is*
     *found that the parent has engaged in any of the following conduct:*
25   *(i) Willful abandonment that continues for an extended period of time or*
26   *substantial refusal to perform parenting functions;*

27   PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
     FOR DAMAGES - 113
28

*(ii) physical, sexual, or a pattern of emotional abuse of a child;*
*(iii) a history of acts of domestic violence as defined in RCW 26.50.010(3) or an assault or sexual assault that causes grievous bodily harm or the fear of such harm or that results in a pregnancy; or*
*(iv) the parent has been convicted as an adult of a sex offense under:*

*(3) A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:*
*(a) A parent's neglect or substantial nonperformance of parenting functions;*
*(b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;*
*(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;*
*(d) The absence or substantial impairment of emotional ties between the parent and the child;*
*(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development. Abusive use of conflict includes, but is not limited to, abusive litigation as defined in RCW 26.51.020. If the court finds a parent has engaged in abusive litigation, the court may impose any restrictions or remedies set forth in chapter 26.51 RCW in addition to including a finding in the parenting plan. Litigation that is aggressive or improper but that does not meet the definition of abusive litigation shall not constitute a basis for a finding under this section. A report made in good faith to law enforcement, a medical professional, or child protective services of sexual, physical, or mental abuse of a child shall not constitute a basis for a finding of abusive use of conflict;*
*(f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or*

665.    Plaintiff has never engaged in any conduct described in RCW

26.09.191.

666.    Even if Plaintiff had, the following section of RCW 26.09.191 require

there to be a screening assessment to best ensure the well-being of the child.

*RCW 26.09.191*
*(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 114

*(4) In cases involving allegations of limiting factors under subsection (2)(a)(ii) and (iii) of this section, both parties shall be screened to determine the appropriateness of a comprehensive assessment regarding the impact of the limiting factor on the child and the parties.*

667.     No such screening of Plaintiff or Defendant Owen was done to determine the appropriateness of a comprehensive assessment regarding the impact of limiting Plaintiff's time with his A.R.W.

668.     No comprehensive assessment was performed.

669.     No one spoke with A.R.W. to ascertain his wishes or needs at that time.

670.     Defendants Holloway and Keenan disregarded the explicit requirements of RCW 26.09.191, in disregard of state statutes and the well-being of A.R.W.

671.     Defendant Keenan did not, as a mandatory reporter pursuant to RCW 26.44.030, notify Department of Children Youth and Family "DCYF", or law enforcement, of his knowledge that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy, or safety of the injections.

## Z. DENIAL OF ACCESS KING COUNTY CLERK'S OFFICE

672.     Beginning on November 2, 2021, Plaintiff was informed by Defendant Bliey, Public Access Specialist for King County Superior Court

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 115

Administration, that Plaintiff could not access the clerk's office or any courtroom without wearing a face mask, as ordered by all King County Superior Court judges.  As of September 6, 2022, this denial is still being enforced, and Defendant Bliey has stopped responding to Plaintiff's emails.

673.    On November 12, 2021, Plaintiff tried to access documents for Case No. 21-5-00680-6 SEA at the clerk's office of King County Superior Courthouse.

674.    King County Sheriff Deputies Defendants McMenamy and Coffin, armed with weapons, denied Plaintiff the right to access the King County Superior Court clerk's office.

675.    Plaintiff informed Defendants McMenamy and Coffin that Plaintiff was exempt from wearing an EUA face mask under federal ADA and RCW 49.60.030, .040.

676.    Plaintiff was given a card by Defendant McMenamy with the name of the court clerk who requested that the Sheriff Deputies deny Plaintiff's right to access the court clerk's office, on which the name of Defendant Denise Fuseini was printed.

677.    On November 15, 2021, Plaintiff tried to access documents for Case No. 21-5-00680-6 SEA at the clerk's office of King County Superior Courthouse.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 116

678.   King County Sheriff Deputies Defendants Clark and McClennen, armed with weapons, denied Plaintiff the right to access the King County Superior Court clerk's office.

679.   Plaintiff informed Defendants Clark and McClennen that Plaintiff was exempt from wearing an EUA face mask under federal ADA and RCW 49.60.030, .040.

680.   Plaintiff was provided with the name of Defendant Danielle Anderson as the court clerk manager who requested that the Defendants Clark and McClennen deny Plaintiff's right to access the court clerk's office.

## AA.    21-5-00680-6  MOTION FOR REVISION

681.   On November 15, 2021, Plaintiff filed a Motion for Revision, citing multiple errors by Commissioner Holloway:

a) lack of "clear and convincing evidence" substantiating a determination that Plaintiff posed a "credible threat" to Defendant Owen, or A.R.W.,

b) allowing hearsay evidence,

c) denying Plaintiff's right to cross-examine Defendant Owen,

d) denying Plaintiff's right to trial by jury,

e) disregarding factual evidence that Defendant Owen subjected A.R.W. to an ongoing Pfizer BioNTech 162b2 clinical trial, in violation

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 117

of 21 CFR, 45 CFR, 46 CFR, 50 CFR, the Nuremberg Code and the American Medical Association ("AMA" herein) Code of Ethics 2.1.1.

682.     Plaintiff requested full findings of fact and conclusions of law in the Judge Keenan's review of Commissioner Holloway's decision, pursuant to RCW 2.24.050.

EXHIBIT P2G:  2021-11-15 MOTION FOR REVISION pdf.pdf – Google Drive

683.     Plaintiff scheduled a Motion for Revision hearing, with oral argument, in Family Court for December 17, 2021.

684.     On November 23, 2021, Judge Keenan issued an Order denying Plaintiff's Motion for Revision, as well as striking the hearing scheduled for December 17, 2021.

EXHIBIT P2H:  2022-11-23---ORDER DENYING REVISION.PDF – Google Drive

685.     Judge Keenan adopted Commissioner Holloway's findings and conclusions.

686.     Judge Keenan did not provide Plaintiff with findings of fact and conclusions of law.

687.     The Judge of the Superior Court, in reviewing decisions of the Court Commissioner, pursuant to RCW 2.24.050, should enter its own findings of fact and conclusions of law into the record rather than simply

adopting those of the Commissioner. *Matter of Estate of Larsen*, 103 Wn.2d 517, 694 P.2d 1051 (1985).

## BB.   SEATTLE MUNICIPAL COURT FILING

688.    On December 28, 2021, Plaintiff filed a Motion to Dismiss in SEATTLE MUNICIPAL COURT Cases No. 656927, 656748, 656749.

EXHIBIT P13A:  2021-12-29---SMC---MTD and EXHIBITS.pdf - Google Drive

689.    The Motion to Dismiss included many Exhibits, including sworn affidavits complaining of crimes committed by Judge Anita Crawford-Willis, Presiding Judge Willie Gregory, Judge Faye Chess, Judge Mary Lynch, and Judge Ann McDowall, who plaintiff had reason to believe, and did believe, had violated state laws, and in so doing had violated Plaintiff's rights which are protected by the Washington State Constitution and the U.S. Constitution.

EXHIBIT P13B:  2021-12-24 Criminal Complaint WILLIS.pdf - Google Drive
EXHIBIT P13C:  Defendant Gregory
EXHIBIT P13D:  Defendant Lynch
EXHIBIT P13E:  Defendant Chess
EXHIBIT P13F:  Defendant McDowall

## CC.   EXTORTION ATTEMPTS AGAINST PLAINTIFF

690.    On, or around, January 6, 2022, Defendant Hermsen contacted Plaintiff via text message.

691.    Defendant Hermsen provided Plaintiff with documentation that Defendant Hermsen had been given power-of-attorney by Defendant Owen to manage the return of Plaintiff's FJ Cruiser.

692.    Defendant Owen, by and through Defendant Hermsen, attempted to extort money from Plaintiff for the return of Plaintiff's FJ Cruiser.

693.    On January 13, 2022, Defendant Cliber emailed Plaintiff a Settlement Offer.

EXHIBIT P9A:  1/13/2022 Settlement Offer

694.    The settlement offer proposed allowing Plaintiff to have A.R.W. eight days per month, but that Defendant Owen would retain full medical and custodial authority over A.R.W.

695.    Defendant Owen also stipulated that if Plaintiff was arrested while A.R.W. was in his care, that Plaintiff would lose all right to have A.R.W. eight days per month.

696.    Plaintiff observed that Defendant Hermsen's attempts to have Plaintiff pay Defendant Owen more than $19,000 for the return of Plaintiff's FJ Cruiser were contemporaneous with Defendant Cliber suggesting the possibility that Plaintiff could regain conditional custody of A.R.W. eight days per month.

697.     Plaintiff emailed Defendant Cliber to state that the proposed

modification to the Temporary Parenting Plan should be bi-lateral.  If the

concern was that A.R.W. would be traumatized by Plaintiff being arrested

while in his care, then the same stipulation should apply to Defendant

Owen.

698.     Defendant Cliber emailed Plaintiff that he would confer with

Defendant Owen.

699.     After waiting several weeks for a response from Defendant Owen, by

and through her attorney, Defendant Cliber, Plaintiff emailed Defendant

Cliber to request an answer.

700.     Defendant Cliber emailed Plaintiff to inform him that Defendant

Owen was still considering things.

701.     Plaintiff continued to refuse to be extorted by Defendant Owen

through numerous text messages and phone calls with Defendant Hermsen.

702.     Defendant Hermsen texted Plaintiff that Defendant Owen would sell

Plaintiff's FJ Cruiser on, or after, February 13, 2022, at 10pm if Plaintiff did

not pay Defendant Owen $17,000.

703.     Plaintiff texted Defendant Hermsen that such action constituted

extortion.

704.     Plaintiff texted Defendant Hermsen that such action constituted

threatening Plaintiff with felony sale of stolen property.

705.    Defendant Owen's threats of selling Plaintiff's FJ Cruiser failed to effectuate the intended extortion against Plaintiff.

706.    Contemporaneously, the offer of allowing Plaintiff to have A.R.W. eight days per month was withdrawn.

## DD.    PLAINTIFF FILES REPLEVIN AND HOUSE LAWSUIT

707.    In March 2022, Plaintiff filed a Petition for Writ of Replevin against Defendant Owen in King County Super Court case no. 22-2-02932-3 SEA for the return of his FJ Cruiser.

708.    On, or around, April 8, 2022, Plaintiff filed a Complaint for Tort against Defendant Owen in King County Superior Court Case No. 22-2-03826-8 SEA for constructive fraud and emotional distress.  Upon information and belief, Plaintiff feared that Defendants Owen and Lerman would continue trying to evict him from his home.

709.    Defendant Owen refused to add Plaintiff's name to the title for Plaintiff's house.  Defendant Owen begun asserting that Plaintiff was Defendant Owen's "renter" in the Summer of 2021.

710.    On, or around, April 8, 2022, Plaintiff's friend, Daniel Heller, is a 71-year-old gentleman.  Mr. Heller acted as the legal process server of the Complaint for Tort, pursuant to RCW 18.180.010(2)(d), going to the home of Defendants Owen and Lerman.

711.    Defendant Lerman opened the door when Mr. Heller knocked.

712.    Defendant Lerman grabbed an aluminum baseball bat and began yelling at Mr. Heller.

713.    Mr. Heller attempted to leave by returning to his van.

714.    Defendant Lerman followed Mr. Heller, yelling that Mr. Heller was a minion helping a "racist", "abuser", "white supremacist", "misogynist", and "narcissist".

715.    A.R.W. witnessed all of the interaction from inside the home of Defendants Owen and Lerman.

716.    After Mr. Heller got inside his van, Defendant Lerman physically blocked the van door from closing.

717.    Defendant Lerman got out her cell phone and put it in Mr. Heller's face.

718.    Defendant Lerman yelled at Mr. Heller that she was going to put video of him on the internet to shame Mr. Heller for helping a "racist", "abuser", "white supremacist", "misogynist", and "narcissist".

719.    Upon information and belief of Plaintiff, Mr. Heller was a "public servant" while effecting legal service of process, pursuant to RCW 9A.04.110(23).

720.    Upon information and belief of Plaintiff, Defendant Lerman grabbing a baseball bat and following a legal server of process to his van constituted

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 123

intimidating a public servant, and as such a violation of RCW 9A.76.180, a class B felony.

721.     Defendant Owen retained attorney Blair Russ for King County Superior Court Case Nos. 22-2-02932-3; 22-2-03826-8, referenced hereinafter as "Defendant Russ".

722.     Plaintiff informed Defendant Russ via email that Defendant Owen's own exhibits submitted in September 2021 for Family Court Case No. 21-5-00680-6 included multiple statements to SPD officers that Plaintiff and Defendant Owen co-owned Plaintiff's home.

723.     Plaintiff exchanged numerous emails with Defendant Russ between April 2022 and June 2022.

724.     Plaintiff informed Defendant Russ that Defendant Owen injected A.R.W. with an EUA Pfizer GTP without informed consent.

725.      Plaintiff informed Defendant Russ that Defendants Owen and Lerman had stolen Plaintiff's FJ Cruiser and tried to extort Plaintiff for $19,000, before Defendants Owen, through Defendant Hermsen threatened to sell Plaintiff FJ Cruiser.

726.     On May 2, 2022, Defendant Russ emailed Plaintiff that his FJ Cruiser would be returned to him with the title in the glove box.  Defendant Russ emailed Plaintiff a Report of Sale that Defendant Owen obtained from Washington Department of Licensing ("WA DoL" herein).

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 124

727.     On May 4, in an email Defendant Russ, Plaintiff stated that he had reason to believe, and did believe, that Defendant Russ had been allowing, enabling, assisting, or counseling, Defendant Owen in avoiding criminal culpability for the theft, possession, and extortion, of Plaintiff's FJ Cruiser.

728.     Plaintiff wrote to Defendant Russ that his client, Defendant Owen, had provided a Report of Sale for Plaintiff's FJ Cruiser with a transaction date of May 2, 2022.

> EXHIBIT P18A:  2022-5-4--PLNT.email.RUSS.pdf - Google Drive
> EXHIBIT P18E:  report of sale receipt

729.     Upon information and belief, Plaintiff told Defendant Russ that reporting the sale of Plaintiff's FJ Cruiser as May 2, 2022, was false and misleading.

730.     Plaintiff informed Defendant Russ that on when Mr. Heller tried to serve Defendant Owen with the Complaint for Tort that Defendant Lerman grabbed an aluminum baseball bat, screamed at Mr. Heller, and then followed Mr. Heller to his van, and threatened upload video of Mr. Heller, along with derogatory statements about Mr. Heller, to Defendant Lerman's social media account(s).

731.     On, or around, May 5, 2022, Defendant Lerman texted Mr. Heller, stating, among other things, "I am afraid of you because of your admitted and proven racism and misogyny, because you have on multiple occasions

harassed me and my family as a minion of Kurt Benshoof, and because of similar reports I have found of your violence in the community.  I am scared of you.  Do not come near me or my family's property."

EXHIBIT P5B: 2022-4-8--LERMAN.TEXT.jpeg - Google Drive

732.     Plaintiff had not had any contact whatsoever with Defendant Lerman since July 2021 when she came to pick up A.R.W. from Plaintiff's home, yet Defendant Lerman emailed Plaintiff on May 8, 2022.

733.     Among other things, Defendant Lerman stated, "I do not welcome your hate and harassment…I would think it is also obvious that I am scared of you.  I have never done anything to you⋯we've barely had contact which is how I would like it⋯yet you have pointed your racism and misogyny at me.  I am afraid of you because of your narcissism and violence towards my family, marginalized women and the greater Seattle community.  You are a scary person…."

734.     Plaintiff emailed Defendant Lerman to never contact him again.

EXHIBIT P5C: 2022-5-8--KURT.MAGALIE.pdf - Google Drive

735.     Plaintiff emailed Defendant Russ, advising him that it would be of benefit to everyone if Defendant Lerman did not again threaten, or scream, at any legal process server coming to the home of Defendants Lerman.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 126

736.    Plaintiff emailed Defendant Russ, questioning why Defendant Owen did not simply return Plaintiff's FJ Cruiser immediately, along with the title to the vehicle, signed over to Plaintiff.

737.    Upon information and belief, Plaintiff told Defendant Russ that it appeared Defendants Russ, Owen, and Lerman, had engaged in conduct violative of RCW 9A.76.050 Rendering criminal assistance, RCW 9A.72.150 Tampering with physical evidence, or RCW 9.38.020 False representation concerning title regarding Plaintiff's FJ Cruiser.

738.    Plaintiff had paid Defendant Owen in full in June of 2018 for his FJ Cruiser, although Defendant Owen did not use the money from Plaintiff to pay off the WSECU car loan until September 29, 2020, at which point WSECU was no longer a "legal owner", and Plaintiff was the sole legal owner of his FJ Cruiser.

739.    Plaintiff was the sole legal owner entitled to the possession and use of his FJ Cruiser when Defendant Lerman drove away Plaintiff's FJ Cruiser on September 3, 2021.

740.    Defendant Russ did not refute Plaintiff's allegations.

741.    On, or around, May 5, 2022, Defendant Russ and the partners and attorneys of Tomlinson, Russ & Bomsztyk were served with sworn affidavits attesting to the criminal conduct of Defendants Cliber, Lerman, and Owen. (Exhibits P4A, P4B, P4C, P4D).

742.     Upon information and belief, Plaintiff concluded that Defendant Russ counseling, advising, or assisting, Defendant Owen to help her and Defendant Lerman avoid criminal liability for their taking of Plaintiff's FJ Cruiser, and that Defendants Russ, Owen, and Lerman were aware that the policies of SPD, which discriminated against Plaintiff in several ways, shielded Defendants Russ, Owen, and Lerman, from accountability.

743.     Upon Plaintiff's information and belief, Defendant Russ had knowledge of criminal conduct by Defendants Owen and Lerman, which had caused Plaintiff financial damages of more than $20,000, that Defendant Russ had violated one or more Rules of Professional Conduct, and as such Defendant Russ had neglected to protect Plaintiff's rights to property, which had caused Plaintiff further harm and damages.

744.     Upon Plaintiff's information and belief, the law firm partners, and associate attorneys of Defendant Russ had also neglect to prevent further harms and damages resultant from the violations of Plaintiff's rights to property, as all of the partners and associate attorneys at Tomlinson, Bomsztyk & Russ been served with detailed sworn statements regarding the criminal conduct of Defendants Cliber, Owen, and Lerman.

745.     On, or around, May 22, 2022, Plaintiff filed grievances with the Washington BAR Association against the partners and attorneys of Tomlinson, Bomsztyk & Russ.

EXHIBIT 45A: BAR-GREIV - Bomsztyk.pdf - Google Drive
EXHIBIT 45B: BAR-GRIEV--RUSS.pdf - Google Drive
EXHIBIT 45C: BAR-GRIEV--TOMLINSON.pdf - Google Drive
EXHIBIT 45D: BAR-GRIEV--AVERY.pdf - Google Drive
EXHIBIT 45E: BAR-GRIEV--MARINELLA.pdf - Google Drive
EXHIBIT 45F: BAR-GRIEV--MORRIS.pdf - Google Drive

746.     Upon Plaintiff' information and belief Defendants Tomlinson,

Bomsztyk, Russ, Avery, Marinella, and Morris, having the ability to take

action to prevent, instead neglected to prevent further violations of

Plaintiff's property rights to his FJ Cruiser, which could be reasonably

expected to occur.


**EE.     MOTIONS TO DISMISS HEARING  21-5-00680-6**

747.     On April 1, 2022, Plaintiff was prevented by attending the court in

person to argue for the dismissal of Case No. 21-5-00680-6, Defendant

Keenan presiding.

748.     Plaintiff challenged the subject matter jurisdiction of the court.

Opposing counsel, Defendant Cliber, asserted that Plaintiff's citations of

federal appellate, and U.S. Supreme Court cases were "frivolous and

incomprehensible".

749.     Defendant Keenan found that Defendant Cliber's arguments proved

the subject matter jurisdiction of the court to proceed.

EXHIBIT P3A: MTD DUE PROCESS

EXHIBIT P3B: MTD INTERESTS CHILD
EXHIBIT P3C: KEENAN.Den.Ord.pdf - Google Drive

## FF.    PLAINTIFF DISCOVERS FURTHER BARRATRY

750.    On, or around, March 25th, 2022, Plaintiff discovered that RCW

26.09.004 Definitions stated:

> *(4) "Temporary parenting plan" means a plan for parenting of the child*
> *pending final resolution of any action for dissolution of marriage or domestic*
> *partnership, declaration of invalidity, or legal separation which is*
> *incorporated in a temporary order.*

751.    Plaintiff emailed Defendant Cliber and Defendant Keenan's bailiff,

Beatrice Marquez, asking how King County Family Court could have

jurisdiction over Plaintiffs when Plaintiff had never been married to, or in a

legal domestic partnership with, Defendant Owen.

752.    Defendant Cliber refused to provide an explanation to Plaintiff.

753.    Beatrice Marquez told Plaintiff that he would need to address that

issue in court.


## GG.    21-5-00680-6  COMISSIONER EAGLE HEARING

754.    On April 12, 2022, Defendant Eagle, acting as Commissioner,

presided over a Family Court hearing in Case No.. 21-5-00680-6 SEA for

motions to appoint a Guardian ad Litem, and to deny Plaintiff any further

weekday Zoom calls with A.R.W, filed by Defendants Cliber and Owen.

755.     Defendant Eagle stated on the record that he had read all of

Plaintiff's filings in Case No. 21-5-00680-6 SEA, which included Plaintiff's

Motions to Dismiss and sworn affidavits as a complaining witness against

Defendants Cliber, Owen and Lerman:

> EXHIBIT P4A: 2022-3-28 EXHIBIT A. OWEN. FJ Cruiser.pdf - Google Drive
> EXHIBIT P4B  2022-3-28. EXHIBIT B. LERMAN. FJ Cruiser.pdf - Google Drive
> EXHIBIT P4C: 2022-3-28 EXHIBIT C. CLIBER.pdf - Google Drive
> EXHIBIT P4D: 2022-3-28. Exh D. OWEN . Perjury ..pdf - Google Drive

756.     Defendant Eagle stated on the record that he would not address

Plaintiff's challenge to Family Court's jurisdiction regarding the fact that

Plaintiff and Defendant Owen had never been married or in a legal domestic

partnership, pursuant to RCW 26.09.004(4).

757.     Defendant Eagle continued to assert subject matter jurisdiction over

Plaintiffs.

758.     Defendant Eagle did not, as a mandatory reporter pursuant to RCW

26.44.030, notify Department of Children Youth and Family "DCYF", or law

enforcement, of his knowledge that A.R.W. had been subjected to two Pfizer

BioNTech 162b2 EUA GTP injections without informed consent, or proof of

necessity, efficacy, or safety of the injections.

759.     Defendant Eagle appointed Amy Franklin-Bihary as Guardian ad

Litem.  Defendant Eagle assured Plaintiff that a Guardian ad Litem would

have the authority to investigate all of Plaintiff's concerns and complaints.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 131

760.     On, or around, April 13, 2022, Plaintiff emailed Defendant Franklin-Bihary, imploring her to immediately speak with A.R.W. to ascertain his wants and needs, as none of the named Defendants had exhibited any interest in the wants and needs of A.R.W. in the previous seven months.

II.     21-5-00680-6  SHOW CAUSE HEARING – O'DONNEL

761.     On April 13th, King County Family Court held a Show Cause Order hearing in which Defendant O'Donnel, the presiding Judge, again refused to address Plaintiff's challenge to the court's subject matter jurisdiction relating to RCW 26.09.004(4), as Plaintiff and Defendant Owen had never been married or in a legal domestic partnership.

762.     Defendant O'Donnel continued the bench trial date from August until October.

JJ. HOME PROSTITUTION REPORTED TO CPS

763.     On June 8, 2022, CPS was provided with a video of A.R.W. confirming to Plaintiff that Defendants Owen and Lerman had been bringing prostitution clients into their home to have sex with for money while A.R.W. was in the house.

764.     On, or around, June 9, 2022, Defendant Beseler was emailed a copy of the A.R.W. video.  Defendant Beseler had previously been informed by

Plaintiff that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy or safety of the injections.

765. Defendant Beseler, as a Mandatory Reporter, did not report the fact that A.R.W. was the subject of medical experimentation without informed consent, nor that A.R.W. was at risk of further medical experimentation, pursuant to RCW 26.44.030.

766. On, or around, June 10, 2022, Defendant Franklin-Bihary received copy of the aforementioned A.R.W. video.

767. Defendant Franklin-Bihary did not, as a mandatory reporter, notify Department of Children Youth and Family "DCYF" of her knowledge that A.R.W. had been exposed to the prostitution work of Defendants Owen and Lerman in their home, as Defendants Owen and Lerman had been bringing their prostitution clients into the home while A.R.W. was in the house.

768. Defendant Franklin-Bihary did not, as a mandatory reporter, notify Department of Children Youth and Family "DCYF" of her knowledge that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy or safety of the injections.

*RCW 26.44.030 Reports—Duty and authority to make—Duty of receiving agency—Duty to notify—Case planning and consultation— Penalty for*

*unauthorized exchange of information—Filing dependency petitions—Investigations—Interviews of children—Records—Risk assessment process.*
*(1)(a) When any practitioner, county coroner or medical examiner, law enforcement officer, professional school personnel, registered or licensed nurse, social service counselor, psychologist, pharmacist, employee of the department of children, youth, and families, licensed or certified child care providers or their employees, employee of the department of social and health services, juvenile probation officer, placement and liaison specialist, responsible living skills program staff, HOPE center staff, state family and children's ombuds or any volunteer in the ombuds's office, or host home program has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency or to the department as provided in RCW 26.44.040.*
*(iii) "Reasonable cause" means a person witnesses or receives a credible written or oral report alleging abuse, including sexual contact, or neglect of a child.*
*(e) The reporting requirement also applies to guardians ad litem, including court-appointed special advocates, appointed under Titles 11 and 13 RCW and this title, who in the course of their representation of children in these actions have reasonable cause to believe a child has been abused or neglected.*

*RCW 26.44.020 Definitions.*
*(1) "Abuse or neglect" means sexual abuse, sexual exploitation, or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct permitted under RCW 9A.16.100; or the negligent treatment or maltreatment of a child by a person responsible for or providing care to the child. An abused child is a child who has been subjected to child abuse or neglect as defined in this section.*
*(19) "Negligent treatment or maltreatment" means an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety, including but not limited to conduct prohibited under RCW 9A.42.100.*

769.    Defendant Franklin-Bihary did not report her knowledge of this to DCYF, or to contact A.R.W. to ascertain his well-being or needs.

## KK. PLAINTIFF VICTIM REPORTS TO SPD

770.     On, or around, July 2, 2022, Plaintiff made complaint to SPD Officer Defendant A. Clark, informing her that Defendants Owen and Lerman were engaging in prostitution inside their home while A.R.W. was in the house, that Defendants had stolen Plaintiff's FJ Cruiser and attempted felony extortion, and that Defendants had coerced A.R.W. into medical experimentation.

771.     Defendant A. Clark informed Plaintiff that she could not file a complaint for coerced medical experimentation, as the policy of SPD was that all officers were lawfully required to be "fully vaccinated", as it was the policy of City of Seattle and SPD to discriminate against, by firing or refusing to employ, anyone whom SPD determined was not "fully vaccinated".

772.     Defendant A. Clark did not, as a mandatory reporter pursuant to RCW 26.44.030, notify Department of Children Youth and Family "DCYF", or law enforcement, of her knowledge that A.R.W. had been subjected to two Pfizer BioNTech 162b2 EUA GTP injections without informed consent, or proof of necessity, efficacy or safety of the injections.

## LL. A.R.W. WALKS HOME TO FATHER

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 135

773.    On July 6, 2022, A.R.W. ran away from the home of Defendants Owen and Lerman and walked to Plaintiff's house.

774.    After hugging A.R.W. and dancing together, Plaintiff called 911 and CPS to inform them that A.R.W. had run away from the home of Defendants Owen and Lerman.

775.    Plaintiff called 911 and CPS out of fear that SPD would arrest Plaintiff.

776.    Defendants Williams, SPD John Doe #2, and SPD John Doe #3, responded to Plaintiff's house

777.    Defendant Williams told Plaintiff that he may be arrested because Plaintiff didn't tell A.R.W. to leave when A.R.W. arrived.

778.    Defendant Williams, after calling his Lieutenant, told Plaintiff that because Plaintiff called 911, he would not be arrested.

779.    Plaintiff informed Defendant Williams, SPD John Doe #2, and SPD John Doe #3, that Defendant Lerman had taken his FJ Cruiser without his permission on September 3, 2021, and that Defendant Owen had demanded, through Defendant Hermsen, $19,000 from Plaintiff for the return of the FJ Cruiser to Plaintiff.

780.    Plaintiff informed Defendant Williams, SPD John Doe #2, and SPD John Doe #3, that Plaintiff had witnessed Defendants Owen and Cliber had

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 136

repeatedly made false or misleading statements to SPD officers and Family Court commissioners and judges.

781.    Plaintiff informed Defendant Williams, SPD John Doe #2, and SPD John Doe #3, that the false and misleading statements by Defendants Owen and Cliber, in Family Court proceedings and Declarations that were used to obtain the Temporary Restraining Order.

782.    Upon information and belief, Plaintiff informed Defendant Williams, SPD John Doe #2, and SPD John Doe #3, that A.R.W. was being subjected to mental and emotional abuse by Defendants Owen and Lerman, and that A.R.W. was in danger of further coercion to be subjected to medical experimentation with injection of Pfizer EUA GTPs.

783.    Plaintiff informed Defendant Williams, SPD John Doe #2, and SPD John Doe #3, that Defendants Owen and Lerman had been seeing their prostitution clients inside their home while A.R.W. was in house.

784.    Defendant Williams, SPD John Doe #2, and SPD John Doe #3, refused to report the criminal allegations against Defendants Owen and Lerman for the criminal law violations alleged by Plaintiff.

785.    Defendant Williams asserted that all of Plaintiffs complaints against Defendants Cliber, Owen and Lerman were only a "civil matter".

786.    Defendants Williams, SPD John Doe #2, and SPD John Doe #3, neglected to act upon Plaintiff's complaints and concerns for the safety and

well-being of A.R.W.  Defendant Williams then took A.R.W. back to the home of Defendants Owen and Lerman.

## MM.  CUSTODIAL INTERFERENCE COMPLAINTS TO SPD

787.    On July 9, Plaintiff called 911 to report Defendant Owen for Custodial interference in the second degree, perjury and barratry, and to ask SPD to do a wellness check on A.R.W.

788.    Around 12:30am, Defendants Hogg and Weiss responded to Plaintiff's house.

789.    Plaintiff informed Defendants Hogg and Weiss that Defendants Owen and Cliber had repeatedly made perjurious and false or misleading statements to SPD officer, and Family Court commissioners or judges, to obtain the Temporary Restraining Order for Case No. 21-5-00680-6.

790.    Plaintiff informed Defendants Hogg and Weiss that the Temporary Restraining Order cite RCW 26.09.050, .060, which Plaintiff explained only apply to "a proceeding for Dissolution of marriage or domestic partnership, legal separation, or a declaration of invalidity."

791.    Plaintiff informed Defendants Hogg and Weiss that Plaintiff and Defendant Owen had never been married or in a domestic partnership.

792.    Plaintiff informed Defendants Hogg and Weiss that A.R.W. was being subjected to mental and emotional abuse by Defendants Owen and Lerman,

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 138

and that he was in danger of further coercion to be subjected to medical experimentation with injection of Pfizer EUA GTPs.

793.     Plaintiff informed Defendants Hogg and Weiss that Defendants Owen and Lerman had been seeing their prostitution clients inside their home while A.R.W. was in house.

794.     Plaintiff attempted to provide Defendants Hogg and Weiss with photocopies of the cited laws and Family Court orders that, upon information and belief of Plaintiff, proved that the Restraining Order was invalid.

795.     Plaintiff tried to show copies of the relevant statutes, as well as the Temporary Restraining Order and Temporary Parenting as evidence validating Plaintiff's claims.

796.     Defendants Hogg and Weiss refused to look at Plaintiff's evidence.

797.     Defendants Hogg and Weiss refused to take Plaintiff's evidence.

798.     Defendants Hogg and Weiss asserted that all of Plaintiff's complaints were a "civil matter".

799.     Defendants Hogg and Weiss refused to report the alleged crimes of Defendants Owen and Lerman.


OO.  PETITION FOR WRIT OF HABEAS CORPUS

800.     On July 17, 2022, Plaintiff filed a Petition for Writ of Habeas Corpus

in King County Superior Court Case No. 22-2-11112-7 SEA, along with

Exhibits of Plaintiff's sworn criminal complaints against Defendants Cliber,

Owen and Lerman.

2022-7-17-PET.HAB.CORP.pdf - Google Drive

801.     On July 19, 2022, Plaintiff filed an unsigned Order to Issue Writ of

Habeas Corpus in Case No. 22-2-11112-7 SEA.

EXHIBIT P7B: 2022-7-19--Ord.Issue.Habeas.pdf - Google Drive

802.     On July 21, 2022, Judge Steve Rosen issued an Order on Writ of

Habeas Corpus in Case No. 22-2-11112-7 SEA, deciding that "the

Petitioner's Writ of Habeas Corpus should be DENIED without oral

argument.

EXHIBIT P7C: 2022-7-21-HABEAS.DENIAL.pdf - Google Drive

803.     On, or around, August 1, 2022, Ms. Franklin-Bihary finally

interviewed A.R.W., approximately four months after she was appointed as

Guardian ad Litem.


## PP.  PLAINTIFF ARRESTED BY SPD

804.     On August 15, 2022, Plaintiff was arrested at his home by

Defendants Wallace and Alden for allegedly violating the TRO signed by

Defendant Holloway on November 3, 2022.

805.     Plaintiff asked Defendants Wallace and Alden to see the TRO.

806.     Defendants Wallace and Alden refused to show or provide Plaintiff a copy of the TRO.

807.     Plaintiff informed Defendants Wallace and Alden that Defendants Owen and Cliber had repeatedly made perjurious and false or misleading statements to police, commissioners or judges, and in so doing, had committed barratry.

808.     Plaintiff informed Defendants Wallace and Alden that the Temporary Restraining Order was fraudulently obtained.

809.     Plaintiff informed Defendants Wallace and Alden that A.R.W. was being subjected to mental and emotional abuse by Defendants Owen and Lerman, and that he was in danger of further coercion to be subjected to medical experimentation with injection of Pfizer EUA GTPs.

810.     Plaintiff informed Defendants Wallace and Alden that Defendants Owen and Lerman had been seeing their prostitution clients inside their home while A.R.W. was in house.

811.     Plaintiff informed that Defendants Wallace and Alden that Plaintiff had proof that the Temporary Restraining Order was not only fraudulently filed and obtained, but that it was without jurisdiction and invalid.

812.     Plaintiff tried to provide copies of the relevant statutes to Defendants Wallace and Alden, as well as the Temporary Restraining Order and Temporary Parenting, as evidence validating Plaintiff's claims.

813.     Defendants Wallace and Alden refused to look at Plaintiff's evidence.

814.     Defendants Wallace and Alden asserted that all of Plaintiff's complaints were all a "civil matter".

815.     Defendants Wallace and Alden refused to report the alleged crimes of Defendants Owen and Lerman made by Plaintiff.

816.     Plaintiff informed Defendants Wallace and Alden that they were violating Plaintiff's rights protected by the 14th Amendment by not providing Plaintiff equal protection under the law.

817.     Plaintiff informed Defendants Wallace and Alden that Plaintiff has one or more indivisible disabilities precluding him from wearing a "face mask" or having his face covered.

818.     Plaintiff informed Defendants Wallace and Alden that if they took him to King County Jail that Plaintiff would be either forced to wear a face mask or have a mesh bag put over his head.

819.     Plaintiff informed Defendants Wallace and Alden that being subjected to such treatment would be a violation of RCW 49.60.030, .040, as well as federal ADA law.

820.     Defendants Wallace and Alden disregarded Plaintiff's explicit concerns and knowingly and willingly transferred custody of Plaintiff to King County Jail personnel with the knowledge and understanding that Plaintiff would then be subjected to coercion or being forced to wear an EUA medical device face mask, be forced to undergo PCR test, or have an EUA mesh bag forced over Plaintiff's head, in violation of federal ADA law, and RCW 49.60.030;.040..

821.     Upon entrance to the King County Jail, Plaintiff declined to wear an EUA medical device "face mask".

822.     Defendants KC John Doe #5 forced a mesh "spit bag" over Plaintiff's head, against his will.

823.     Defendant KC Jane Doe #2 told Plaintiff that if he refused to be subjected to a PCR test that no judge would allow Plaintiff into court for arraignment and that Plaintiff would be held in jail indefinitely.

824.     Defendants KC John Doe #5 and KC Jane Doe #2 told Plaintiff that if he refused to wear a face mask that he would be held in solitary confinement indefinitely.

825.     Plaintiff was coerced by Defendants KC John Doe #5 and KC Jane Doe #2, under threat and duress, to put a mesh bag over his head.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 143

826.    Plaintiff was coerced by Defendants KC John Doe #5 and KC Jane Doe #2, under threat and duress, to wear an EUA "medical device" face mask.

827.    Plaintiff suffers from PTSD due to childhood sexual abuse trauma and was irreparably harmed by having a mesh bag and face mask forced over his head and face.

828.    Plaintiff was coerced by Defendants KC John Doe #5 and KC Jane Doe #2, under threat and duress, to be subjected to a PCR test.

829.    Plaintiff tested negative, as he has done for every PCR test since December 2020.

## QQ. SEATTLE PUBLIC SCHOOLS PFIZER FRAUD

830.    As of August 14, 2022, Seattle Public Schools was still stating on their website, "COVID-19 vaccines are free, safe, and effective.  More than 80 percent of SPS students are fully vaccinated."

EXHIBIT P40B: SPS-2022-8-14.jpeg - Google Drive

## RR. PLAINTIFF ADDITIONAL CRIMINAL COMPLAINTS TO SPD

831.    On August 16, 2022, Defendant Owen violated the provision of the Temporary Parenting Plan she signed by withholding A.R.W. from a video call with Plaintiffs.

832.     Plaintiff called 911, and eventually spoke to Defendants Clark and

Odell.

833.     Plaintiff made complaint of Defendant Owen's violation of RCW

9A.40.070 (2) Custodial interference in the second degree for Defendant

Owen's violation of the Temporary Parenting Plan.

834.     Defendants Clark and Odell asserted to Plaintiff that it was a "civil

matter".

835.     Plaintiff read aloud the Washington Legislative intent for Custodial

Interference from the state website:

> Intent—2015 c 38: "It is the intent of the legislature to address the
> Washington supreme court's decision in State v. Veliz, 176 Wn.2d 849
> (2013). The court held that a parent cannot be charged with custodial
> interference under RCW 9A.40.060(2) if a parent withholds the other parent
> from having access to the child in violation of residential provisions of a
> domestic violence protection order. The legislature intends that the
> provisions of RCW 9A.40.060(2) and 9A.40.070(2) be applicable in cases in
> which a court has entered any order making residential provisions for a
> child including, but not limited to, domestic violence protection orders that
> include such residential provisions."

836.     Plaintiff stated that it was a violation of his rights protected by the

14th Amendment to falsely assert that Defendant Owen was not violating

RCW 9A.40.070 (2) and Plaintiffs' rights to "equal protection under the law."

837.     Defendants A. Clark and Odell refused to act.

838.     On August 20, 2022, Defendant Owen again denied Plaintiffs their

scheduled video call.

839.     Plaintiff called 911, and eventually spoke to Defendant Chu.

840.     Plaintiff made complaint of Defendant Owen's violation of RCW 9A.40.070 (2) Custodial interference in the second degree for Defendant Owen's violation of the Temporary Parenting Plan.

841.     Defendant Chu asserted to Plaintiff that it was a "civil matter".

842.     Plaintiff stated that it was a violation of his rights protected by the 14th Amendment to falsely assert that Defendant Owen was not violating RCW 9A.40.070 (2) and Plaintiffs' rights to "equal protection under the law."

843.     Defendants Chu knowingly and willfully refused to act.

844.     Plaintiff cited and then tried to read aloud the Washington Legislative intent for Custodial Interference from the state website to Defendant Chu.

845.     Defendant Chu hung up on Plaintiff.


## SS. 21-5-00680-6  OWEN PETITIONS FOR TRO

846.     On, or around, August 17, 2022, Defendants Owen and Cliber filed a petition for an ex parte emergency restraining order in Case No. 21-5-00680-6 SEA, alleging that Plaintiff had violated the allegedly valid order signed by Defendant Eagle on April 12, 2022 demanding that Plaintiff not discuss Case No. 21-5-00680-6 SEA with A.R.W.

847. On August 23, 2022, an ex parte emergency restraining order hearing was held by Commissioner Brad Moore by zoom video in King County Family Court.

848. Plaintiff made a Special Appearance on behalf, of and in the interests of A.R.W., informing Defendant Moore that Plaintiff had filed a Notice of Withdrawal previously, and that Case No. 21-5-00680-6 SEA had been fraudulently and barratrously initiated by Defendants Cliber and Owen by filing a fraudulent Petition to Decide Parentage, and furthermore that pursuant to RCW 26.09.004(4) Family Court did not have jurisdiction to issue a Temporary Parenting Plan.

849. Plaintiff also stated that pursuant to RCW 26.50.050, .060, Defendant Holloway was without jurisdiction over Plaintiffs to sign the Temporary Restraining Order on November 3, 2021, which Defendant Keenan then signed on November 13, 2021, dismissing Plaintiff's explicit objections to violations of Plaintiff's rights.

850. Defendant Moore disregarded Plaintiff's challenge to subject matter jurisdiction, asserting that only the current motion by Defendants Cliber and Owen to take away Plaintiffs' zoom calls was before the court.

851. Subject matter jurisdiction can be challenged at any time, and once challenged, must be proven by the party non-moving party.

852.     Defendant Cliber has only responded to Plaintiff's challenges to subject matter jurisdiction by asserting they are "frivolous", without providing further explanation. That is a commonly employed logical fallacy, an *ad hominem,* which avoids addressing the arguments and case laws cited from federal court decisions.

853.     Defendants Moore, Franklin-Bihary, Cliber, and Owen had been informed by Plaintiff prior to the hearing that the Pfizer BioNTech 162b2 EUA GTP injections posed a direct and imminent threat to the physical well-being of A.R.W., evidenced by the VAERS reported data.

854.     Plaintiff heard Defendant Franklin-Bihary state, "There have been some troubling things in those [Zoom video] calls. For example, having the child read from a restraining order, engaging the child about what happens in mom's house.  Some of those kinds of involvements, even on recorded zoom calls.  So, that's kind of the concerns that, you know, I want to share with the court."

855.     Defendant Franklin-Bihary expressed no concern that the Restraining Orders obtained by Defendants Owen and Cliber contain perjurious and slanderous statements about A.R.W.'s father.

856.     Defendant Franklin-Bihary expressed no concern that the Restraining Orders obtained by Defendants Owen and Cliber cited state

statutes that, when read, show that the Restraining Orders were without jurisdiction and barratrous.

857.   Defendant Franklin-Bihary expressed no concern that A.R.W. might be upset or wonder how his father could be prevented by court order from any unsupervised contact with A.R.W.

858.   Defendant Franklin-Bihary expressed no concern that Defendants Owen and Lerman had coerced A.R.W. to be injected with at least two EUA Pfizer BioNTech GTPs without informed consent.

859.   Defendant Franklin-Bihary expressed no concern that Defendants Cliber, Hermsen, Owen and Lerman have used A.R.W. as an object of manipulation for attempted felony extortion of Plaintiff.

860.   Defendant Franklin-Bihary expressed no concern that Defendants Owen and Lerman repeatedly brought their prostitution clients into their home while A.R.W. was in the house.

861.   Defendant Franklin-Bihary only expressed concern that Plaintiff would talk to his own son about what was going on in the home of Defendants Owen and Lerman.

862.   Defendant Moore ruled that Plaintiff citing the Revised Code of Washington to explain to A.R.W. how Defendants Cliber and Owen committed perjury and barratry to fraudulently invoke the jurisdiction of

Family Court constituted a violation of Defendant Eagle's April 12, 2022,

Order, as well as abuse of A.R.W. by Plaintiff.

863.    Defendant Moore ruled that Plaintiff warning A.R.W. about the

dangers of the EUA Pfizer GTPs shown in the most recent VAERS data, was

a violation of the order issued by Defendant Eagle on April 12, 2022,

because the EUA Pfizer GTP "is a key part to what's going on in this case,

so it's very clear that repeated violations of the issue raised by

Commissioner Eagle on April 12th."

864.    This raises the question of what specifically Plaintiff can talk to his

son about.  *City of Seattle v. Rice*, 93 Wash.2d 728 (1980) addressed thus:

> "The entire question here is whether the words "lawful order" are
> sufficiently specific to satisfy the due process requirements of the void for
> vagueness doctrine. The due process clause of the Fourteenth Amendment
> requires specificity in penal statutes and ordinances for two independent
> reasons. First, citizens must have fair notice of what conduct is proscribed.
> *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888
> (1939).

> "Second, explicit standards are necessary in order to guard against
> arbitrary enforcement of the laws. *Papachristou v. Jacksonville*, 405 U.S.
> 156, 168-71, 92 S.Ct. 839, 846-48, 31 L.Ed.2d 110 (1972)

> The touchstone of the "fair notice" principle is that the statute or ordinance
> must be sufficiently specific that "men of reasonable understanding are not
> required to guess at the meaning of the enactment." *Seattle v. Drew*, 70
> Wash.2d 405, 408, 423 P.2d 522, 524, 25 A.L.R.3d 827 (1967).

> *In Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126,
> 127, 70 L.Ed. 322 (1926), the court stated:

> *That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."*

865.    Defendant Moore stated that Plaintiff warning A.R.W. about the increasing risk of serious harm, or death, indicated by the most recent VAERS data constituted "harm."

866.    Plaintiff heard Defendant Moore state, "The harm that having these discussions with a thirteen-year-old child is likely long lasting."

867.    Defendant Moore ruled that Plaintiff warning A.R.W. that Defendants Owen and Lerman pattern of conduct indicated Defendants Owen and Lerman were either delusional, or pathological liars, for them to still be asserting that the Pfizer BioNTech 162b2 EUA GTP is necessary, safe, and effective, was a violation of Defendant Eagle's April 12, 2022, Order, and constituted abuse of A.R.W. by Plaintiff.

868.    Thereby, Defendant Moore ordered that Plaintiff have no further contact with A.R.W., not even through a third party.  Therefore, Plaintiff could be arrested if Plaintiff told his adult daughter to tell A.R.W. that Plaintiff loves his son.

*"No sanction ca be imposed absent proof of jurisdiction."*

*Standard v Oleson* 74 S. Ct. 768 (1954)

## TT. SEATTLE MUNICIPAL COURT MOTIONS HEARING

869.     On August 29, 2022, a Motion Hearing was held in Seattle Municipal

Courtroom 1001, before Presiding Judge Defendant Willie Gregory, to hear

Plaintiff's Motions for Summary Judgement and Motion to Vacate

Judgement.

>    EXHIBIT P14A: 2022-6-8-SMC-MSJ-662870---pdf - Google Drive
>    EXHIBIT P14B:  2022-6-8-SMC-MSJ-656927-656748-.pdf - Google Drive
>    EXHIBIT P14C:  2022-6-10-SMC-VACATE-656749-.pdf - Google Drive

870.     Plaintiff had initiated the hearing, which took more than two months

to finally have noted on the court's calendar.  CITY OF SEATTLE filed a

Response on August 24, 2022, filed by City of Seattle Prosecutor Defendant

Karr.

>    EXHIBIT P14D: 2022-8-24-City Response-.pdf - Google Drive

871.     Plaintiff was again forced to appear by Zoom or telephone.

872.     Plaintiff informed Defendant Gregory that all four of the cases before

the court had already passed their end date, and that Plaintiff had taken

screen shots as evidence.

>    EXHIBIT P14E: 2022-8-29-SMC-END DATE-662870.png - Google Drive
>    EXHIBIT P14F: 2022-8-29-SMC-END DATE-656927.png - Google Drive

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 152

EXHIBIT P14G: 2022-8-29-SMC-END DATE-656749.png - Google Drive
EXHIBIT P14H: 2022-8-29-SMC-END DATE-656748.png - Google Drive

873.      Defendant Gregory denied Plaintiff's right to appear in person, in

violation of *Wash. Const. Article I § 22 Rights of the accused.*

874.      Plaintiff was connected to the hearing by telephone call.

875.      Defendant Gregory denied that any of the four cases had passed their

end date.

876.      Defendant Gregory dismissed all of Plaintiff's motions.

877.      Via telephone audio Plaintiff respectfully informed Defendant

Gregory that Plaintiff had nothing further to say, and thanked Defendant

Gregory and Defendant Karr for their time, and then disconnected from the

telephone audio.  The court did not try calling Plaintiff back on the phone.

878.      Afterward, Defendant Gregory ordered four (4) bench warrants of

$15,000 each for Plaintiff allegedly "leaving the hearing early."

> **Washington Constitution Amendment I § 14**
> *EXCESSIVE BAIL, FINES AND PUNISHMENTS.*
> *Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted.*

EXHIBIT P15A: 2022-8-29---SMC-BW-656749.pdf - Google Drive
EXHIBIT P15B: 2022-8-29---SMC---BW-656927.pdf - Google Drive
EXHIBIT P15C: 2022-8-29---SMC-BW-656748.pdf - Google Drive
EXHIBIT P15D: 2022-8-29---SMC-BW-662870.pdf - Google Drive

## UU. POLICIES VIOLATIVE OF PLAINTIFF RIGHTS

879.    FEDERAL BUREAU OF INVESTIGATION---SEATTLE OFFICE

    a. Policy of refusing to consider or receive federal felony complaints, or accept evidence of such crimes, from Plaintiff regarding 18 U.S.C. §§ 241, 242.

880.    STATE OF WASHINGTON AND DEPARTMENT OF HEALTH

    a. Portrayed Governor Inslee's Covid-19 Proclamations as mandatory law requiring the enforcement of, and obedience to, all Covid-19 Proclamations and Department of Health Orders by every person in the state of Washington.

    b. Issued and portrayed Covid-19 orders as legal requirements of every person in the state of Washington.

    c. Policy of publicly promoting EUA face masks as effective means of mitigating the transmission, or infection, of SARS CV-2.

    d. Policy of publicly promoting EUA Pfizer GTPs as "approved".

    e. Policy of publicly promoting EUA Pfizer GTPs as "vaccines"

    f. Policy of publicly promoting EUA Pfizer GTPs as "safe".

    g. Policy of publicly promoting EUA Pfizer GTPs as "effective"

881.    DEPARMTENT OF CHILD, YOUTH & FAMILY

    a. Policy that children can be forced to wear EUA face masks and be injected with EUA Pfizer GTPs without informed consent.

b.   Policy of refusing to acknowledge or take child abuse complaints regarding subjecting minor children to injection of EUA Pfizer GTPs.

c.   Policy of considering EUA Pfizer GTPs are FDA "approved".

d.   Policy of considering EUA Pfizer GTPs are "vaccines".

e.   Policy of considering EUA Pfizer GTPs are "safe".

f.   Policy of considering EUA Pfizer GTPs are "effective"

882.   KING COUNTY PUBLIC HEALTH

a.   Policy of publicly promoting EUA face masks as legally required.

b.   Policy of publicly promoting EUA face masks as effective means of mitigating the transmission, or infection, of SARS CV-2.

c.   Policy of publicly promoting EUA Pfizer GTPs as "approved".

d.   Policy of publicly promoting EUA Pfizer GTPs as "vaccines"

e.   Policy of publicly promoting EUA Pfizer GTPs as "safe".

f.   Policy of publicly promoting EUA Pfizer GTPs as "effective"

883.   KING COUNTY COURTHOUSE

a.   Wearing of EUA facemasks forced or coerced upon entry into courtrooms or clerk's office.

b.   Policy of publicly promoting EUA face masks as effective means of mitigating the transmission, or infection, of SARS CV-2.

c.  Retaliatory discrimination against Plaintiff exhibited by Clerk's Office allowing other people to access the Clerk's Office without wearing an EUA face mask.

884.    KING COUNTY FAMILY COURT

a.  Wearing of EUA facemasks forced or coerced upon entry into courtrooms.

885.    KING COUNTY PROSECUTOR OFFICE

a.  Policy of refusing to act upon sworn criminal complaints provided to office.

886.    KING COUNTY SHERIFFS OFFICE

a.  Enforcement of Judge Rogers' court orders requiring the wearing of EUA facemasks for access to court clerk's office and entry into courtrooms.

b.  Policy of discrimination, or retaliation, against Plaintiff by refusing to file any criminal complaint with King County Prosecutors Office regarding dozens of felonies and gross misdemeanor crimes perpetrated against Plaintiff.

c.  Policy of refusing to acknowledge or take criminal coercion complaints regarding subjecting minor children to injection of EUA Pfizer GTPs.

887.    KING COUNTY JAIL

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 156

a. Wearing of EUA facemasks forced or coerced upon entry into building.

888.   SEATTLE PUBLIC SCHOOLS

a. Wearing of EUA facemasks forced or coerced upon entry into school buildings.

b. Policy of publicly promoting EUA face masks as effective means of mitigating the transmission, or infection, of SARS CV-2.

c. Injection with EUA Covid-19 GTPs required condition of entrance into school buildings.

d. Policy of publicly promoting EUA Pfizer GTPs as "approved".

e. Policy of publicly promoting EUA Pfizer GTPs as "vaccines"

f. Policy of publicly promoting EUA Pfizer GTPs as "safe".

g. Policy of publicly promoting EUA Pfizer GTPs as "effective".

h. Retaliatory or discriminatory policy of refusing to respect Plaintiff's parental rights.

889.   CITY OF SEATTLE

a. All employees required to submit to injection of Covid-19 EUA GTPs.

b. Forced or coerced wearing of EUA facemasks by SMC allowed or encouraged.

c. Policy of publicly promoting EUA face masks as safe and effective in mitigating the viral transmission of SARS CoV-2.

    d. Policy of publicly promoting EUA Pfizer GTPs as "approved".

    e. Policy of publicly promoting EUA Pfizer GTPs as "vaccines"

    f. Policy of publicly promoting EUA Pfizer GTPs as "safe".

    g. Policy of publicly promoting EUA Pfizer GTPs as "effective"

890.    SEATTLE CITY ATTORNEYS OFFICE

    a. Prosecution of barratrous "criminal trespass" charges against Plaintiff.

    b. "Failure to appear" bench warrants repeatedly requested against Plaintiff for Plaintiff's refusal to wear an EUA face mask under threat, duress or coercion.

    c. Policy of retaliation against Plaintiff

891.    SEATTLE MUNICIPAL COURT

    a. Wearing of EUA facemasks forced or coerced upon entry into building.

    b. Policy of indefinitely denying Plaintiff his right to leave King County Jail cell to enter a court room for arraignment unless Plaintiff wore an EUA face mask.

    c. Policy of retaliation, and threats of retaliation, against Plaintiff for not complying with mask orders from Defendants Gregory, Crawford-Willis, Lynch, and McDowall.

892.    SEATTLE POLICE DEPARTMENT

a. All employees required to submit to injection of Covid-19 EUA GTPs.

b. Forced or coerced wearing of EUA facemasks by SMC allowed or encouraged despite Plaintiff's 911 calls and complaints to SPD officers.

c. Officers refused to take complaints regarding criminal coercion subjecting people to injection of EUA Pfizer GTPs.

d. Indifference to Plaintiff's complaints that arresting SPD officers would be subjecting Plaintiff to violations of his rights, ADA law, and state laws against discrimination if the SPD officers brought Plaintiff into King County Jail.

e. Policy of discriminatory retaliation against Plaintiff of refusing to file any criminal complaint regarding dozens of felonies and gross misdemeanor crimes perpetrated against Plaintiff.

f. Policy of refusing to act on criminal complaints of perjury or barratry in court by asserting SPD policy is to leave that up to the judges.

g. Policy that any order from a Seattle Municipal Court judge can violate rights of Plaintiff secured by the state and federal constitutions, as well as state statute.  Officers told Plaintiff to "fill out a customer complaint card" in the lobby of Seattle Municipal Courthouse.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 159

h.  Policy preventing a legal owner of a stolen vehicle from filing a stolen vehicle report if the victim is not listed as the registered owner.

893.   Policies of State of Washington, King County, King County Superior Court, King County Sheriff's Office, King County Jail, Seattle Public Schools, Jane Addams Middle School, City of Seattle, Seattle City Attorneys Office, Seattle Municipal Court, Seattle Police Department, were allowed, promulgated, enabled, enforced, or acted under, by Defendants that subjected A.R.W. to coerced injections of EUA Pfizer GTPs without informed consent.

894.   Policies of State of Washington, King County, King County Superior Court, King County Sheriff's Office, King County Jail, Seattle Public Schools, Jane Addams Middle School, City of Seattle, Seattle City Attorneys Office, Seattle Municipal Court, Seattle Police Department, were allowed, promulgated, enabled, enforced, or acted under, by Defendants that forced or coerced Plaintiffs to wear an EUA face mask.

895.   Policies of State of Washington, King County, King County Superior Court, King County Sheriff's Office, King County Jail, Seattle Public Schools, Jane Addams Middle School, City of Seattle, Seattle City Attorneys Office, Seattle Municipal Court, Seattle Police Department, were allowed, promulgated, enabled, enforced, or acted under, that subjected Plaintiff to segregation or discrimination.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 160

896.     Policies of State of Washington, King County, King County Superior Court, King County Sheriff's Office, King County Jail, Seattle Public Schools, Jane Addams Middle School, City of Seattle, Seattle City Attorneys Office, Seattle Municipal Court, Seattle Police Department, were allowed, promulgated, enabled, enforced, or acted under, by Defendants that abrogated Plaintiff's rights if Plaintiff didn't wear a mask, and in so doing denied Plaintiff any remedy for the violation of his rights.

## IV.   FACTUAL ALLEGATIONS OF CRIMINAL CONDUCT AND VIOLATIONS OF FEDERAL REGULATIONS

### COUNT ONE
RCW 9.91.01 Denial of Civil Rights

897.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

898.     A face mask used to mitigate the transmission, or infection, of "SARS-CoV-2" is an EUA "medical device", pursuant to the U.S. Code of Federal Regulations.

899.     Plaintiff's firmly held beliefs, his Creed, both secular and spiritual, prevent Plaintiff from wearing a face mask to enter a public building.  The breath of life is sacred.  To inhibit it is to inhibit the movement of the Divine.

To fearfully condemn the breath of life as a source of disease is blasphemous, for without breath we are without life.

900.     Plaintiff's firmly held beliefs, his Creed, both secular and spiritual, prevent A.R.W. from wearing a face mask to enter a public building.

901.     Plaintiff has never received a diagnosis from a medical professional determining Plaintiff to be a "direct" or "imminent" "threat to public health."

902.     A.R.W. has never received a diagnosis from a medical professional determining A.R.W. to be a "direct" or "imminent" "threat to public health."

> Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Act), provides, inter alia, that no "otherwise qualified handicapped individual," as defined in 29 U.S.C. § 706(7), shall, solely by reason of his handicap, be excluded from participation in any program receiving federal financial assistance. Section 706(7)(B) defines "handicapped individual" to mean any person who
> "(i) has a physical . . . impairment which substantially limits one or more of [his] major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."
> A person afflicted with the contagious disease of tuberculosis may be a "handicapped individual" within the meaning of § 504. Pp. <u>480 U. S. 280</u>-286.
>
> **School Bd. of Nassau County v. Arline,** 480 U.S. 273 (1987).

903.     Plaintiff has reason to believe, and does believe, that his being denied access without a face mask into Jane Addams Middle School by Defendants Jones, Narver, Montgomery, and Booker constituted conduct violative of RCW 9.91.010 Denial of Civil Rights, and as such, a misdemeanor.

904.     As Plaintiff has not been sick since 2016, and A.R.W. already recovered easily from COVID-19 by Spring of 2021, wearing of a mask is not a public health issue, but rather for Seattle Public Schools to impose their beliefs upon Plaintiffs, without public health reason or lawful authority,

905.     Defendants Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Cole-Tindall, Rogers, Eagle, Moore, Keenan, Holloway, Owen, Lerman, Jones, Narver, Montgomery, and Booker did so, or were allowed to do so with impunity, under color of law of policies, practices, customs and procedures of the Seattle Police Department, Seattle Public Schools, King County Sheriff's Office, or King County Family Court, which violated Plaintiff's rights.

> *Article 1 § 4 RIGHT OF PETITION AND ASSEMBLAGE. The right of petition and of the people peaceably to assemble for the common good shall never be abridged.*

906.     Plaintiff has reason to believe, and does believe, that his being denied access without a face mask by Defendants Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Cole-Tindall, Rogers, Eagle, Moore, Keenan, and Holloway to King County Superior Court courtrooms, or the King County Superior Court Clerk's Office, in accordance with the policies of King County Superior Court and Emergency Orders #19, #32, and #36.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 163

constituted conduct violative of RCW 9.91.010 Denial of Civil Rights, and as such, a misdemeanor.

907.    Plaintiff has reason to believe, and does believe, that A.R.W. being denied access to Jane Addams Middle School without a face mask into Jane Addams Middle School by Defendants Jones, Narver, Montgomery, and Booker, in accordance with the policies of Seattle Public Schools, constituted conduct violative of RCW 9.91.010 Denial of Civil Rights, and as such, a misdemeanor.

## COUNT TWO
Violation of Informed Consent 21 CFR § 50.23
Medical Device 21 U.S.C. § 360bbb–3 (e)(1)(A)(ii)(III)

908.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

909.    Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2,

910.    Defendants Worsham, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Cole-Tindall, Rogers, O'Donnel, Eagle, Moore, Keenan, and Holloway required that Plaintiff wear an EUA medical device as a condition to access King County Superior Court courtrooms or the office of the clerk.

911.    Defendants Jones, Narver, Montgomery, and Booker knowingly and willingly created, facilitated, or followed, a policy which required that A.R.W. wear an EUA medical device as a condition to access Jane Addams Middle School.

912.    Defendants Jones, Narver, Montgomery, and Booker knowingly and willingly created, facilitated, or followed, a policy which required that Plaintiff wear an EUA medical device as a condition to access Jane Addams Middle School.

913.    Defendants Jones, Narver, Montgomery, and Booker knowingly and willingly created, facilitated, or followed, a policy which required that Plaintiff consent to an EUA GTP as a condition to access Jane Addams Middle School.

914.    Defendants Jones, Narver, Montgomery, and Booker did not provide Plaintiff, or A.R.W., the option to accept or refuse the administration of an EUA medical device.

915.    Defendants Jones, Narver, Montgomery, and Booker did not inform Plaintiff, or A.R.W., of the alternatives to an EUA medical device that are available, and their benefits and risks.

916.    Defendants Worsham, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Cole-Tindall, Rogers, Eagle, O'Donnel, Moore, Keenan, and

Holloway, did not provide Plaintiff with any information relating to the risks of wearing an EUA medical device.

917.    Defendants Worsham, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Cole-Tindall, Rogers, Eagle, O'Donnel, Moore, Keenan, and Holloway did not provide Plaintiff "sufficient opportunity to discuss and consider whether or not to participate" in wearing an EUA medical device.

918.    Defendants Owen, Lerman, Jones, Narver, Montgomery, and Booker did not provide, or obtain, the informed consent of Plaintiff that would permit A.R.W. to wear an EUA medical device at school.

919.    Plaintiff's informed consent was not provided, or obtained, pursuant to 21 CFR § 50.23.

920.    Defendants Worsham, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, Moore, Keenan, Holloway, Owen, Lerman, Jones, Narver, Montgomery, and Booker did so, or were allowed to do so with impunity, under color of law of policies, practices, customs or procedures of the Seattle Police Department, Seattle Public Schools, King County Sheriff's Office, or King County Family Court, which violated Plaintiff's rights.

921.    Defendants Worsham, Fuseini, Anderson, Bliey, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, McMenamy, Coffin, Clark, McClennen, Keenan, and Holloway did not provide and obtain Plaintiff's informed consent for Plaintiff to wear a face mask, which Plaintiff has reason to believe, and does believe, constitutes a violation of 21 CFR § 50.23 Informed Consent.

## COUNT THREE
Coercion RCW 9A.36.070

922.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

923.    Defendants Worsham, Cole-Tindall, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Rogers, Eagle, O'Donnel, Moore, Keenan, and Holloway attempted to coerce Plaintiff into wearing an EUA medical device as a condition of to access the clerk's office, or to enter a public courtroom by use, explicit or implicit, of threats, intimidation, retaliation or punishment, to induce Plaintiff to engage in conduct, the wearing of an EUA medical device, that Plaintiff had a legal right to decline.

> *(28) "Threat" means to communicate, directly or indirectly the intent:*
>> *(c) To subject the person threatened or any other person to physical confinement or restraint; or*
>> *(h) To take wrongful action as an official against anyone or anything, or wrongfully withhold official action, or cause such action or withholding; or*

*(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his or her health, safety, business, financial condition, or personal relationships;*

924.    Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, and KC Jane Doe #2, coerced Plaintiff into wearing an EUA medical device as a condition of seeing a judge to be released from jail.

925.    Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, and KC Jane Doe #2, coerced Plaintiff into wearing an EUA mesh bag over Plaintiffs head as a condition of entrance into King County Jail.

926.    Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, and KC Jane Doe #2, coerced Plaintiff into taking a PCR test as a condition of seeing a judge to be released from King County Jail.

927.    Defendants Worsham, Jones, Narver, Montgomery, and Booker coerced A.R.W. into wearing a face mask as a condition of entrance to school by use, explicit or implicit, of threats, intimidation, retaliation or punishment, to induce A.R.W. to engage in conduct, the wearing of an EUA medical device, that A.R.W. had a legal right to decline.

928.    Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Keenan, Holloway, Eagle, O'Donnel, Moore, Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark,

McClennen, Jones, Narver, Montgomery, and Booker did so, or were allowed to do so with impunity, under color of law of policies, practices, customs and procedures of the Seattle Police Department, Seattle Public Schools, King County Sheriff's Office, or King County Family Court, which violated Plaintiff's rights.

929.    Plaintiff has reason to believe, and does believe, such conduct by Defendants Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore,Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Keenan, Holloway Narver, Montgomery, and Booker constituted a violation of RCW 9A.36.070, a gross misdemeanor.

## COUNT FOUR
Unlawful Imprisonment RCW 9A.40.040

930.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

931.    Defendants Worsham, Jones, Narver, Montgomery, and Booker without the consent of Plaintiffs, and without legal authority, interfered substantially with the liberty of Plaintiffs.

932.    Defendants Worsham, Jones, Narver, Montgomery, and Booker, employed deception, allowing, enabling, employing, or enforcing, policies of

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 169

Seattle Public Schools as if legitimate authority to prevent Plaintiff from entering Jane Addams Middle School without an EUA face mask or EUA Covid-19 "vaccine" injections.

**RCW 9A.40.010 Definitions.**
*(6) "Restrain" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty. Restraint is "without consent" if it is accomplished by (a) physical force, intimidation, or deception,*

933.     Defendants Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Keenan, and Holloway, without the consent of Plaintiff, and without legal authority, interfered substantially with the liberty of Plaintiff.

934.     Defendants Fuseini, Anderson, Bliey, McMenamy, Coffin, Clark, McClennen, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Keenan, and Holloway, employed deception; allowing, enabling, employing, or enforcing, policies or orders of King County officials as if legitimate authority to prevent Plaintiff from accessing King County Superior Court rooms, clerk's office, or jail, unless Plaintiff waived his right to refuse wearing an EUA face mask.

935.     Defendants Gregory, Crawford-Willis, Lynch, Diaz, Ladd, Bauer, SPD John Doe #1, Williams, Alden, Wallace, and Christensen, without the consent

of Plaintiff, and without legal authority, interfered substantially with the liberty of Plaintiff.

936.      Defendants Diaz, Ladd, Bauer, McMenamy, Coffin, Clark, McClennen, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Keenan, Holloway, Fuseini, Anderson, Bliey, Anderson, Gregory, Crawford-Willis, Lynch, McDowall, Jones, Narver, Montgomery, and Booker did so, or were allowed to do so with impunity, under color of law of policies, practices, customs and procedures of the Seattle Police Department, Seattle Public Schools, King County Sheriff's Office, or King County Family Court, which violated Plaintiff's rights.

937.      Plaintiff has reason to believe, and does believe, such conduct by Defendants Gregory, Crawford-Willis, Lynch Diaz, Ladd, Bauer, McMenamy, Coffin, Clark, McClennen, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Keenan Holloway, Fuseini, Anderson, Bliey, Anderson, Jones, Narver, Montgomery, and Booker, constituted a violation of RCW 9A.40.040, Unlawful imprisonment, a class C felony.

## COUNT FIVE
RCW 9A.76.175 Making a false or misleading statement

938.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

939.     Defendant Cliber made ten (10) or more false statements to public servants of Family Court to portray Plaintiff as being a "credible threat" to A.R.W. and Defendant Owen.  Defendant Cliber did so knowing the reasonable likelihood it would be relied upon by a public servant in the discharge of his or her official powers or duties.

940.     Defendant Owen made false statements to SPD officers or school officials, asserting, that she was the "sole legal guardian" of A.R.W., that Plaintiff's FJ Cruiser was "hers", and that the house was "hers".  Defendant Owen did so knowing the reasonable likelihood it would be relied upon by a public servant in the discharge of his or her official powers or duties.

941.     Defendant Ladd made false or misleading statements in the police report for SPD Incident #21-003578.  Defendant Ladd did so knowing the reasonable likelihood it would be relied upon by a public servant in the discharge of his or her official powers or duties.

942.     As the U.S. Supreme Court stated:

> *"Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading.*
>
> *United States v. Prudden,* 424 F.2d 1021 (5th Cir. 1970)

943.     Defendants Cliber, Owen, and Ladd did so, or were allowed to do so with impunity, under color of law of policies, practices, customs and procedures of the Seattle Police Department, King County Sheriff's Office, or King County Family Court, which violated Plaintiff's rights.

944.     Plaintiff has reason to believe, and does believe, such conduct by Defendants Ladd, Cliber and Owen constituted a violation of RCW 9A,76.175, a gross misdemeanor.

## COUNT SIX
RCW 9A.72.020 Perjury

945.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

946.     Defendants Owen and Cliber knowingly and willfully provided material statements of fact, oral or written, to King County Family Court that were false, under an oath required by law.

947.     Defendant Owen provided material statements of fact by signing her signature to the Registration for Plaintiff's Toyota FJ Cruiser that omitted Plaintiff's name as a "legal owner", under an oath required by law.

948.     Defendant Cliber knowingly and willfully provided material statements of fact, oral or written, to King County Family Court that were false, under an oath required by law.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 173

949.     Defendants Cliber and Owen did so, or were allowed to do so with

impunity, under color of law of policies, practices, customs and procedures of

the Seattle Police Department, King County Sheriff's Office, or King County

Family Court, which violated Plaintiff's rights, and those of A.R.W.

950.     Plaintiff has reason to believe, and does believe, such conduct by

Defendants Cliber and Owen constituted a violation of RCW 9A.72.020

Perjury, a class B felony.


## COUNT SEVEN
### False Reporting RCW 9A.84.040(c)

951.     Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

952.     Defendants Owen and Lerman conveyed false information to 911

Dispatch or SPD officers to cause an emergency response by SPD officers, to

prevent Plaintiff from speaking with A.R.W., or to eject Plaintiff from his

home.

953.     Defendants Owen and Lerman did so, or were allowed to do so with

impunity, under color of law of policies, practices, customs, and procedures

of SPD Officers which violated Plaintiff's rights.

954.    Plaintiff has reason to believe, and does believe, such conduct by

Defendants Owen and Lerman constituted a violation of RCW 9A.84.040, a

gross misdemeanor.

## COUNT EIGHT
RCW 9.12.010 Barratry

955.    Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

956.    Defendants Owen and Cliber did knowingly and willfully commence

one or more false actions in Family Court against Plaintiff, with the intent

thereby to distress or harass Plaintiff.

957.    The Petition to Decide Parentage was commenced willfully and

knowingly without merit.

958.    Defendants Owen and Cliber did so, or were allowed to do so with

impunity, under color of law of policies, practices, customs and procedures of

Seattle Police Department, King County Sheriff's Office, or King County

Family Court,  which violated Plaintiff's rights, and those of A.R.W.

959.    Plaintiff has reason to believe, and does believe, such conduct

constituted a violation of RCW 9.12.010 Barratry, a misdemeanor.

## COUNT NINE
RCW 9A.40.060 Custodial interference in the first degree

960.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

961.     Defendants Cliber, Owen, Lerman, Murphy, Montgomery, and Booker, acted to take, retain or conceal A.R.W. from Plaintiff.

962.     Defendants Cliber, Owen, Lerman, Murphy, Montgomery, and Booker did so without a lawful custody order entered by a court of competent jurisdiction.

963.     Defendants Cliber, Owen, Lerman, Murphy, Montgomery, and Booker did so, or were allowed to do so with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department, Seattle Public Schools, King County Sheriff's Office, King County Family Court, which violated Plaintiffs' rights, and those of A.R.W.

964.     Defendants Cliber, Owen, Lerman, Murphy, Montgomery, and Booker did so with the intent to deprive Plaintiff from access to A.R.W. for a protracted period.

965.     Plaintiff has reason to believe, and does believe, such actions of Defendants Cliber, Owen, Lerman, Murphy, Ladd, Bauer, Montgomery, and Booker constituted a violation of RCW 9A.40.060 Custodial interference in the first degree, a class C felony.

## COUNT TEN
RCW 9A.56.070 Taking a motor vehicle without permission
In the first degree

966.     Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

967.     Defendants Owen and Lerman, without the permission of Plaintiff,

did take and retain Plaintiff's 2011 Toyota FJ Cruiser, with the intent to

sell the FJ Cruiser if Plaintiff did not comply with Defendant Owen's

extortion demand of $19,000.

968.     Defendants Owen and Lerman did so, or were allowed to do so with

impunity, under color of law of policies, practices, customs and procedures of

Seattle Police Department, King County Sheriff's Office, King County

Family Court, which violated Plaintiffs' rights.

969.     Plaintiff has reason to believe, and does believe, such conduct by

Defendants Owen and Lerman constituted a violation of RCW 9A.56.070

Taking a motor vehicle without permission

in the first degree, a class B felony

## COUNT ELEVEN
RCW 9A.56.075 Taking a motor vehicle without permission
In the second degree

970.     Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 177

971.     On September 3, 2021, Defendant Ladd intentionally took possession of Plaintiff's FJ Cruiser, without the permission of Plaintiff.

972.     Defendants Ladd and Willenberg did so, or was allowed to do so with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department or King County Sheriff's Office, which violated Plaintiffs' rights.

973.     Plaintiff has reason to believe, and does believe, such conduct by Defendant Ladd constituted a violation of RCW 9A.56.075 Taking a motor vehicle without permission in the first degree, a class C felony.


## TWELVE
RCW 9A.56.200. Robbery in the first degree

974.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

975.     On September 3, 2021, Defendant Ladd unlawfully took possession of Plaintiff's FJ Cruiser, in the presence of Plaintiff, and against Plaintiff's will.

976.     Defendant Ladd did so with the threat, implicit or explicit, of the use of immediate force, violence, or fear of injury to Plaintiff, or Plaintiff's property.

977.    Defendant Ladd did so armed with a deadly weapon, which was openly displayed.

978.    Defendant Ladd did so, or was allowed to do so with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department or King County Sheriff's Office, which violated Plaintiffs' rights.

979.    Plaintiff has reason to believe, and does believe, such conduct by Defendant Ladd constituted a violation of RCW 9A.56.200 Robbery in the first degree, a class A felony.

## THIRTEEN
RCW 9A.52.120 Extortion in the first degree

980.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

981.    Defendants Owen and Cliber, directly or indirectly, threatened to restrain Plaintiffs from being with each other if Plaintiff did not comply with Defendant Owen's demand for money.

982.    Defendant Owen did so, or was allowed to do so with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department, King County Sheriff's Office, or King County Family Court, which violated Plaintiffs' rights.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 179

983.    Defendants McDowall, Lynch, Gregory, and Crawford-Willis, threatened Plaintiff in Seattle Municipal Court hearings, by providing Plaintiff with two choices:  1) waive his right to refuse to wear an experimental medical device on his face, and be permitted to enter Seattle Municipal Court, or 2) exercise his right to not wear a face mask and be restrained from entering Seattle Municipal Court, and be punished with $10,000 (or more) in bench warrants for his arrest.

> *RCW 9A.56.110 Extortion—Definition.*
> *"Extortion" means knowingly to obtain or attempt to obtain by threat property or services of the owner,*

984.    While "services" includes a broad range of activities, ordering Plaintiff to be submit to wearing an EUA face mask is forced labor far more humiliating if Plaintiff was ordered to scrub floors, or clean toilets, as it is a violation of Plaintiff's bodily autonomy protected by the Nuremberg Code.

> *RCW 9A.56.120 Extortion in the first degree.*
> *(1) A person is guilty of extortion in the first degree if he or she commits extortion by means of a threat as defined in RCW 9A.04.110(28)(a)(b) or (c).*
> *(2) Extortion in the first degree is a class B felony.*
>
> *RCW 9A.04.110 Definitions*
> *(28) "Threat" means to communicate, directly or indirectly the intent:*
> *(c) To subject the person threatened or any other person to physical confinement or restraint;*

985.    Plaintiff has reason to believe, and does believe, such conduct by Defendants Gregory, Crawford-Willis, Lynch, McDowall, MacDonald, Karr,

and Owen, constituted a violation of RCW 9A.56.120 Extortion in the first

degree

## FOURTEEN
RCW 9A.52.130 Extortion in the second degree

986.     Plaintiff incorporates and realleges the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

987.     Defendant Owen, by and through Defendant Hermsen acting under

power-of-attorney, did threaten to substantially harm Plaintiff's financial

condition by demanding $19,000 for the return of Plaintiff's FJ Cruiser.

988.     Defendants Owen and Hermsen did so, or were allowed to do so with

impunity, under color of law of policies, practices, customs and procedures of

Seattle Police Department, King County Sheriff's Office, or King County

Family Court, which violated Plaintiffs' rights.

989.     Plaintiff has reason to believe, and does believe, such conduct by

Defendants Owen and Hermsen constituted a violation of RCW 9A.56.130

Extortion in the second degree,


## COUNT FIFTEEN
RCW 9A.82.050 Trafficking in stolen property
In the first degree

990.     Plaintiff incorporates and realleges the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 181

991.    Defendant Owen, by and through Defendant Hermsen acting under
power-of-attorney, did communicate via text messages Defendant Owen's
intent to sell Plaintiff's FJ Cruiser.

992.    Defendants Owen and Hermsen did so, or were allowed to do so, with
impunity, under color of law of policies, practices, customs and procedures of
Seattle Police Department, King County Sheriff's Office, or King County
Family Court, which violated Plaintiffs' rights.

993.    Plaintiff has reason to believe, and does believe, such conduct by
Defendants Owen and Hermsen constituted a violation of RCW 9A.56.340
Theft with intent to resell, a class B felony.

## COUNT SIXTEEN
RCW 9A.72.090 Bribing a witness

994.    Plaintiffs incorporate and reallege the allegations contained in the
preceding paragraphs of this Petition and Claim as if fully set forth herein.

995.    On February 2022 Defendant Hermsen texted Plaintiff an offer to
have Plaintiff's stolen 2011 Toyota FJ Cruiser returned to Plaintiff, on the
condition that Plaintiff agree not to pursue criminal charges against
Defendants Hermsen, Owen, and Lerman, for the theft of Plaintiff's FJ
Cruiser, and attempted Extortion for the return of Plaintiff's FJ Cruiser.

996.    Defendant Hermsen did so, or was allowed to do so, with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department, King County Sheriff's Office, King County Prosecutor's Office, and King County Family Court, which violated Plaintiffs' rights.

997.    Plaintiff has reason to believe, and does believe, such conduct by Defendant Hermsen constituted a violation of RCW 9A.72.090 Bribing a witness, a class B felony.


**COUNT SEVENTEEN**
RCW 9A.56.130 Extortion in the second degree

998.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

999.    Defendants Owen and Cooper have been friends for approximately 15 years, and consider each other "family" as fellow members of their Burning Man group, named "K.A.O.S."

1000.   Defendant Cooper and Plaintiff have been friends for approximately three years.

1001.   On, or around, June 1, 2022, Plaintiff began contacting witnesses to testify on his behalf in Family Court Case No. 21-5-00680-6 SEA.

1002.   On June 2, 2022, Plaintiff texted Defendant Cooper, informing Defendant Cooper that Plaintiff would be summoning Defendant Cooper to

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 183

testify as a character witness to Plaintiff's loving relationship with A.R.W., "You can say whatever you decide to say under oath."

1003.   On June 2, 2022, Defendant Cooper responded to Plaintiff's text by texting Plaintiff, "I don't care about oath…fuck oath.  Quote that.  Like I give a f*** if my hand is on a Bible, I care about family way before I give a f*** about giving my oath to a fuckin Bible in a God dam courthouse."

1004.   Plaintiff replied by text, "Okay.  So, you care more about being "faithful" to lying abusers if they are in your KAOS "family" than speaking the ruth to protect an innocent child?  Wow.  Okay.  See you in court."

1005.   On June 2, 2022, Defendant Cooper threatened Plaintiff by communicating, directly or indirectly the intent to testify or provide information or withhold testimony or information with respect to Plaintiff's legal claim or defense in Family Court Case No. 21-5-00680 SEA.

1006.   Defendant Cooper knowingly attempted to obtain by threat the services of Plaintiff in an attempt to induce Plaintiff to not summon or subpoena Defendant Cooper to testify in Family Court Case No. 21-5-00680-6 SEA.

1007.   Plaintiff has reason to believe, and does believe, such conduct by Defendant Cooper constituted a violation of RCW 9A.56.130 Extortion in the second degree, a class C felony.

## COUNT EIGHTEEN
### RCW 9A.80.010 Official misconduct

1008.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1009.    Defendants Satterberg, O'Brien, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Diaz, Christensen, Ladd, Bauer, SPD John Doe #1, A. Clark, Odell, Alden, Wallace, Ellis, Hogg, Weiss, SPD Doe #2, SPD Doe #3, Holloway, Keenan, Fuseini, Anderson, Mcmenamy, Coffin, I. Clark, McClennen, Jones, Narver, Montgomery, Booker, and Bliey, with the intent to obtain a benefit or deprive Plaintiff of a lawful right or privilege, did commit unauthorized acts under color of law, or refrain from performing a duty imposed by law.

1010.    Defendants Satterberg, O'Brien, Worsham, Cole-Tindall, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Rogers, Eagle, O'Donnel, Moore, Diaz, Christensen, Ellis, Ladd, Bauer, SPD John Doe #1, SPD Doe #2, SPD Doe #3, A. Clark, Odell, Weiss, Hogg, Williams, Wallace, Alden, Chu, Holloway, Keenan, Fuseini, Anderson, Mcmenamy, Coffin, I. Clark, McClennen, Narver, Montgomery, Booker, and Bliey, did so or was allowed to do so with impunity, under color of law of policies, practices, customs and procedures of Seattle Police Department, Seattle Public

Schools, King County Sheriff's Office, or King County Family Court, which violated Plaintiffs' rights.

1011.     Plaintiff has reason to believe, and does believe. such conduct by Defendants Diaz, Christensen, Ellis, Ladd, Bauer, SPD Doe #1, SPD Doe #2, SPD Doe #3, A. Clark, Odell, Williams, Weiss, Hogg, Wallace, Alden, Chu, Holloway, Keenan, Fuseini, Anderson, McMenamy, Coffin, I. Clark, McClennen, Narver, Montgomery, Booker, and Bliey constituted a violation Of RCW 9A.80.010 Official Misconduct, a gross misdemeanor.

## COUNT NINETEEN
RCW 9A.72.150 Tampering with physical evidence

1012.     Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1013.     Plaintiff has reason to believe and does believe that Defendant Ladd, or an unknown accomplice in the SPD, having reason to believe that an official proceeding would be pending regarding SPD Incident #21-003578, destroyed or removed the physical evidence from Plaintiff's cell phone.

1014.     The physical evidence destroyed or removed was four pictures of the Denial Order for King County Superior Court Case No. 21-2-11149-8 SEA, which Plaintiff texted to Defendant Ladd at approximately 3:25pm on September 3, 2021, more than thirty minutes prior to Defendant Ladd

—

arresting Plaintiff for "violating" the TRO that had been denied by Commissioner Schaefer more than six hours prior to arrest.

1015.    Plaintiff has reason to believe, and does believe, such conduct by Defendant Ladd, or an unknown accomplice, constituted a violation of RCW 9A.72.159 Tampering with physical evidence, a gross misdemeanor.

## COUNT TWENTY
RCW 9A.28.040 Criminal conspiracy

1016.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1017.    Defendants  Gates, Fauci, Walensky, Hahn, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, did so or was allowed to do so with impunity, under color of law of policies, practices, customs and procedures of the State of Washington, CITY OF

SEATTLE, Seattle Police Department, Seattle Public Schools, King County Public Health, King County Prosecutor's Office, King County Sheriff's Office, King County Jail, King County Superior Court, or King County Family Court, which violated Plaintiffs' rights.

1018.    Defendants Gates, Fauci, Walensky, Hahn, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, knowingly, willfully, and repeatedly allowed, initiated, enabled, caused or performed threatening conduct against Plaintiff or A.R.W.

1019.    Defendants Gates, Fauci, Walensky, Hahn, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison,

Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, with intent that conduct constituting a crime be performed, agreed with one or more persons to engage in or cause the performance of such conduct, and any one of them took a substantial step in pursuance of such agreement.

1020.    Plaintiff has reason to believe, and does believe, such conduct constituted a violation of RCW 9A.28.040 Criminal conspiracy, a misdemeanor, gross misdemeanor or class C felony.


## COUNT TWENTY-ONE
### RCW 42.20.040 False report

1021.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1022.    The Revised Code of Washington states that an unqualified communication of what one does not know to be true is equivalent to making a statement which one knows to be false.

*RCW 9A.72.080 Statement of what one does not know to be true.*
*Every unqualified statement of that which one does not know to be true is equivalent to a statement of that which he or she knows to be false.*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 189

1023.    The Revised Code of Washington states that no public officer shall knowingly make any false or misleading statement in their official capacity.

> *RCW 42.20.040 False report.*
> *Every public officer who shall knowingly make any false or misleading statement in any official report or statement, under circumstances not otherwise prohibited by law, shall be guilty of a gross misdemeanor.*
>
> *RCW 42.20.080 Other violations by officers.*
> *Every officer or other person mentioned in RCW 42.20.070, who shall willfully disobey any provision of law regulating his or her official conduct in cases other than those specified in said section, shall be guilty of a gross misdemeanor.*

1024.    Defendants Fauci, Walensky, Inslee, Shah, Rogers, Holloway, Keenan, Worsham, Jones, Narver, Montgomery, Booker, Durkan, Harrell, Diaz, Christensen, Ellis, Bruce, Ladd, Bauer, and SPD Doe #1, made false or misleading statements as public officers that, directly or indirectly, coerced A.R.W. to wear an EUA medical device "face mask" without informed consent.

1025.    Defendants Fauci, Walensky, Inslee, Shah, Rogers, Holloway, Keenan, Worsham, Jones, Narver, Montgomery, Booker, Durkan, Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Willenberg, Bauer, and SPD Doe #1 made false or misleading statements as public officer that, directly or indirectly, coerced A.R.W. into being injected with two (2) doses of a Pfizer BioNTech 162b2 COVID-19 "biologic product" without the informed consent of Defendant Owen or Plaintiff.

1026.    Plaintiff has reason to believe, and does believe, such conduct by

Defendants Fauci, Walensky, Inslee, Shah, Rogers, Holloway, Keenan,

Worsham, Jones, Narver, Montgomery, Booker, Durkan, Diaz, Christensen,

Ellis, Bruce, Boyd, Ladd, Willenberg, Bauer, and SPD Doe #1 constituted a

violation of RCW 42.20.040, a gross misdemeanor.

## COUNT TWENTY-TWO
18 USC § 241 Conspiracy against rights

1027.    Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

1028.    Defendants Gates, Fauci, Walensky, Hahn, Inslee, Shah,

Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway,

Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham,

Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC

John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones,

Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison,

Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Willenberg, Bauer, Williams,

Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark,

Chu, Beseler, Cliber, Owen, Lerman, Hermsen, Samuelson, Murphy, and

Cooper acting in concert did conspire to injure, oppress, threaten, or

intimidate Plaintiffs, within Washington State, in the free exercise or

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 191

enjoyment of  rights or privilege secured to Plaintiffs by the Constitution or laws of the United States, or because of them having so exercised the same.

1029.    Plaintiff has reason to believe, and does believe, such conduct constituted a violation of 18 USC § 241, a federal felony.

## COUNT TWENTY-THREE
18 USC § 242 Deprivation of Rights

1030.    Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1031.    Defendants Gates, Fauci, Walensky, Hahn, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Willenberg, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, subjected Plaintiffs, under color of a proclamation, order, law, statute, ordinance, regulation, or custom, to the deprivation of Plaintiffs'

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 192

rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties.

1032.      Plaintiff has reason to believe, and does believe, such conduct constituted a violation of 18 USC § 242, a federal felony.

## COUNT TWENTY-FOUR
18 USC § 1343 Fraud by wire, radio, or television

1033.      Plaintiffs incorporate and reallege the allegations contained in the preceding paragraphs of this Petition and Claim as if fully set forth herein.

1034.      On, or around, August 9, 2021, Defendant Durkan, as acting Mayor of Seattle, was quoted stating:

> *"From the initial days of the COVID-19 pandemic to today, Governor Inslee, Executive Constantine and I believe in the importance of speaking as one government. So many small businesses have stepped up to require vaccines and as some of Washington's largest employers, we are too. The spread of the Delta variant has required that we continue to make decisions that are safe for our employees, their families, and our community. There is no doubt that vaccines work, and that they are our best defense against the highly contagious Delta variant," said Mayor Jenny Durkan*

1035.      Defendant Durkan knew, or should have known as acting Mayor of Seattle, that the COVID-19 "vaccines" are not "vaccines", pursuant to RCW 70.290.010 (10).

1036.    Unqualified statements Defendant Durkan made which she did not

know to be true were equivalent to making statements of that which she

knew to be false.

1037.    Defendant Durkan knew, or should have known, that the Pfizer

BioNTech 162b2 "biologic product" was not "safe".

1038.    Defendant Durkan knew, or should have known, that the Pfizer

BioNTech 162b2 "biologic product" is not the "best defense against the

highly contagious Delta variant."

1039.    On, or around, October 18, 2021, all City of Seattle employees were

required to be fully vaccinated, pursuant to the directives of Defendant

Durkan.

1040.    On, or around, October 26, 2021, Defendant Durkan, as acting Mayor

of Seattle, made the following statements to the public on video or

television:

1041.    Defendant Durkan stated, "Nothing is more important than getting

vaccinated"

1042.    Defendant Durkan stated, "It's [Covid-19 "vaccine"] our best defense

against Covid.  And we can't go back to normal unless we have more people

vaccinated."

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 194

1043.    Defendant Durkan stated, "If you're not vaccinated, you're so much more likely to get Covid, and if you get it, you will likely transmit it to the people closest to you."

1044.    Defendant Durkan knew, or should have known, that the Pfizer BioNTech 162b2 "biologic product" had not been proven to reduce the likelihood that someone injected with a Pfizer BioNTech 162b2 "biologic product" would "get Covid".

1045.    Defendant Durkan knew, or should have known, that there was no proof that an "unvaccinated" person who got Covid would "likely transmit it to people.

1046.    Defendant Durkan stated, "I want us to hit 100 percent."

1047.    Defendant Durkan stated, "We know the most vulnerable are our children."

1048.    Defendant Durkan knew, or should have known, that there was no proof that "the most vulnerable are our children" [to COVID-19].

1049.    In fact, children are, by far, the least at risk of getting sick with COVID-19.

1050.    On, or around, December 20, 2021, Defendant Durkan was quoted on the website of the City of Seattle stating, "Seattle – we know how to make it through the latest wave of the pandemic: get vaccinated and boosted, wear a mask, limit indoor gatherings, and get tested."

*The City of Seattle strongly encourages all eligible residents and visitors to be vaccinated and boosted against COVID-19. Vaccines have been proven to limit the spread of infections and reduce hospitalizations and deaths when breakthrough infections do occur.*

*Vaccines, boosters, and pediatric vaccines have all been authorized as safe and effective by the Food and Drug Administration and Centers for Disease Control & Prevention.*
*Vaccines are free, available, and recommended for everyone 5+*

1051.    Defendant Durkan knew, or should have known, that there was no proof that COVID-19 "vaccines" "limit the spread of infections and reduce hospitalizations and deaths when breakthrough infections do occur."

1052.    Seattle Public Schools, as of August 10, 2022, stated on their website:

*Seattle Public Schools is offering vaccine clinics for Pfizer COVID-19 vaccines for children 3 years and older, and for adults.*

*COVID-19 vaccines are free, safe, and effective. More than 80 percent of SPS students are fully vaccinated.*

1053.    Defendant Durkan has not provided proof that the Pfizer BioNTech 162b2 COVID-19 "vaccine" is "safe".

1054.    Defendant Durkan has not provided proof that the Pfizer BioNTech 162b2 COVID-19 "vaccine" is effective at reducing infection or transmission of SARS CoV-2.

1055.    Defendant Durkan has not provided proof that the Pfizer BioNTech 162b2 COVID-19 "vaccine" is FDA approved.

1056.    City of Seattle, while Defendant Durkan was acting as Mayor thereof, received CARES Act funding.  CARES Act funding allocated $131,510,475.00 to City of Seattle.

EXHIBIT P37: CARES Act funding.pdf - Google Drive

1057.    CARES Act funding required compliance with CDC Covid guidelines.

1058.    Defendant Durkan's statements, in whole or in part, were directly or indirectly involved with, or affected, interstate commerce, as businesses with Seattle were subjected to Defendant Durkan's false or misleading statements.

1059.    Defendant Durkan, by means of false or fraudulent pretenses, representation, or promises did transmit, or cause to be transmitted by wire, radio, or television false and misleading information while acting as Mayor of Seattle, for the purposes of executing such scheme.

> "*Common law fraud can be the basis for a claim of unfair or deceptive practices under the statute [cites omitted], and an intentional fraud can constitute a basis for the multiplication of damages.*"

> **McEvoy Travel Bureau, Inc. v. Norton Co.,** *408 Mass. 704, 714 (1990),* **PMP Assocs., Inc. v. Globe Newspaper Co.,** *366 Mass. 593, 596 (1975);* **Levings v. Forbes & Wallace, Inc.,** *8 Mass.App.Ct. 498, 504 (1979).*

> *Certain misrepresentations to a plaintiff are actionable under both common law fraud and G.L. c. 93A.*

> **Schwanbeck v. Federal-Mogul Corp.,** *412 Mass. 703, 704-705 (1992) citing* **Schwanbeck v. Federal-Mogul Corp.,** *31 Mass.App.Ct. 390, 411-412, 415-416 (1991).*

1060.    The scheme involving Defendant Durkan to obtain $131,510,475 for City of Seattle, while Defendant Durkan was acting Mayor, was in relation to, or involving benefit, in connection with a presidentially declared emergency for COVID-19.

1061.    Defendants had a legal or moral duty to forthrightly inform the public of the risk of serious injury or death posed by the Covid-19 EUA "vaccines", including the Pfizer BioNTech 162b2 EUA GTP.

> The burden for determining whether or not the government has resorted to a deception is on the moving party and this Court in each of the above cases set forth what that party must establish:
> We conclude that the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and the showing must be clear and convincing. (Footnote omitted)
> Prudden, supra, p. 1033.
>
> The Prudden court also stated that:
>
> Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading.
>
> *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977)

1062.    By July 1, 2021, or earlier, the VAERS data regarding Covid-19 "vaccines" required immediate action by defendants to stop unnecessary, and preventable, serious harms and deaths.

1063.     At all times relevant to the actions herein Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, in similar substance and form to Defendant Durkan's communications, did by means of false or fraudulent pretenses, representation, or promises did transmit, or cause to be transmitted by wire, internet, radio, or television, false and misleading information for the purposes of executing such scheme.

1064.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, the risk of serious harms and deaths.

1065.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that Ivermectin and Hydroxychloroquine had been used around the world safely and effectively to save lives.

1066.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that the EUA Pfizer BioNTech 162b2 GTP is not a "vaccine".

1067.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that the EUA Pfizer BioNTech 162b2 GTP is still in an ongoing clinical trial.

1068.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that the ongoing clinical trial for the EUA Pfizer BioNTech 162b2 GTP is designed to determine if it "reduces symptoms" of Covid-19.

1069.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that the EUA Pfizer BioNTech 162b2 GTP was not trialed to determine if it "reduced hospitalization", "serious illness", or "death".

1070.     Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, neglected to disclose, or actively suppressed, that the EUA Pfizer BioNTech 162b2 GTP was not trialed to determine if it damaged fertility in males or females.

1071.     Plaintiff has reason to believe, and does believe, such conduct by Defendants Gates, Fauci, Walensky, Hahn, Woodcock, Inslee, Shah, Worsham, Jones, Durkan, and Harrell, constituted a violation of 18 USC § 1343, a federal felony.

# V.     CAUSES OF ACTION

## COUNT ONE
## PETITION FOR DECLARATORY JUDGMENT
## Emergency Use Authorization medical device

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 200

1072.   Plaintiffs incorporate and reallege the allegations contained in the

preceding paragraphs of this Petition and Claim as if fully set forth herein.

1073.   **1st Federal Question:** Are Judges or Commissioners of King County

Superior Court and Seattle Municipal Court vested with the lawful

authority to require Plaintiff to wear an EUA medical device ("facemask") as

a condition of entrance to court rooms, or as a condition of accessing records

in person at the clerk's office?

1074.   King County Superior Court and Seattle Municipal Court must take

judicial notice of the Washington State Constitution and the U.S.

Constitution.

> **RCW 5.24.010 Judicial notice of Constitution and laws.**
> *Every court of this state shall take judicial notice of the Constitution, common law, civil law, and statutes of every state, territory and other jurisdiction of the United States.*

1075.   Plaintiff's right to life, liberty and property may not be abrogated or

infringed upon without Due Process of Law.

> **Wash. Const. Article 1 § 3 PERSONAL RIGHTS.** *No person shall be deprived of life, liberty, or property, without due process of law.*

1076.   Plaintiff's body is the very foundation of his "private affairs", as

without his body, Plaintiff cannot have any other "private affair".

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 201

*Wash. Const. Article 1 § 7 INVASION OF PRIVATE AFFAIRS OR HOME PROHIBITED.* *No person shall be disturbed in his private affairs, or his home invaded, without authority of law.*

1077.   The provisions of the Washington State Constitution are mandatory.

*Wash. Const. Article 1 § 29:  CONSTITUTION MANDATORY.*
*The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise*

1078.   King County Superior Court and Seattle Municipal Court have been permitting those wearing an EUA face mask to access the public courtrooms and clerk's office, while denying access to Plaintiff for not wearing an EUA face mask.

*U.S. Constitution 14th Amendment § 1*
*"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

1079.   The Legislature is the body empowered by the Constitution for the state of Washington to create law.

1080.   Neither the Governor of the Executive Branch, nor the judges of the Judicial Branch, may create law.

1081.    The Legislature may not delegate its legislative powers to other

entities, which is known as the Nondelegation Doctrine.

> *"Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."*
>
> **A.L.A. Schechter Poultry Corp. v. United States**, *295 U.S. 495 (1935),*

1082.    The Constitution for the state of Washington articulates the

jurisdiction of the Superior Courts, which reads in part:

> **Wash. Const. § 6 JURISDICTION OF SUPERIOR COURTS.**
> *They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days*

1083.    King County Superior Court judges take and subscribe an oath,

requiring them to support the state and federal Constitutions.

> **RCW 2.08.080 Oath of office.**
> *Every judge of a superior court shall, before entering upon the duties of his or her office, take and subscribe an oath that he or she will support the Constitution of the United States and the Constitution of the state of Washington, and will faithfully and impartially discharge the duties of judge to the best of his or her ability, which oath shall be filed in the office of the secretary of state.*

1084.    Courts of the Judicial Branch are delegated specific powers.

> **RCW 2.28.080 Powers of judges of supreme and superior courts.**

*The judges of the supreme and superior courts have power in any part of the state to take and certify— (1) The proof and acknowledgment of a conveyance of real property or any other written instrument authorized or required to be proved or acknowledged. (2) The acknowledgment of satisfaction of a judgment in any court. (3) An affidavit or deposition to be used in any court of justice or other tribunal of this state. (4) To exercise any other power and perform any other duty conferred or imposed upon them by statute.*

1085.    A King County Superior Court judge is delegated the authority to

compel obedience to his or her lawful order.

*RCW 2.28.060 Judicial officers—Powers.*
*Every judicial officer has power: (1) To preserve and enforce order in his or her immediate presence and in the proceedings before him or her, when he or she is engaged in the performance of a duty imposed upon him or her by law; (2) To compel obedience to his or her lawful orders as provided by law; (3) To compel the attendance of persons to testify in a proceeding pending before him or her, in the cases and manner provided by law; (4) To administer oaths to persons in a proceeding pending before him or her, and in all other cases where it may be necessary in the exercise of his or her powers and the performance of his or her duties.*

1086.    King County Superior Court may establish rules.

*RCW 2.08.230 Uniform rules to be established.*
*The judges of the superior courts shall, from time to time, establish uniform rules for the government of the superior courts.*

1087.    A Superior Court judge is delegated the power to sign orders in

probate matters, to issue restraining orders, and orders of continuance.

*RCW 2.08.190 Powers of judge in counties of his or her district.*
*Any judge of the superior court of the state of Washington shall have power, in any county within his or her district: (1) To sign all necessary orders and papers in probate matters pending in any other county in his or her district; (2) to issue restraining orders, and to sign the necessary orders of*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 204

*continuance in actions or proceedings pending in any other county in his or her district; (3) to decide and rule upon all motions, demurrers, issues of fact, or other matters that may have been submitted to him or her in any other county. All such rulings and decisions shall be in writing and shall be filed immediately with the clerk of the proper county:*

1088.    A Superior Court judge issuing an Order denying access to anyone over the age of three (3) not wearing an EUA medical device ("face mask") is not a judicial act.  It is an administrative act.

*RCW 2.28.050 Judge distinguished from court.*
*A judge may exercise out of court all the powers expressly conferred upon a judge as contradistinguished from a court and not otherwise.*

1089.    The powers of a Superior Court permit the court to enforce order in the court room proceedings, and in specific pursuit of that aim, to compel obedience.

*RCW 2.28.010 Powers of courts in conduct of judicial proceedings.*
*Every court of justice has power—(1) To preserve and enforce order in its immediate presence. (2) To enforce order in the proceedings before it, or before a person or body empowered to conduct a judicial investigation under its authority. (3) To provide for the orderly conduct of proceedings before it or its officers. (4) To compel obedience to its judgments, decrees, orders and process, and to the orders of a judge out of court, in an action, suit or proceeding pending therein. (5) To control, in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto. (6) To compel the attendance of persons to testify in an action, suit or proceeding therein, in the cases and manner provided by law. (7) To administer oaths in an action, suit or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers or the performance of its duties.*

1090.     The powers to compel obedience cannot be so broadly interpreted as to authorize a judge to require a member of the public to subject themselves to wearing an EUA medical device as a condition of access to a courtroom or clerk's office.

1091.     Defendants have not provided Plaintiff with factual evidence that a Superior or Municipal Court judge has the expertise, or authority, to determine Plaintiff to be a direct and imminent threat to public health.

1092.     The Constitution for the state of Washington protects Plaintiff's right to appear and defend in person.

> *Wash. Const. Article 1 § 22 RIGHTS OF THE ACCUSED*
> *"In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases:"*

1093.     While Article 1 § 22  does not explicitly mention civil trials, the Constitution for the state of Washington protects rights not specifically enumerated.

> *Wash. Const. Article 1 § 30 RIGHTS RESERVED.*
> *The enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people.*

1094.     The U.S. Constitution also protects rights not explicitly enumerated.

*U.S. Constitution Amendment IX*
*"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."*

1095.    Religious freedom is one of the cornerstones of our country's law.

*Wash. Const. Article 1 § 11 RELIGIOUS FREEDOM.*
*Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state.*

1096.    King County Superior Court Emergency Orders No. 19, 32 and 36, are derivative of CDC "guidance", by way of *Governor Inslee Proclamation 20-25.7,* July 24, 2020, which cited *Order of the Secretary of Health 20-03.1,* July 24, 2020.

1097.    Defendant Inslee's powers as Chief Executive Branch Officer do not include the authority to legislate law abrogating Plaintiff's rights.

*Wash. Const. Article 3 § 5 GENERAL DUTIES OF GOVERNOR.*
*The governor may require information in writing from the officers of the state upon any subject relating to the duties of their respective offices, and shall see that the laws are faithfully executed.*

*Wash. Const. Article 3 § 6 MESSAGES.*
*He shall communicate at every session by message to the legislature the condition of the affairs of the state, and recommend such measures as he shall deem expedient for their action.*

1098.    Defendant Inslee does not have the power to legislate laws.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 207

1099.     Defendant Inslee has the power to issue a Proclamation to convene the Legislature on extraordinary occasions.

> **Wash. Const. Article 3 § 7 EXTRA LEGISLATIVE SESSIONS.**
> *He may, on extraordinary occasions, convene the legislature by proclamation, in which shall be stated the purposes for which the legislature is convened.*

1100.     Defendant Inslee circumvented the Legislature by issuing "Covid-19" Proclamations that the majority of Washingtonians incorrectly believed were binding law.

1101.     Plaintiff has been personally told by a total of more than one hundred (100) SPD Officers, King County Sheriff Deputies, judges or commissioners that Governor Inslee's Covid-19 Proclamations are "the law".

*1102.*     The Washington Department of Health, an agency of the Executive Branch, specifically exempted people from wearing a mask,

> **Order of the Secretary of Health 20-03.1**
> **People Exempt from General Face Covering Requirement**
> *"People with a medical condition, mental health condition, developmental or cognitive condition, or disability that prevents wearing a face covering are exempt from the requirement to wear a face covering. This includes, but is not limited to, people with a medical condition for whom wearing a face covering could obstruct breathing".*

1103.     Being alive is a "condition for whom wearing a face covering could obstruct breathing", as all EUA face masks obstruct breathing.

1104.   Plaintiff has a right of Petition and Assemblage, protected by the Washington State Constitution and the U.S. Constitution.

> **Wash. Const. Article 1 § 4 RIGHT OF PETITION AN ASSEMBLAGE**
> *The right of petition and of the people peaceably to assemble for the common good shall never be abridged.*
>
> **U.S. Constitution Amendment I**
> *Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

1105.   *Washington State Supreme Court Order No. 25700-B-658 Fifth* revised and extended order regarding court operations did not grant any judge the unprecedented authority to deny Plaintiff access to courtrooms or the clerk's office.

EXHIBIT P28A:  WA.SUP.CRT-25700-B-658.pdf - Google Drive

1106.   Specifically, the Washington Supreme Court Order cited two cases: *Ishikawa v. Seattle Times, Co.*, and *State v. Bone Club*, both of which only addressed the question of whether members of the public should be allowed in the courtroom galleries under certain circumstances.

1107.   Nowhere in *Order No. 25700-B-658* was Plaintiff's right to access public court abrogated.

1108.   In April 2022, a federal court determined that the CDC "mask mandate" is arbitrary and capricious because the CDC failed to adequately explain its reasoning.

> "It also does not explain why all masks —homemade and medical-grade— are sufficient."
>
> "Without a contemporaneous explanation, the Court cannot conclude that the CDC "reasonably considered the relevant issues and reasonably explained the decision.""
>
> Because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," id., the Court declares unlawful and vacates the Mask Mandate.
>
> **Health Freedom Defense Fund, Inc. v. Biden,** F.Supp.3d (2022)

1109.   Defendants Fuseini, Anderson, Bliey, O'Donnel, Keenan, Holloway, Eagle, Moore, Bliey, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, and McClennen, promulgated their authority to require masks be worn by Plaintiff based upon judge Jim Rodger's Emergency Orders No. 32 and 36.

1110.   Defendant Rodgers issued Emergency Orders No. 32 and 36 based upon Governor Inslee's Proclamations, the Washington State Department of Health Order, the Washington State Supreme Court Order, and the Washington State Labor and Industries Guidance and Requirements, all derivative of CDC "guidance" and "guidelines".

1111.    Defendants Rogers, Fuseini, Anderson, Bliey, O'Donnel, Keenan, Holloway, Eagle, Moore, Bliey, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, and McClennen, have provided Plaintiff no factual evidence that CDC "guidance" or "guidelines" empowered Defendants to require Plaintiff to wear an EUA medical device as a condition of accessing courtrooms or the court clerk's office.

1112.    Defendants Rogers, Fuseini, Anderson, Bliey, O'Donnel, Keenan, Holloway, Eagle, Moore, Bliey, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, and McClennen, have provided no proof that an EUA medical device ("face mask") is "safe" or "effective" for Plaintiff to wear as a device to mitigate the infection or transmission of a virus.

1113.    The U.S. Constitution protects Plaintiff's right to equal protection under the law.

> *U.S. Constitution Amendment XIV § 1*
> *All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

1114.    Defendants Rogers, Fuseini, Anderson, Bliey, O'Donnel, Keenan, Holloway, Eagle, Moore, Bliey, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, and McClennen, violated Plaintiff's right to equal protection

by, under color of law, denying Plaintiff access for not wearing a "face mask", EUA medical device.

1115.     **2ND Federal Question:**  By what lawful authority are Seattle Municipal Court judges delegated the power to issue "failure to appear" bench warrants by denying Plaintiff the right to appear in person, in violation of Washington Constitution Article I $ 22?

1116.     **3rd Federal Question:**     Does $60,000 constitute "excessive bail" violative of the rights of Plaintiff in the circumstances retold herein occurring on August 29, 2022 in Seattle Municipal Court?

1117.     Therefore, Plaintiff is entitled to injunctive relief against Defendants, to enjoin the Defendants from enforcing unconstitutional "emergency orders", involving EUA medical device "face masks" against Plaintiff, and all others similarly situated.

**WHEREFORE,** Plaintiff requests declaratory judgment against Defendants named herein the First Cause of Action.


## COUNT TWO
## EMERGENCY PETITION FOR TEMPORARY INJUNCTION

1118.     Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1119.    Only if Plaintiff or A.R.W. will face irreparable harm should a federal court intervene in proceedings that are already underway in state court.

1120.    Defendants have violated Plaintiffs' rights under 42 U.S.C. § 1983.

> *"A party does not need to seek a state remedy before seeking a federal remedy under 42 USC 1983, since these remedies are supplemental."*

> **Monroe v Pape** *365 U.S. 167 (1961)* §

1121.    Federal courts will not enjoin pending state criminal prosecutions except under extraordinary circumstances where the danger of irreparable loss is both great and immediate in that there is a threat to the plaintiff's federally protected rights that cannot be eliminated by his defense against a single prosecution.

> *"Ex parte Young, 209 U. S. 123, and following cases have established the doctrine that, when absolutely necessary for protection of constitutional rights, courts of the United States have power to enjoin state officers from instituting criminal actions."*

> *"We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun."*

> *"But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss of or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury."*

> **Younger v. Harris,** *401 U.S. 37 (1971)*

1122.    Plaintiffs have both already suffered almost a year of irreparable harm and continue to do so with every passing day while separated by a Temporary Restraining Order issued in King County Case No. 21-5-00680-6 SEA.

1123.    No amount of money can buy back nearly a year of stolen time for Plaintiffs, or to restore memories that never were never made.

1124.    Alienating and isolating A.R.W. from his loving father is a callous cruelty that shock's the conscience.

1125.    On August 23, 2022, in an ex parte restraining order hearing initiated by Defendants Cliber and Owen, Defendant Moore issued an order preventing any communication between Plaintiff and A.R.W. whatsoever, including third-party communications.

> *"[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."*
>
> **United States v. Playboy Entertainment Group, Inc.**, *529 U. S. 803, 816 (2000)*

1126.    Defendant Moore asserted that Plaintiff informing A.R.W. of the extreme risk of harm evidenced in the VAERS data constituted "abuse" by Plaintiff of his son.

1127.    It shocks the conscience, that Defendant Moore, who had never previously spoken with Plaintiff, and has never seen or spoken with A.R.W.,

could have the audacity to assert that Plaintiff was abusing A.R.W. by

warning him of the dangers posed to A.R.W. by Pfizer BioNTech 162b2 EUA

GTP injections, particularly if Defendants Owen and Lerman were to coerce

A.R.W. into further "booster" injections.

> *"We hold, therefore, again applying the rule that statutes in derogation of the common law are to be strictly construed,"*

> **State of Delaware v. George F. Brown.** 195 A.2d 379 (1963)

1128.    The violation of Plaintiff's right to communicate with, care for, and

protect A.R.W. by Defendants Moore, Cliber and Owen shock the conscience.

> *"An unconstitutional act is not a law; it confers no rights; it imposes no duties it affords o protection; it creates no office; it is in legal contemplation as inoperative as though it had never been passed."*

> **Norton v. Shelby County**, 118 US 425 (1886)

1129.    Plaintiff has spent nearly a year exhausting every remedy at law

known to him as a layperson.

1130.    Since August 23, 2022, Plaintiff faces immediate arrest and

imprisonment if he were to try to speak with A.R.W., or even ask Plaintiff's

daughter to convey a message to A.R.W.

1131.    Plaintiff faces immediate arrest and imprisonment if he attempts to

communicate with A.R.W. to safeguard his son's life.

*"The claim and exercise of a constitutional right cannot be converted into a crime."*

***Miller v. U.S.,*** 230 F 2d 486, 489 (1956)

1132.    There is an instant and ongoing threat of direct and imminent emotional and mental harm to A.R.W. by Defendants Owen, Lerman, Cliber and Keenan isolating and alienating him from Plaintiff.

1133.    The threat of direct and imminent harm to A.R.W. through past, current, or future medical experimentation upon him, perpetrated directly or indirectly by Defendants, is substantiated by official government data from the United States' VAERS reporting system, the "Yellow Card" vaccine adverse reaction reporting system of the United Kingdom, and Europe's "EudraVigilance", (EVDAS) vaccine adverse reaction reporting system.

1134.    To date, Defendants have refused to acknowledge to Plaintiffs that the Pfizer BioNTech 162b2 GTP is "experimental".

1135.     To date, Defendants have refused to acknowledge to Plaintiffs that the Pfizer BioNTech 162b2 GTP is in an ongoing Phase 3 clinical trial.

1136.    To date, Defendants have refused to acknowledge to Plaintiffs that the Pfizer BioNTech 162b2 GTP has not been proven to be "safe".

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 216

1137.  To date, Defendants have refused to acknowledge to Plaintiffs that the Pfizer BioNTech 162b2 GTP has not been proven to be "effective" at preventing transmission or infection of "SARS CoV-2"

1138.  To date, Defendants have refused to acknowledge to Plaintiffs that the Pfizer BioNTech 162b2 GTP was not, and is not currently, a necessary medical treatment for A.R.W., a healthy boy.

1139.  To date, Defendants have refused to acknowledge to Plaintiffs that Plaintiffs cannot be subjected to the administration of an EUA Pfizer BioNTech 162b2 GTP or an EUA medical device, ("face mask") without the option to accept or refuse such administration of an EUA product, pursuant to United States Code.

> **21 USC § 360bbb-3(e)(1)(A)(II)(iii)**
> **Authorization for medical products for use in emergencies**
> (e)Conditions of authorization
>   (1)Unapproved product
>     (A)Required conditions
>       With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:
>       (II)
>       of the significant known and potential benefits and risks of the emergency use of the product, and of the extent to which such benefits and risks are unknown; and
>       (III)
>       of the alternatives to the product that are available, and of their benefits and risks.
>       (III)

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 217

*of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.*

1140.    Defendants have refused to acknowledge Plaintiffs' right to be free from coerced medical experimentation.

1141.    Defendants have refused to acknowledge the legal requirements, responsibility to protect, and liability for violating Plaintiffs' right to be from coerced medical experimentation.

1142.    As such, Plaintiff has immediate, ongoing, grave concerns for the safety and well-being of A.R.W. so long as A.R.W. is isolated from Plaintiff and restrained, under color of law, by Defendants Owen and Lerman, with the active assistance, or the negligent disregard, by the other named Defendants.

1143.    Defendants have transgressed the limits on state action.

1144.    "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs,…it transgresses the substantive limits on state action set by the …Due Process Clause." *Daniels v. Williams*, 474 U. S. 327, 331 (1986).

1145.    Plaintiff's right to petition Defendants for redress of his grievances has been repeatedly denied or obstructed.

1146.   Plaintiff was denied the right to speak before Defendant Holloway on October 25, 2021.

1147.   Plaintiff was denied Findings of Fact and Conclusions of Law substantiating Defendant Holloway's ruling on October 25, 2021.

1148.   Plaintiff's Motion to Dismiss for lack of subject matter jurisdiction was denied by Defendant Keenan without Defendant Cliber providing any evidence supporting the court's jurisdiction.

> *"If any tribunal finds absence of proof of jurisdiction over a person and subject matter, the case must be dismissed."*
>
> ***Lousiville R.R. v Motley*** 211 US 149, 29 S. Ct. 42 (1908)

1149.   Plaintiff was denied Findings of Fact and Conclusions of Law substantiating Defendant Keenan's Dismissal in March 2022.

1150.   Plaintiff's petition for Show Cause Orders to require Defendants Owen and Cliber appear before Defendant Keenan to answer Plaintiff's sworn criminal allegations of perjury and false statements was denied without any hearing before Defendant Keenan.

1151.   Plaintiff's petition for Writ of Habeas Corpus was denied without any hearing by Judge Steve Rosen in July 2022.

1152.   King County Case No. 21-5-00680-6 SEA was fraudulently initiated under to RCW 26.26A.435 by Defendants Owen and Cliber.

1153.    Defendants Owen and Cliber have committed repeated perjury and made numerous false statements in the aforementioned case with impunity.

1154.    There can be no "equal protection under the law" for Plaintiffs if Defendants Cliber and Owen are allowed to repeatedly lie with impunity in a court of law.

1155.    Defendant Holloway's assertion that Plaintiff poses a "Credible Threat" is void for vagueness, and the term of art is not defined in the Revised Code of Washington.

> *"The State must assume the burden of securing a permissible narrow construction of the statute in a noncriminal proceeding…"*
>
> **Dombrowski v. Pfister**, *380 U. S. 479,*

1156.    Void for vagueness was addressed in *City of Seattle v. Rice. "*The touchstone of the "fair notice" principle is that the statute or ordinance must be sufficiently specific that "men of reasonable understanding are not required to guess at the meaning of the enactment." *Seattle v. Drew*, 70 Wash.2d 405, 408, 423 P.2d 522, 524, 25 A.L.R.3d 827 (1967). In *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), the court stated:

> *"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the*

1

2

3

> *settled rules of law; and a statute which either forbids or requires the doing*
> *of an act in terms so vague that men of common intelligence must*
> *necessarily guess at its meaning and differ as to its application violates the*
> *first essential of due process of law.""*

4

1157.   Plaintiffs have already suffered more than eleven months of

5

irreparable harm.  All the gold in the world cannot buy back eleven precious

6

months that Plaintiff and A.R.W. have been prevented from being with each

7

8

other.

9

1158.   The U.S. Supreme Court has determined that parents have a

10

fundamental right to direct the care, custody, and control of their children.

11

1159.   The U.S. Supreme Court also has  determined that the government

12

13

shall not interfere with this right unless and until a parent is proven unfit.

14

1160.   At no time was Plaintiff declared or proven to be unfit.

15

1161.   There must be at minimum "clear and convincing evidence" to prove

16

Plaintiff unfit to father A.R.W.

17

18

19

> *"Congress requires "evidence beyond a reasonable doubt" for termination of*
> *Indian parental rights, reasoning that "the removal of a child from the*
> *parents is a penalty as great [as], if not greater, than a criminal*
> *penalty. . . ." H.R.Rep. No. 95-1386, p. 22 (1978).*

20

21

22

23

24

> *A majority of the States have concluded that a "clear and convincing*
> *evidence" standard of proof strikes a fair balance between the rights of the*
> *natural parents and the State's legitimate concerns. We hold that such a*
> *standard adequately conveys to the factfinder the level of subjective*
> *certainty about his factual conclusions necessary to satisfy due process. We*
> *further hold that determination of the precise burden equal to or greater*
> *than that standard."*

25

> ***Santosky v. Kramer***, *455 U.S. 769  (1982)*

26

27

28

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 221

1162.     Nearly one hundred years ago, the U.S. Supreme Court acknowledged that:

> *"the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."*

> **Pierce v. Society of Sisters**, *268 U.S. 510 (1925).*

1163.     Thereafter, the U.S. Supreme Court affirmed in *Stanley v. Illinois,* 405 U.S. 645 (1972), the fundamental rights of parents "in the companionship, care, custody, and management" of their children. *Id. at 651.*

1164.     That same year, in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), the Court declared that "[t]his primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." Id. at 232.

1165.     More recently, U.S. Supreme Court declared in *Washington v. Glucksberg,* 521 U.S. 702 (1997), that the Constitution, and specifically the Due Process Clause of the Fourteenth Amendment, protects the fundamental right of parents to direct the care, upbringing, and education of their children. Id. at 720.

1166.    In *Troxel v. Granville,* 530 U.S. 57 (2000), the U.S. Supreme Court again unequivocally affirmed the fundamental right of parents to direct the care, custody, and control of their children.

1167.    In *Troxel*, the U.S. Supreme Court stated that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of the parent to make the best decisions concerning the rearing of that parent's child." 530 U.S. at 68-69. Therefore, a failure to consider the fitness of the parent represents "an unconstitutional infringement on [that parent's] fundamental right to make decisions concerning the care, custody, and control" of her children. 530 U.S. at 72. In fact, so inviolable and sacred is this right that the U.S. Supreme Court declared a presumption that "a fit parent will act in the best interest of his or her child." Id. at 69.

*1168.*    In 2005, quoting *Yoder* and *Troxel* in response to a public school district's subjection of children to inappropriate and sexually explicit content, the United States House of Representatives affirmed that "the fundamental right of parents to direct the education of their children is firmly grounded in the Nation's Constitution and traditions." *House Resolution 547 (November 16, 2005).*

1169.     Yet today, State courts of last resort throughout the United States are split, adjudicating children as "creatures of the State" by limiting or terminating parents' rights through using a subjective "best interest of the child" test or by evaluating some level of "harm" to the child.

1170.     In fact, in the case below, the North Carolina Supreme Court determined that, in a dispute between two natural parents, "the trial court must apply the 'best interest of the child' standard to determine custody and visitation questions." *Routten*, 843 S.E.2d at 159. Such a test blatantly violates the fundamental rights of natural parents, not only in custody and termination cases, but also in separation agreements where extra protection may be necessary due to inequality among spouses.

1171.     In that regard, scholars recognize that the "best interest of the child" standard provides "no standard at all because of its vagueness" and uncertainty. See, e.g., *Janet Weinstein, And Never the Twain Shall Meet: The Best Interest of Children and the Adversary System*, 52 U. Miami L. Rev. 79, 108 (1997).

1172.     As Notre Dame Law School Professor Eugene Volokh recognized, courts applying "the best interest of the child" test in parent custody cases violate sacred, fundamental, constitutional rights of those parents. See Volokh, "*Parent-Child Speech and Child Custody Speech Restrictions*," 81 N.Y.U. L. Rev. 631 (2006). Professor Volokh also recognized that "harm"

analyses have significant limits, foremost being their highly subjective nature and risk of the fact-finder's personal hostilities entering into the determination. Volokh, supra at 700

1173.     Essentially, both tests violate the due process rights of parents guaranteed by the Fourteenth Amendment to the Constitution if the fitness of the parents is disregarded. Yet today, some State courts still apply these inappropriate tests without first making the required constitutional finding of a parent's unfitness. As a result, these courts continue 7 to violate the fundamental right of parents to direct the care, custody, and control of their children

1174.     In his concurring opinion in *Troxel,* Justice Thomas summarized an important aspect of the U.S. Supreme Court's precedential opinion in *Pierce v. Society of Sisters,* 268 U.S. 510 (1925), writing that "parents have a fundamental constitutional right to rear their children, including the right to determine who shall educate and socialize them." *Troxel* at 80 (Thomas, J., concurring).

1175.     This fundamental right is just as critical and sacred today as when Justice Thomas wrote those words twenty years ago and when our nation's highest Court cemented that truth in 1925. Justice Thomas proceeded to the next step in the analysis by concluding: "I would apply strict scrutiny to infringements of fundamental rights." Id.

1176.    *Goldberg v. Kelly, 397 U.S. 254,* affirmed the essential requirement of

Due Process Rights, even in an administrative hearing regarding

government financial assistance.  While money is essential for the support

of oneself and one's child, there is no more sacred and inviolate right than of

a father, or mother, to be with and care for their son or daughter.

> 6
> *The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,'*
> *Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)"*

> 12
> *''The fundamental requisite of due process of law is the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The hearing must be 'at a meaningful time and in a meaningful manner.' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases.15"*

> 15
> *"Moreover, written submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. Particularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision."*
> 16
> *"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. E.g., ICC v. Louisville & N.R. Co., 227 U.S. 88, 93—94,*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 226

*33 S.Ct. 185, 187—188, 57 L.Ed. 431 (1913); Willner v. Committee on Character & Fitness, 373 U.S. 96, 103—104, 83 S.Ct. 1175, 1180—1181, 10 L.Ed.2d 224 (1963). What we said in Greene v. McElroy, 360 U.S. 474, 496—497, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959), is particularly pertinent here:*

*17*
*'Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment * * *. This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, * * * but also in all types of cases where administrative * * * actions were under scrutiny.'"*

*20*
*"Finally, the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. Ohio Bell Tel. Co. v. PUC, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); United States v. Abilene & S.R. Co., 265 U.S. 274, 288—289, 44 S.Ct. 565, 569—570, 68 L.Ed. 1016 (1924). To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on, cf. Wichita R. & Light Co. v. PUC, 260 U.S. 48, 57—59, 43 S.Ct. 51, 54—55, 67 L.Ed. 124 (1922),"*

1177.   Plaintiff has been unable to get any Defendants to address his grievances regarding the fact the Temporary Parenting Plan issued is, by definition of RCW 26.09.004 (4), only for parents who have been married or in a legal domestic partnership.

1178.   Plaintiff has been unable to get any Defendants to address his grievance that the Temporary Restraining Orders issued under RCW 26.50.050 and RCW 26.50.060 is only for a decree or proceeding for "dissolution of marriage or domestic partnership, legal separation, or declaration of invalidity".

1179.   However, that responsibility is not solely Plaintiffs.

> *"A court has an "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."*
>
> ***Hertz Corp v. Friend,*** *559 U.S. 77, 94 (2010)*

1180.   King County Superior Court Case No. 21-5-00680-6 SEA was initiated in September 2021 with a trial date of August 8, 2022, which has since been continued, without the consent of Plaintiff, until October 2022.

1181.   King County Family Court does not recognize Plaintiff's right to a trial by jury, violating Plaintiff's right to a trial by jury.

> ***Wash. Const. Article I § 21 TRIAL BY JURY.***
> *The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.*

1182.   It shocks the conscience that in a brief hearing in Family Court, absent the requisite elements of Due Process, Plaintiff could be denied his rights as the father of A.R.W. for a year, with no certain end in sight.

1183.   There are other equally concerning reasons for an emergency injunction, to prevent further unlawful and dangerous medical experimentation upon A.R.W., and to ensure that Plaintiff can immediately provide A.R.W. medical care and testing to ensure his son's physical well-being.

1184.   Defendants Holloway, Eagle and Keenan were informed by Plaintiff that Defendant Owen subjected A.R.W. to unnecessary and potentially life-threatening medical experimentation without informed consent of either Plaintiff or Defendant Owen.

1185.   Defendants Holloway, Eagle and Keenan were duly informed by Plaintiff that the CDC's VAERS data shows that the Pfizer EUA GTP is the most lethal "vaccine" in the history of the VAERS reporting system, killing more people in only eighteen months than all other vaccines combined over thirty years.

> "Because 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends,' Ala. Ass'n of Realtors, 141 S. Ct. at 2490, the Court declares unlawful and vacates the Mask Mandate."
>
> ***Health Freedom Defense Fund, Inc. v. Biden***, F.Supp.3d (2022)

1186.     Plaintiff's trust in the informed judgments of Defendants Holloway, Eagle and Keenan has been broken by their collective denial of facts and law regarding informed consent, medical experimentation, and what products have, or have not, received FDA Approval as safe and effective.

> *Customary International Law Ban on Non-Consensual Human Experimentation Customary international law applies directly to the United States and its agencies and instrumentalities.  It is well established that customary international law includes a norm that prohibits non-consensual human medical experimentation.*
>
> **Abdullahi v. Pfizer,** *562 F.3d 163, 174-188 (2nd Cir. 2009).*

1187.     In August 1947, an International Military Tribunal ("IMT") sitting in Nuremberg, Germany convicted 15 Nazi doctors for crimes against humanity for conducting medical experiments without the consent of their subjects.  "Among the nonconsensual experiments that the tribunal cited as a basis for their convictions were the testing of drugs for immunization against malaria, epidemic jaundice, typhus, smallpox and cholera." Id. at 178 (*quoting* **United States v. Brandt,** *2 Trials of War Criminals Before the Nuremberg Military Tribunals Under Control Council Law No. 10, 181-182 (1949)* (emphasis added). The Nuremberg Code was created as part of the IMT's judgment, and it helps to define the contours of the customary international law norm.  Its first Principle is that "[t]he voluntary consent of

the human subject is absolutely essential." Id. at 179 (emphasis added).

The Code elaborates on the principle as follows:

> *This means that the person involved should have legal capacity to give consent; should be so situated as to be able to exercise free power of choice, without the intervention of any element of force, fraud, deceit, duress, over-reaching, or other ulterior form of constraint or coercion; and should have sufficient knowledge and comprehension of the elements of the subject matter involved as to enable him to make an understanding and enlightened decision.*

1188.    The Nuremberg Code contains other principles relevant here, for example that "[t]he experiment should be such as to yield fruitful results for the good of society, unprocurable by other methods or means of study, and not random or unnecessary" (Principle 2), and "[t]he experiment should be [ ] designed and based on the results of animal experimentation" (Principle 3), and "[t]he degree of risk to be taken should never exceed that determined by the humanitarian importance of the problem" (Principle 6).

1189.    The Nuremberg Code has been adopted and amplified by numerous international declarations and agreements, including the World Medical Association's Declaration of Helsinki, the guidelines authored by the Council for International Organizations of Medical Services, Art. 7 of the International Covenant on Civil and Political Rights, the International Covenant on Human Rights, the Universal Declaration on Bioethics and Human Rights, and others.

> *"The history of the norm in United States law demonstrates it has been firmly embedded for more than 45 years and [ ] its validity has never been seriously questioned by any court." Id. at 182.*

1190.     Federal Regulations relating to the protection and informed consent of human subjects further implement aspects of this norm and are binding legal obligations.  In 1979, the National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research issued the Belmont Report, which addressed the issue of informed consent in human experimentation. The Report identified respect for self-determination by "autonomous persons" as the first of three "basic ethical principles" which "demands that subjects enter into the research voluntarily and with adequate information."  Ultimately, the principles of the Belmont Report, which itself was guided by the Nuremberg Code and the Declaration of Helsinki, were adopted by the DHHS and FDA in their regulations requiring the informed consent of human subjects in medical research.

1191.     45 CFR § 46.401 et seq., applies to "all research involving children as subjects, conducted or supported by [DHHS]."  § 46.405 states:

> *HHS will conduct or fund research in which the IRB finds that more than minimal risk to children is presented by an intervention or procedure that holds out the prospect of direct benefit for the individual subject, or by a monitoring procedure that is likely to contribute to the subject's wellbeing, only if the IRB finds that:*

> *The risk is justified by the anticipated benefit to the subjects;*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 232

*The relation of the anticipated benefit to the risk is at least as favorable to the subjects as that presented by available alternative approaches; and*

*Adequate provisions are made for soliciting the assent of the children and permission of their parents or guardians, as set forth in § 46.408.*

1192.    The Code of Federal Regulations codifies the Nuremberg Code  in much greater detail.

*45 CFR § 46.408 - Requirements for permission by parents or guardians and for assent by children.*
*(b) In addition to the determinations required under other applicable sections of this subpart, the IRB shall determine, in accordance with and to the extent that consent is required by § 46.116 of subpart A, that adequate provisions are made for soliciting the permission of each child's parents or guardian. Where parental permission is to be obtained, the IRB may find that the permission of one parent is sufficient for research to be conducted under § 46.404 or § 46.405. Where research is covered by §§ 46.406 and 46.407 and permission is to be obtained from parents, both parents must give their permission unless one parent is deceased, unknown, incompetent, or not reasonably available, or when only one parent has legal responsibility for the care and custody of the child.*

1193.    The policies, proclamations, or orders, issued, enabled, promoted, acted under, or enforced, by Defendants violated Plaintiffs' rights of association, of stewardship in medical decisions for A.R.W., and Plaintiffs' right to privately communicate and interact, as father and son,

1194.    Defendants did so by petitioning for, obtaining, enabling, allowing, ordering, or enforcing the conditions of Temporary Parenting Plans and

Restraining Orders issued by King County Family Court, in Cases No. 21-2-11149-8, 21-5-00680-6 SEA.

1195.     Such temporary plans and orders violated the expressed legislative intent, which states:

> *RCW 26.09.002 Policy*
> *In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. Residential time and financial support are equally important components of parenting arrangements. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care. Further, the best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm.*

1196.     By the actions and inaction of Defendants Worsham, Holloway, Keenan Eagle, O'Donnel, Moore, Durkan, Harrell, Diaz, Christensen, Ellis, Bruce, Boyd, Ladd, Willenberg, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Hermsen, Samuelson, Murphy, and Cooper, they have reckless endangered A.R.W., allowing, enabling, or assisting Defendants Owen and Lerman to pose an ongoing direct and imminent threat to the safety and well-being of A.R.W.

**WHEREFORE,** Plaintiffs are entitled to injunctive relief against all Defendants, to enjoin Defendants named herein this Second Cause of Action from enabling or enforcing unconstitutional Restraining Orders, Parenting Plans, mask mandates, and experimental "vaccine" injections.

## THIRD CAUSE OF ACTION
### Violation of the First and Fourteenth Amendments of the U.S. Constitution
#### 42 U.S.C. §§ 1983; 1985(2)(3); 1986
Right of Association, Parental Rights, Right to Religious and Secular Beliefs, Freedom of Expression, Right to Bodily Autonomy Right to Petition for Redress of Grievances

1197.    Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs of this complaint as though fully stated herein.

1198.    Defendants did not and do not have an adequate reason for infringing upon Plaintiffs' liberty.  When fundamental rights are at issue, the government will satisfy substantive due process only if it can demonstrate that the policy, proclamation, or order, is necessary to achieve a compelling government interest.  The policy, proclamation, or order must be narrowly tailored and by the least restrictive means available.

1199.    The Fourteenth Amendment has been made applicable to states and their governments through the First Amendment to the United States Constitution.

1200.    While it may be argued by Defendants that for purposes of a Section

1983 complaint, neither a state nor its officials acting in their official

capacities constitute a "person."   *Will v. Michigan*, 491 U.S. 58, 64 (1989),

Plaintiffs are not asserting that Defendants were "officials acting in their

official capacities."

> *"When a state officer acts under a state law in a manner violate o the*
> *Federal Constitution, he comes into conflict with the superior authority of*
> *that Constitution, and hi is in that case stripped of his official or*
> *representative character and is subjected in his person to the consequences*
> *of his individual conduct.  The State has no power to impart to him any*
> *immunity from responsibility to the supreme authority of the United*
> *States."*
>
> *Scheuer v. Rhodes*, 416 U.S. 22, 94 S.Ct. 1683, 1687 (1974)

1201.    Defendants employed by city, county, state or federal governments, or

agencies thereof, stand accused of acting "outside of scope" of their delegated

authority.  As such those actions were *ultra vires,* and their title of office

does not shield them from liability for their actions that have knowingly and

willfully violated the rights of Plaintiffs, causing irreparable harm that

shocks the conscience.

1202.    Defendant Rogers' Emergency Orders No. 32 and 36, allowed,

enabled, acted under, or enforced, by Defendants working in King County

Superior Court are allegedly non-discriminatory because they apply to

everyone.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM
FOR DAMAGES - 236

1203.   The inference that violating everyone's right equally absolves

Defendant Rogers and his conspirators of liability for violating Plaintiff's

right is a logical fallacy.

> "State officers may be held personally liable for damages based upon actions they take in their official capacity."

> Hafer v. Melo, 502 U.S. 21 (1991)

1204.   Defendant Gregory's orders requiring the wearing of a face mask by

everyone entering Seattle Municipal Courthouse are allegedly non-

discriminatory because they apply to everyone.

1205.   The inference that violating everyone's right equally absolves

Defendants Gregory, Crawford-Willis, Lynch, and McDowall, of liability for

violating Plaintiff's rights protected by the 1st Amendment of the U.S.

Constitution is a logical fallacy.

1206.    Defendant arbiters of the courts may argue that judicial immunity is

not overcome by allegations of bad faith or malice.  Mireles v. Waco, 502

U.S. 9, 12 (1991).  Plaintiff is not merely claiming bad faith or malice by

Defendants, but also that Defendants acted outside their official authority.

1207.   While Plaintiffs have not yet named City of Seattle as a Defendant,

Plaintiff has herein addressed multiple policies or customs that were

promulgated, enforced, permitted, enabled, or acted under, at all relevant

times to the claims herein.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 237

1208.    In the event City of Seattle is henceforth named a Defendant in the instant actions, Plaintiff is cognizant that to prevail on a § 1983 claim against a municipality such as City of Seattle, Plaintiff "must identify a municipal policy or custom that caused the plaintiff's injury." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011).

1209.    RCW 4.96.020(4) directs that "[n]o action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof."  Failure to strictly comply with statutory filing requirements leads to dismissal of the action.  *Reyes v. City of Renton*, 121 Wn. App. 498, 502 (2004).

1210.    While Plaintiff intends to also file a Notice of Claim with City of Seattle, the instant causes of action are not yet against any "governmental entity".

1211.    In *Felder v. Casey*, the court held that Wisconsin's "notice of claim statute undermines § 1983's unique remedy against state against governmental bodies and their officials by conditioning the right of recovers so as to minimize governmental liability."

> *Because the Wisconsin notice of claim statute conflicts in both its purpose and effects with § 1983's remedial objectives, and because its enforcement in state court actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted*

*in state or federal court, it is preempted pursuant to the Supremacy Clause when the § 1983 action is brought in a state court. Pp. 487 U. S. 138-153.*

*Unlike the lack of statutes of limitations in the federal civil rights laws -- which has led to borrowing state law limitations periods for personal injury claims -- the absence of any federal notice of claim provision is not a deficiency requiring the importation of such a state law provision into the federal civil rights scheme. Notice of claim rules are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose that Congress intended federal courts to apply such rules, which significantly inhibit the ability to bring federal actions. With regard to federal preemption (as opposed to adoption) of state law, application of the notice requirement burdens the exercise of the federal right by forcing civil rights victims who seek redress in state courts to comply with a requirement that is absent from civil rights litigation in federal courts.*

*Felder v. Casey, 487 U.S. 131 (1988)*

1212.    At all relevant times herein, Plaintiffs had an inalienable and sacred

right of association as father and son, the rights as father and son that

A.R.W. be cared for by Plaintiff through his father's informed decisions, the

right to practice their religion and exercise their beliefs, both spiritual and

secular, as they saw fit, the right to speak freely without fear of retaliation,

the right to bodily autonomy, the right to petition for redress of grievances,

the right to access public courtrooms and public schools without being

subjected to coercion, segregation or discrimination, and the right under the

due process and equal protection clauses of the state and federal

constitutions to not be deprived of their constitutionally protected interest

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 239

in their property [Bodies]. *U.S. Const. Amends. 1, 4, 5, 9, 14; Washington. Const. Art. 1, §§ 1, 3, 7, 11, 22, & 29.*

A. **Right of association and access to public buildings**.

1213.     All the preceding paragraphs are hereby incorporated and realleged as if fully set forth herein.

1214.     "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Tashjian v. Republican Party*, 479 U.S. 208, 214 (1986.

1215.     "[F]reedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the State may lawfully protect." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 639 (1943).

1216.     "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976).

1217.   Defendants depriving Plaintiff of entrance to King County Superior Court courtrooms and clerk's office shocks the conscience in its violation of Plaintiff's rights protected by the first amendment.

1218.   Plaintiff has not been sick since 2016, and even that was food poisoning, which is not contagious.  However, even if Plaintiff were sick with the flu, or "Covid-19", the U.S. Supreme Court has held that such a "handicapped individual" cannot be discriminated against by exclusion from public buildings.

1219.   An otherwise qualified handicapped individual, solely by reason of their handicap, shall not be excluded from participation in any program receiving federal financial assistance solely by reason of their handicap.

1220.   Tuberculosis has a higher mortality rate than Covid-19 does.

1221.   It was affirmed in _School Bd. of Nassau County v. Arline, 480 U.S. 273 (1987)_ that "A person afflicted with the contagious disease of tuberculosis may be a "handicapped individual.""

1222.   It is presumptive for public health officials, politicians, judges, and law enforcement officers to impose their dictates upon Plaintiffs.  As the last two- and one-half years have shown, the common sense and discernment of Plaintiff in the care of himself, and A.R.W., towers above the degreed and credentialed conduct by Defendants, conduct which will shock the consciences of humanity for generations to come.

1223.     "A highly paternalistic approach is generally suspect." _Eu v. San Francisco County Democratic Cent. Comm._, 489 U.S. 214, 223 (1989).

## B.  Parental rights of association, stewardship and care.

1224.     All the preceding paragraphs are hereby incorporated and realleged as if fully set forth herein.

1225.     "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs,…it transgresses the substantive limits on state action set by the …Due Process Clause." _Daniels v. Williams_, 474 U. S. 327, 331 (1986).

## C.  Right to spiritual and secular beliefs.

1226.     All the preceding paragraphs are hereby incorporated and realleged as if fully set forth herein.

1227.     "[F]reedoms of speech and of press, of assembly, and of worship may not be infringed on such slender grounds. They are susceptible of restriction only to prevent grave and immediate danger to interests which the State may lawfully protect." _West Virginia State Bd. of Educ. v. Barnette,_ 319 U.S. 624, 639 (1943).

1228.    Defendants have violated every principle of Plaintiff's Creed in

callous disregard of truth, fairness, compassion, empathy and the protection

of A.R.W.

1229.    Defendants have provided no proof substantiating their claims that

their conduct was objectively reasonable in an effort to prevent grave and

immediate danger to interests the State may lawfully protect as a

justification for violating Plaintiffs' rights.


**D. Right to freedom of expression.**

1230.    All the preceding paragraphs are hereby incorporated and realleged

as if fully set forth herein.

1231.    The First Amendment to the United States Constitution states:

"Congress shall make no law … abridging the freedom of speech …." This

fundamental right to free speech applies to the states through the

Fourteenth Amendment's Due Process Clause. *Aguilar v. Avis Rent A Car*

*System, Inc.*, 21 Cal.4th 121, 133–34 (1999).

1232.    "The freedom of speech and of the press, which are secured by the

First Amendment against abridgment by the United States, are among the

fundamental personal rights and liberties which are secured to all persons

by the Fourteenth Amendment against abridgment by a State." *Thornhill v.*

*Alabama*, 310 U.S. 88, 95 (1940).

1233.    The Ordinance's requirement that all elected officials, committee members, members of commissions and, eventually, members of the public who attend city meetings or conduct city business in city buildings, must be vaccinated for COVID-19, effectively prohibits individuals who have chosen not to be vaccinated for COVID-19 from running for elected office, serving as representatives of all of the citizens of the City of San Diego (including citizens who are vaccinated or unvaccinated for COVID-19) and/or seeking redress from their government and thus violates an individual's right to free speech.

1234.    "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right." *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964).

1235.    There is no right more basic in our democracy than the right to participate in electing our political leaders. Citizens can exercise that right in a variety of ways: They can run for office themselves, vote, urge others to vote for a particular candidate, volunteer to work on a campaign, and contribute to a candidate's campaign. *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014).

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 244

### E. Right to petition for redress of grievances.

1236.  All the preceding paragraphs are hereby incorporated and realleged as if fully set forth herein.

1237.  Plaintiff has been denied the right to associate by appearing in court.

1238.  Plaintiff has been denied the right to associate with a jury of his peers.

1239.  Plaintiff has been denied the right to face his accuser in person.

1240.  *Washington State Supreme Court Order No. 25700-B-658 Fifth revised and extended order regarding court operations* was the seminal court order that promulgated the theory that public courts had the authority to deny private citizens the right to appear in person in court.

1241.  Defendant Rogers, in Emergency Order Nos. 32 and 36, derives his alleged authority from *Washington State Supreme Court Order No. 25700-B-658*.

1242.  *Washington State Supreme Court Order No. 25700-B-658 Fifth revised and extended order regarding court operations* cited two cases: *Ishikawa v. Seattle Times, Co.*, and *State v. Bone Club*, both of which only addressed the question of whether members of the public should be allowed in the courtroom galleries under certain circumstances.

1243.    Nowhere in *Order No. 25700-B-658* was Plaintiff's right to appear in public courtrooms and offices of the clerk, protected by Article I § 22 of the Washington state Constitution, denied.

1244.    Plaintiff has been denied the right to question his accuser under oath.

1245.    Plaintiff has been denied the right to have his Creed, comprised of his spiritual and secular beliefs, respected and protected.

1246.    Plaintiff has been denied the right to ask questions of every public servant, and to be answered with forthright honesty and guileless transparency.

### Wash. Const. Article I § 4 Right Of Petition And Assemblage.

*"The right of petition and of the people peaceably to assemble for the common good shall never be abridged."*

1247.    Plaintiff has been denied the right to petition for redress of his grievances, which requires his exercising the preceding rights.

1248.    "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964).

1249.    Defendants employed in King County Superior Court who deprived Plaintiff of entrance to King County Superior Court courtrooms and clerk's

office shocks the conscience in its violation of Plaintiff's rights protected by the first amendment.

1250.     The policies, proclamations, and orders, which were issued, enabled, promoted, acted under, or enforced, by Defendants who were state actors or individuals jointly engaged with state actors, have caused and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs. Plaintiffs have had no adequate remedy at law to prevent the continuing violation of their constitutional and statutory liberties.

1251.     Plaintiff is entitled to a Declaration that the Ordinance and Plan violates Plaintiff's members' rights to freedom of association and expression, along with their right to petition the government for redress of grievances.

1252.     Plaintiff is entitled to preliminary and permanent injunctive relief requiring Defendants to allow Plaintiff to freely exercise his freedom of association, to exercise and enjoy his parental rights as A.R.W.'s father, to freely exercise his spiritual and secular beliefs, and to freely exercise his right to petition the government for redress of grievances.

1253.     At all times relevant herein, Defendants Gates, Fauci, Walensky, Hahn, Birx, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Constantine, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC John Doe #4, KC John Doe #5, KC Jane Doe #1, KC

Jane Doe #2, Jones, Narver, Montgomery, Booker, and Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Ladd, Willenberg, Bauer, Williams, Alden, Wallace, SPD Doe #2, SPD Doe #3, Hogg, Weiss, O'Dell,  A. Clark, Chu, Beseler, Cliber, Franklin-Bihary, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, were state actors, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. §§ 1983; 1985(2)(3); 1986.

> "*Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions.*"
>
> ***Dennis v. Sparks.*** 449 U.S. 24, 27-28 (1980).

1254.　Furthermore, Defendants employed by the United States Government, State of Washington, King County, Seattle Public Schools, and Seattle Police Department, had a duty and obligation to protect the rights and privileges of the citizens they serve, including Plaintiffs, pursuant to the oaths of office each Defendant took to uphold and defend the United States Constitution and the Washington Constitution.

1255.　Acting under the color of state law of "policies", "memorandums", "proclamations", "guidelines", "orders" or "mandates" ("policies and orders" herein), Defendants acted, or neglected to act, to deny Plaintiffs their rights, privileges, or immunities secured by the United States Constitution, or by Federal and State law, and guaranteed by the First, Fourth, Fifth, Seventh,

Ninth, and Fourteenth Amendments to the Constitution of the United States. To wit, Defendants effected compliance to their policies and orders based on Defendants' misrepresentations. Defendants should have known, or should have reasonably believed, that their orders issued under the color of state or federal law would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

*Soto v. Flores.* 103 F.3d 1056, 1061 (1st Cir. 1997);
*McNamara v. Honeyman.* 405 Mass. 43, 52 (1989).

1256.   As a result of Defendants' willful, concerted, unlawful, or malicious conduct which shocks the conscience, Plaintiffs were deprived of their rights to equal protection of all the laws and to due process of law, of their right to govern their property [bodies] as they saw fit, their right to freely assemble, their right to practice their religion as they saw fit, their right to be secure in their persons and papers, their right to access public school and public court accommodations, all in violation of the First, Fourth, Fifth, Seventh, Ninth and Fourteenth Amendments of the Constitution of the United States, the Washington Constitution, and 42 U.S.C. § 1983; 1985(2)(3); 1986.

1257.   Defendants are public servants, or individuals in joint action with public servants, and failed to exercise objective reasonableness, and in so

doing, violated the Washington Constitution, the U.S. Constitution, and clearly established state and federal laws, namely title 18 U.S.C. §§ 241 and 242, RCW 9A.80.010, and the Nuremberg Code.

1258.    As a direct result of Defendants' actions which shock the conscience, Plaintiffs were harmed and have suffered the loss of confidence and trust in, and feelings of absolute betrayal by, individuals employed by the State of Washington, King County, Seattle Public Schools, CITY OF SEATTLE, and Seattle Police Department, as well as individuals jointly engaged with state actors, causing shock, and emotional scarring, all compensable as emotional distress, and other damages to Plaintiffs.

1259.    The rule is well settled, however, that if the natural consequence of the wrongful act, done willfully or with gross negligence, is mental suffering to the Plaintiffs, then that element may be considered in assessing damages.

> *Stiles, 233 Mass. at 185, cites omitted. "Good faith and absence of malice in the perpetration of such a palpable wrong to the plaintiff constitute no defense to the defendants against the almost inevitable effect of their acts."*
>
> *__Griswold v. Connecticut,__ 381 U.S. 479 (1965)*

**WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $500,000,000.00 as a deterrent to all psychopathic billionaire technocrats, public officials, or other private individuals,

who might consider engaging in similar conduct in the future, and further

demands judgment against Defendants, jointly and severally, for additional

damages in an amount to be determined by the jury, plus the costs of this action,

including attorney's fees, and such other relief deemed to be just, fair, and

appropriate.

> "*Punitive damages are recoverable in sec. 1983 suit where defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to plaintiff's federally protected rights.*" <u>Smith v. Wade</u>, 461 U.S. 30, 50-51 ((1983); <u>Clark v. Taylor</u>, 710 F.2d 4, 14 (1st Cir. 1983). <u>Miga</u>, *supra* at 355.

# FOURTH CAUSE OF ACTION
## Violation of the Fourth and Fourteenth Amendments
## of the United States Constitution
### 42 U.S.C. §1983

1260.     Plaintiffs repeat, reallege, and incorporate by reference the preceding

paragraphs with the same force and effect as if fully set forth herein.

> "*the right to be left alone---the most comprehensive of rights and the right most valued by civilized men.  To protect that right, every unjustifiable intrusion by the Government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the fourth Amendment.*"
>
> <u>Olmstead v. United States</u>, *277 U.S. 438, 48 S. Ct. 564 (1928)*

1261.     At all times relevant herein, all Defendants were state actors, or

individuals jointly engaged with state actors, acting under color of law, and

their conduct was subject to 42 U.S.C. §§ 1983

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 251

"*Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of Section 1983 actions.*"

*Dennis v. Sparks.* 449 U.S. 24, 27-28 (1980).

1262.    The Fourteenth Amendment has been made applicable to states and their governments through the Fourth Amendment to the United States Constitution.

1263.    42 U.S.C., § 1983 expressly authorizes lawsuits to enforce federal constitutional rights.

1264.    Defendants employed by the U.S. Government, State of Washington, City of Seattle, Seattle Public Schools, and King County, had a duty and obligation to protect the rights and privileges of the citizens they serve pursuant to the oaths of office each of them took to uphold and defend the United States Constitution and the Washington Constitution.

1265.    Acting under the color of law of policies, proclamations, or orders, Defendants acted to deny Plaintiffs their rights, guaranteed by the Fourth Amendment to the Constitution of the United States. To wit, they effected compliance to their orders based on their misrepresentations. Defendants should have known, or should have reasonably believed, that the policies, proclamations, or orders, issued under the color of law would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

1266.    As a result of Defendants' concerted, unlawful, and negligent or malicious conduct, Plaintiffs were deprived of their right to be secure in their persons and papers in violation of the Fourth Amendment of the U.S. Constitution, the Washington Constitution, and 42 U.S.C. § 1983.

1267.    Defendants employed as public servants, and those jointly engaged in action with public servants, failed to exercise objective reasonableness, and in so doing, violated the constitutions and clearly established state and federal laws, namely title 18 U.S.C. §§ 241 and 242, RCW 9A.80.010.

1268.    As a direct result of Defendant's actions, Plaintiffs were harmed and have suffered the loss of confidence in and feelings of betrayal by individuals employed State of Washington, Seattle Public Schools, City of Seattle, Seattle Police Department, and King County, causing shock, and emotional scarring, all compensable as emotional distress, and other damages to Plaintiffs.

1269.    The rule is well settled, however, that if the natural consequence of the wrongful act, done willfully or with gross negligence, is mental suffering to the Plaintiffs, then that element may be considered in assessing damages.

> *Stiles, 233 Mass. at 185, cites omitted. "Good faith and absence of malice in the perpetration of such a palpable wrong to the plaintiff constitute no defense to the defendants against the almost inevitable effect of their acts."*
>
> *Griswold v. Connecticut, 381 U.S. 479 (1965)*

1270.    A "seizure" of a person under the Fourth Amendment occurs when a
police officer has in some way restrained the liberty of a person by means of
physical force or a show of authority.

1271.    The court in *Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 85
L.Ed.2d 1 (1985)* (seizure by fatal gunshot) held that "whenever an officer
restrains the freedom of a person to walk away, he has seized that person."

1272.    See also *Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865,
104 L.Ed.2d 443 (1989)* (seizure by means of physical force or show of
authority that in some way restrains the liberty of a citizen, e.g., during an
investigatory stop);

1273.    *United States v. Faulkner, 450 F.3d 466, 469 (9th Cir. 2006)* ("… a
person has been 'seized' within the meaning of the Fourth Amendment only
if, in view of all the circumstances surrounding the incident, a reasonable
person would have believed that he was not free to leave"). A seizure may be
effected where a person is not free to terminate an encounter with a police
officer.

## A.  Right to refuse unwanted medical treatment.

1274.    The Fourth Amendment of the U.S. Constitution also protects a
person's right to refuse unwanted medical treatment. This right is deeply
rooted in our nation's history, tradition, and practice, so as to acquire
special protection under the Fourteenth Amendment.

1275.    All individuals have a protected liberty interest in their right to

bodily integrity. _Rochin v. California_, 342 U.S. 165 (1952). The government

can only invade this interest if it satisfies the strict scrutiny standard.

1276.    The policies, proclamations, or orders, requiring the wearing of EUA

face masks, or injection of a Pfizer BioNTech 162b2 EUA GTP, as a

condition of entry to public court rooms, jail, or public schools, infringes

upon Plaintiffs' right to bodily integrity.

1277.    The Pfizer BioNTech 162b2 EUA GTP does not prevent infection or

transmission.  Thus, the Pfizer BioNTech 162b2 EUA GTP does not confer a

sufficient community benefit sufficient to justify the government's interest

in requiring that Plaintiffs provide proof of "vaccination" for Covid-19.

1278.    The policies, proclamations, and orders issued, enabled, promoted,

acted under, or enforced, by Defendants do not provide the least restrictive

means, nor is it narrowly tailored, to achieve the government's alleged

compelling interest of preventing the spread of Covid-19 throughout the

community.

1279.    Plaintiffs have a Constitutional right to refuse unwanted medical

treatment. _Cruzan v. Director Mo. Dept. of Health_, 497 U.S. 261, 278–79

(1990) "The forcible injection of medication into a nonconsenting person's

body represents a substantial interference with that person's liberty."

1280.     Receiving a Pfizer BioNTech 162b2 EUA GTP injection is a personal decision, especially when the product is still in clinical trials, and many individuals have already been infected with and have recovered from Covid-19 and therefore have durable and robust immunity.

1281.     While the Supreme Court in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), upheld the state's right to require its citizens to submit to smallpox vaccination, it did so under limited circumstances. In *Jacobson*, the Supreme Court held that the state could properly levy a monetary fine against individuals who did not submit to the state's smallpox vaccination requirement. Importantly, however, individuals who did not submit to the smallpox vaccination requirement did not lose any fundamental rights, including access to serve or petition their government. Unvaccinated individuals were not barred from entering public courtrooms, jail, or public schools, or conducting business in government offices, as they are under the policies, proclamations, and orders issued, enabled, promoted, or enforced, by Defendants.

1282.     The policies, proclamations, and orders issued, enabled, acted under, or enforced, by Defendants require or coerce Plaintiffs to be "fully vaccinated" for Covid-19.

1283.     This requirement violates Plaintiffs' fundamental right to refuse unwanted medical treatment. The government cannot demonstrate that it

has used the least restrictive means to achieve its alleged compelling interest in preventing the spread of COVID-19 throughout the community.

1284.    This is a guaranteed right and can only be paused or disregarded under limited circumstances which the government cannot establish.

1285.    "…the legal standard applicable to purported substantive due process rights that---like the right to consent to medical treatment for oneself and one's minor children---may be "objectively, deeply rooted in this Nation's history and tradition."" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003), quoting *Washington v. Glucksberg*, U.S. 702, 117 S.Ct. 2258, 2268, 128L.Ed.2d 772 (1997).

1286.    "It is not implausible to think that the rights invoked here — the right to refuse a medical exam and the parent's right to control the upbringing, including the medical care, of a child — fall within this sphere of protected liberty." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003).

1287.    Defendants Owen and Lerman did not, and do not, have more right to control the upbringing and medical care of A.R.W. than does Plaintiff.  In fact, the conduct of Defendants Owen and Lerman, enabled, allowed, aided, or abetted by all other Defendants, has shown a grossly negligent disregard for the physical, emotional and mental well-being of A.R.W. that shocks the conscience of every lucid and impartial observer.

1288.    The policies, proclamations, and orders issued, enabled, promoted, acted under, or enforced, by Defendants infringe upon Plaintiffs' fundamental liberties, which are protected by the Fourteenth Amendment's Due Process Clause and "extend to certain personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs," such as the decision whether to receive a vaccination. (*Obergefell v. Hodges* (2015) 576 U.S. 644, 645.) The right of an individual to make such choices are so fundamental that the state must accord them its respect. (Id.)

**B. Right to privacy.**

1289.    Bodily autonomy is a critical component of the constitutional right to privacy. *Griswold v. Connecticut*, 381 U.S. 479 (1965). The right to privacy is "no less important than any other right carefully and particularly reserved to the people." Id. at 485.

1290.    Plaintiffs have a constitutionally protected right to make decisions concerning their bodies under the U.S. Constitution.

1291.    Plaintiff has the right to make decisions for himself and his son whether to be injected with a Pfizer BioNTech 162b2 EUA GTP, or to wear an EUA face mask.  Plaintiff also has the right to decide, for himself and his son, to not disclose their personal medical history (i.e., whether they have

been "fully vaccinated" for Covid-19, or what type of disability Plaintiff or his son may have) if Plaintiff so chooses.

1292.  As stated in *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (10th Cir. 2003), "the children's interests advanced under the rubric of substantive due process are more precisely addressed under the Fourth Amendment. The Supreme Court has explained:

> "*Because we have always been reluctant to expand the concept of substantive due process, . . . we [have] held . . . that where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.*""

1293.  The right to bodily autonomy may be held as a specific element of the right to privacy, according to *Dubbs v. Head Start, Inc.*, "the physical examinations challenged here were searches for purposes of the Fourth Amendment, and the privacy interests of the children can fully be vindicated under that "explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)"

1294.  The court continued in *Dubbs v. Head Start, Inc.*, ""While the parents have standing to assert a Fourth Amendment claim on their children's

behalf, they can assert no independent Fourth Amendment claim of their

own…" *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997)."

1295.    Despite these rights, Defendants have coerced or forced individuals

who wish to enter a public courtroom, jail, or school to provide proof that

they have been "fully vaccinated" for Covid-19, or wear an EUA facemask,

as a condition of entrance into public courtrooms and schools.  In doing so,

Defendants have violated Plaintiffs' rights to privacy.

1296.    Plaintiffs' right to privacy was also systematically and repeatedly

violated under threat, duress, or coercion.  Since September 3, 2021, father

and son have only been able to communicate under the condition that they

are being audio and video recorded, while being denied access to those

recordings.

1297.    In person visitations, witnessed by a professional supervisor inside

the AtIndaba facility, had multiple cameras surveilling Plaintiffs at all

times.

1298.    Zoom video calls on Tuesdays and Thursdays were only permitted if

Plaintiff submitted to Defendant Owen's condition that she record Plaintiffs

every shared moment.

1299.    Defendants cannot demonstrate that the policies, proclamations, or

orders, issued, enabled, promoted, acted under, or enforced, by Defendants

were narrowly tailored in an effort to preserve an individual's right to

privacy, nor has it used the least restrictive means to achieve the government's alleged compelling interest of preventing the spread of Covid-19 throughout the community.

1300. The policies, proclamations, or orders, issued, enabled, promoted, acted under, or enforced, by Defendants violated Plaintiffs' right to privately communicate and interact, as father and son, by petitioning for, obtaining, enabling, allowing, ordering, or enforcing the conditions of Temporary Parenting Plans, of Restraining Orders, of access to public courtroom, of access to public schools, and of access to King County Jail, which have grievously violated Plaintiffs' rights to privacy without substantive due process.

1301. Plaintiffs are entitled to a Declaration that the policies, proclamations, and orders issued, enabled, promoted, or enforced, by Defendants violated Plaintiffs' substantive due process rights to bodily integrity.

1302. Plaintiffs are entitled to a Declaration that the policies, proclamations, and orders issued, enabled, promoted, or enforced, by Defendants violated Plaintiffs' substantive due process rights to refuse unwanted medical treatment.

1303. Plaintiffs are entitled to a Declaration that the policies, proclamations, and orders issued, enabled, promoted, or enforced, by

Defendants violated Plaintiff's members' substantive due process rights to privacy.

1304.    Plaintiffs are entitled to preliminary and permanent injunctive relief requiring Defendants to cease from taking any further action to implement the policies, proclamations, and orders issued, enabled, promoted, or enforced, by Defendants and consequently violate Plaintiff's members' rights.

**WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $500,000,000.00 as a deterrent to all public officials engaging in similar conduct in the future, and further demands judgment against all Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## FIFTH CAUSE OF ACTION
### Violation of the Fifth and Fourteenth Amendments
### Of the United States Constitution
42 U.S.C. §1983

1305.    Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1306.    At all times relevant herein, the Defendants Durkan, Diaz, Ladd, Willenberg, Williams, Wallace, Alden, Holloway, Keenan, McMenamy, Coffin, Clark, McClennen, Bliey, Fuseini, Anderson, Narver, Montgomery, Booker, Cliber, Owen, Lerman, and Hermsen were state actors, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. §§ 1982, 1983, 1985, and 1986.

1307.    Acting under the color of law of policies, proclamations or orders, Defendants acted to deny Plaintiffs their rights, guaranteed by the Fifth Amendment to the Constitution of the United States. To wit, they effected compliance to their policies, proclamations, or orders, based on their misrepresentations. Defendants should have known, or should have reasonably believed, that the policies, proclamations, or orders, issued under the color of law would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

1308.    As a result of the concerted, unlawful, negligent, or malicious, actions by Defendants under color of law of policies, proclamations, or orders, created, approved, enabled, implemented, or acted under, Plaintiffs were deprived of the right to not be denied, without due process of law, the right to freely access public school and public court, the sacred right to associate as father and son, the right to communicate privately as father and son, the right not to be deprived of approximately $1500 per month as a condition of

Plaintiffs associating with each other four hours each week at a supervision facility, and the right not to not be subject to arrest without warrant or probable cause.

1309.    Defendants acted in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, the Washington Constitution, and 42 U.S.C. § 1983.


**WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $100,000,000.00 and further demands judgment against all Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.


## SIXTH CAUSE OF ACTION
### Violation of the Seventh and Fourteenth Amendments of the United States Constitution
#### 42 U.S.C. §1983


1310.    Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 264

1311.     The right to a Trial by Jury in all civil proceedings is protected by the 7th Amendment to the United States Constitution

1312.     The right to a Trial by Jury, and to appear in person to face one's accuser, is protected by the Washington Constitution Article1, § 22.

1313.     At all times relevant herein, Defendants Inslee, Shah, Constantine, Worsham, Satterberg, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, McMenamy, Coffin, I. Clark, McClennen, Bliey, Fuseini, Anderson, Cliber and Owen were state actors, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. §§ 1983, 1985, 1986.

1314.     Furthermore, Defendants named herein this Sixth Cause of Action employed by King County, had a duty and obligation to protect the rights and privileges of the citizens they serve pursuant to the oaths of office each of them took to uphold and defend the United States Constitution and the Washington Constitution.

1315.     Acting under the color of state law of policies or orders, Defendants named herein this Sixth Cause of Action, worked to deny Plaintiff his right, guaranteed by the Seventh Amendment to the Constitution of the United States. To wit, they effected compliance to their rules, proclamations, orders, or statutes regarding King County Family Court, based on their

misrepresentations. The Defendants named herein this Sixth Cause of Action should have known, or should have reasonably believed, that the policies, proclamations, orders, or statutes regarding Family Court, issued or enforced under the color of state law, would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

1316.   Defendants named herein this Sixth Cause of Action were public servants, or individuals jointly engaged with state actors, who failed to exercise objective reasonableness, and in so doing, violated the constitution and clearly established state and federal laws, namely title 18 U.S.C. §§ 241, 242, or RCW 9A.80.010.

1317.   As a direct result of the actions, or failure to act, of Defendants Inslee, Shah, Constantine, Worsham, Satterberg, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, McMenamy, Coffin, Clark, McClennen, Bliey, Fuseini, Anderson, Cliber, and Owen, Plaintiffs were irreparably harmed.

1318.   Plaintiff is entitled to a Declaration that the creation, approval, enablement, implementation, or enforcement, of policies, rules, mandates, orders, codes, or statutes regarding Family Court, by these Defendants denying Plaintiff the right to Trial by Jury in Family Court Case No. 21-5-00680-6 SEA, violates Plaintiff's right to a Trial by Jury.

1319.     Plaintiff is entitled to preliminary and permanent injunctive relief requiring these Defendant to allow Plaintiff to freely exercise its freedom of association and right to petition the government for redress of grievances.

**WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against Defendants named herein this Sixth Cause of Action, jointly and severally, for actual, general, special, punitive damages in the amount of $100,000,000.00 and further demands judgment against these Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## SEVENTH CAUSE OF ACTION
### Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution
### 42 .S.C. §1983

1320.     Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1321.     At all times relevant herein, Defendants Gates, Fauci, Walensky, Hahn, Birx, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson,

Bliey, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC Doe #4, KC Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Ladd, Willenberg, Bauer, SPD Doe #1, Williams, SPD Doe #2, SPD Doe #3, Hogg, Weiss, Alden, Wallace, A. Clark, Odell, Chu, Beseler, Cliber, Franklin-Bihary, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, were state actors, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. §§ 1982, 1983, 1985, and 1986.

1322.    Defendants named herein this Seventh Cause of Action failed to exercise objective reasonableness, and in so doing, violated the constitution and clearly established state and federal laws, namely title 18 U.S.C. §§ 241, 242, 1343, RCW 9A.80.010, or the Nuremberg Code.

1323.    Acting under the color of state law of policies or orders, Defendants named herein this Seventh Cause of Action knowingly and willfully acted, or neglected to act, to deny Plaintiffs their rights, privileges, or immunities secured by the United States Constitution, or by Federal and State law, and guaranteed by Fourteenth Amendment to the Constitution of the United States. To wit, they effected compliance to their orders based on their misrepresentations.

1324.    Defendants named herein this Seventh Cause of Action should have known, or should have reasonably believed, that the policies, rules, mandates, or orders, issued under the color of state law would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

1325.    Under the Fourteenth Amendment of the U.S. Constitution, "no person shall be denied the equal protection of the laws." If a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end. *Romer v. Evans*, 517 U.S. 620, 631 (1996)

1326.    "A bare … desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *United States Dep't of Agric. v. Moreno,* 413 U.S. 528, 534 (1973)

1327.    "It is not within our constitutional tradition to enact laws of this sort. Central both to the idea of the rule of law and to our own Constitution's guarantee of equal protection is the principle that government and each of its parts remain open on impartial terms to all who seek its assistance." *Romer v. Evans*, 517 U.S. 620, 633 (1996)

1328.    The policies, orders, and proclamations, created, approved, enabled, implemented, or acted under, treat people who have received a  COVID-19 "vaccine", or wear an EUA medical device "face mask", favorably by permitting entrance to public courtrooms and schools, while excluding

people who are not "vaccinated" for COVID-19, refuse to wear and EUA medical device "face mask", or who have recovered from COVID-19, from entering such buildings.

1329.     The policies, orders, and proclamations, were created, approved, enabled, implemented, or acted under, to achieve the alleged government interest in preventing the spread of COVID-19 through the community.

1330.     However, people who are "vaccinated" for COVID-19 can and do become infected with and spread COVID-19. In fact, people who are "vaccinated" for COVID-19 are more likely to become infected with and spread COVID-19 than people who have recovered from COVID-19. Moreover, people who are vaccinated for COVID-19 become infected with and spread COVID-19 at a rate that is equal to, or at least similar to those who are not vaccinated for COVID-19.

1331.     Of even greater concern is that data from around the world has revealed that the more COVID-19 "vaccine" shots a person has received, the greater their morality rate.

1332.     Thus, the COVID-19 policies, orders, and proclamations, that were created, approved, enabled, implemented, or acted under, are not rationally related to serving an alleged legitimate government interest of preventing the community spread of COVID-19.

1333.    The COVID-19 policies, orders, and proclamations, on their face and as applied, have caused, are causing and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs and others.  Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional and statutory liberties.

1334.    Plaintiffs are entitled to a Declaration that COVID-19 policies, orders, and proclamations violate Plaintiffs' rights to freedom of association, religion, expression, along with their right to petition the government for redress of grievances.

1335.    Plaintiffs are entitled to preliminary and permanent injunctive relief requiring Defendant to allow Plaintiff to freely exercise its freedom of association and right to petition the government for redress of grievances.

*WHEREFORE,* Plaintiffs demand judgment for the violation of their civil rights against all the Defendants named herein this Seventh Cause of Action, jointly and severally, for actual, general, special, punitive damages in the amount of $250,000,000.00 and further demands judgment against these Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 271

# EIGHTH CAUSE OF ACTION
## Violation of the Procedural Due Process Clause of the Fourteenth Amendment of the United States Constitution
### 42 U.S.C. §1983

1336.    Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1337.    At all times relevant herein, Defendants Gates, Fauci, Walensky, Hahn, Birx, Inslee, Shah, Constantine, Satterberg, O'Brien, Rogers, O'Donnel, Rosen, Holloway, Keenan, Eagle, Moore, Fuseini, Anderson, Bliey, Worsham, Johanknecht, Cole-Tindall, McMenamy, Coffin, I. Clark, McClennen, KC Doe #4, KC Doe #5, KC Jane Doe #1, KC Jane Doe #2, Jones, Narver, Montgomery, Booker, Bliey, Durkan, Harrell, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Ladd, Willenberg, Bauer, SPD Doe #1, Williams, SPD Doe #2, SPD Doe #3, Hogg, Weiss, Alden, Wallace, A. Clark, Odell, Chu, Beseler, Cliber, Franklin-Bihary, Owen, Lerman, Hermsen, Samuelson, Murphy, and Cooper, were state actors, or individuals jointly engaged with state actors, acting under color of law, and their conduct was subject to 42 U.S.C. §§ 1983.

1338.    Defendants named herein this Eighth Cause of Action failed to exercise objective reasonableness, and in so doing, violated the constitution and clearly established state and federal laws, namely title 18 U.S.C. §§

241, 242, 1343, or RCW 9A.80.010, and in so doing caused Plaintiffs irreparable harm.

1339.    Acting under the color of state law of policies or orders, Defendants named herein this Eighth Cause of Action acted, or neglected to act, to deny Plaintiffs their rights, privileges, or immunities secured by the United States Constitution, or by Federal and State law, and guaranteed by Fourteenth Amendment to the Constitution of the United States. To wit, they effected compliance to their orders based on their misrepresentations.

1340.    Defendant named herein this Eighth Cause of Action should have known, or should have reasonably believed, that the creating, approval, enabling, or implementation, of policies, rules, mandates, or orders, under the color of state law, would violate the constitutionally protected rights of Plaintiffs and others similarly situated.

1341.    The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution guarantees more than fair process, and the "liberty" it protects includes more than the absence of physical restraint. _Washington v. Glucksberg_, 521 U.S. 702, 719 (1997). The actions of Defendants named herein this Eighth Cause of Action have denied Plaintiffs' life and liberty without adequate safeguards such as notice and hearing.

1342.    The creation, approval, enablement, implementation, or enforcement of policies, rules, mandates, or orders, by Defendants named herein this

Eighth Cause of Action to exclude unmasked or unvaccinated individuals from public schools and courtrooms, violated Plaintiffs' constitutionally protected rights and was not done under color of law. Multiple protected rights are at issue.

1343.    Defendants named herein this Eighth Cause of Action did not and do not have an adequate reason for infringing upon Plaintiffs' liberty. When fundamental rights are at issue, the government will satisfy substantive due process only if it can demonstrate that the policies, rules, mandates, or orders, are necessary to achieve a compelling government interest. The policies, rules, mandates, or orders must be narrowly tailored and by the least restrictive means available.

1344.    Public servant Defendants have affirmatively exercised power restraining Plaintiffs' liberties in ways that not only shock the conscience, but render Plaintiff unable to safeguard A.R.W., and render A.R.W. imprisoned in a house of prostitution with two women who, by injecting A.R.W. with Pfizer BioNTech 162b2 EUA GTPs, pose a direct and imminent threat to the safety and well-being of A.R.W.

1345.    In so doing, public servant Defendants have transgressed the substantive limits on state action.

1346.    "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at

the same time fails to provide for his basic human needs…it transgresses

the substantive limits on state action set by the …Due Process Clause."

*Daniels v. Williams*, 474 U. S. 327, 331 (1986).

1347.    Plaintiffs' liberty interest in bodily integrity is protected by

procedural due process through the Fourteenth Amendment. *Rochin v.

California* 342 U.S. 165 (1952).

1348.    Plaintiffs' right to refuse unwanted medical treatment is also

protected by procedural due process through the Fourteenth Amendment.

*Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278–79 (1990).

1349.    "While the "shocks the conscience" standard applies to tortious

conduct challenged under the Fourteenth Amendment, *County of

Sacramento v. Lewis*,523 U.S. 833, 848-51, 118 S.Ct. 1708, 140 L.Ed.2d

1043 (1998), it does not exhaust the category of protections under the

Supreme Court's substantive due process jurisprudence, or eliminate more

categorical protection for "fundamental rights" as defined by the tradition

and experience of the nation." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

1203 (10th Cir. 2003).

1350.

1351.    Plaintiffs' rights to freedom of speech, freedom of association, and

freedom of petition are protected by procedural due process through the

Fourteenth Amendment.

1352.    Defendants named herein this Eighth Cause of Action have deprived

Plaintiffs of the right to bodily integrity, privacy rights, the right to refuse

medical treatment, and the right to freedom of speech, association, and

petition for redress of grievances. All these deprivations have occurred or

will occur without any due process of law.

1353.    Plaintiff seeks a Declaration from this Court that Defendants named

herein this Eighth Cause of Action have violated the procedural due process

clause of the U.S. Constitution by the creation, approval, enablement,

implementation, or enforcement, of the policies, rules, mandates, or orders,

regarding Pfizer BioNTech 162b2 EUA GTPs, or EUA face masks, and in so

doing would violate the constitutionally protected rights of Plaintiffs and

others similarly situated.

1354.    Plaintiffs are entitled to a preliminary and permanent injunctive

relief staying the creation, approval, enablement, implementation, and

enforcement, of the policies, rules, mandates, and orders, regarding Pfizer

BioNTech 162b2 EUA GTPs, or EUA face masks.


*WHEREFORE,* Plaintiffs demand judgment for the violation of their civil

rights against the Defendants named herein this Eighth Cause of Action, jointly

and severally, for actual, general, special, punitive damages in the amount of

$250,000,000.00 and further demands judgment against these Defendants, jointly

and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## NINTH CAUSE OF ACTION
### Violation of Property Rights
#### 42 U.S.C. § 1982

1355.     Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1356.     At all relevant times herein, Plaintiff had the right of ownership of his 2011 Toyota FJ Cruiser.

*U.S. Code § 1982  Property rights of citizens*

*All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.*

1357.     At all relevant times herein, there existed a policy of the Seattle Police Department, or CITY OF SEATTLE, to only acknowledge the property rights of the registered owner of an automobile, and Defendants Durkan, Holmes, Davison and Diaz, were responsible for such policy.

1358.     Under such policy of the CITY OF SEATTLE, or Seattle Police Department, Plaintiff was denied assistance by SPD, or any other person employed by CITY OF SEATTLE, in the recovery of his FJ Cruiser from the home of Defendants Owen and Lerman.

1359.     At all relevant times herein, there existed a policy of the King County Sheriff Office to only acknowledge the property rights of the registered owner of an automobile.

1360.     At all relevant times herein, there existed a policy of the King County Sheriff Office to assert that SPD had exclusive jurisdiction for crimes with Seattle city limits, when in fact the King County Sheriff Office had concurrent jurisdiction with SPD within Seattle city limits.

1361.     At all relevant times herein, such policies of CITY OF SEATTLE, or the Seattle Police Department, were known to Defendants Durkan, Holmes, Davison, Diaz, Christensen, Bruce, Ellis, Ladd, Willenberg, Bauer, SPD Doe #1, Beseler, Hermsen, Owen, Lerman. Samuelson, Murphy, and Cooper.

1362.     Under such policies, Plaintiff was denied assistance by Defendants Durkan, Holmes, Davison, Diaz, Christensen, Bruce, Ellis, Ladd, Willenberg, Bauer, SPD Doe #1, and Beseler.

1363.     At all relevant times herein, such policies of the King County Sheriff's Office were known to Defendants Constantine, Satterberg, O'Brien, Johanknecht, Cole-Tindall,, Durkan, Diaz, Holmes, and Davison.

1364.   Under such policies, Plaintiff was denied assistance by King County Sheriff deputies.

1365.   At all relevant times herein there existed a policy of the King County Prosecutors Office to refuse to receive, acknowledge, or act upon, a felony criminal complaint, sworn under penalty of perjury, from a private citizen.

1366.   Under such policy, Defendants Satterberg and O'Brien acted, or failed to take action, and as a result Plaintiff was denied assistance by the King County Prosecutors Office.

1367.   Plaintiff had the right to possess and use his 2011 Toyota FJ Cruiser as he saw fit, without interference by Defendants Owen, Lerman, Murphy, Hermsen, Christensen, Ladd, Willenberg, and Diaz.

1368.   Plaintiff had a right under the due process and equal protection clauses of the Washington Constitution and U.S. Constitution not to be deprived of his property interests in his FJ Cruiser under color of law of the policies of Seattle Police Department or King County Sheriff Office.

1369.   At all times relevant herein, Defendants Owen, Lerman, Murphy, and Hermsen, jointly participated in wrongdoing with state actors, Defendants Satterberg, O'Brien, Johanknecht, Cole-Tindall, Durkan, Holmes, Davison, Diaz, Ladd, Willenberg, Christensen, Bruce, Bauer, SPD Doe #1, and Beseler.

1370.    Defendants Owen. Lerman, and Hermsen, Samuelson, and Murphy, evidenced by their actions, or neglect to take action, shared a common goal with Defendants Satterberg, O'Brien, Johanknecht, Cole-Tindall, Durkan, Holmes, Davison, Diaz, Ladd, Willenberg, Christensen, Bruce, Ellis, SPD Doe #1, and Beseler, of violating Plaintiff's property rights to Plaintiff's FJ Cruiser, pursuant to SPD policy.

1371.    Such conduct pursuant to the concerted actions violated Plaintiff's federally protected property rights, and their conduct was subject to 42 U.S.C. §§ 1982, 1983, 1985, 1986.

1372.    Defendants Satterberg, O'Brien, Johanknecht, Cole-Tindall, Abbot, Durkan, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Ladd, Willenberg, Bauer, SPD Doe #1, and Beseler, had a duty and obligation to protect the rights and privileges of the citizens they serve, pursuant to the oaths of office each of them took to uphold and defend the U.S. Constitution and the Washington State Constitution.

1373.    Acting under color of law by acting under the policy of the CITY OF SEATTLE, or the Seattle Police Department to only acknowledge the property rights of registered owners of automobiles, Defendants Durkan, Holmes, Davison, Diaz, Ladd, Willenberg, Christensen, Ellis, Bruce, Bauer, SPD Doe #1, Beseler, Owen, Lerman, Hermsen, Murphy, violated Plaintiff's

right to private property, protected by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

1374.    Acting under color of law by acting under the policy of the King County Sheriff Office to only acknowledge the property rights of registered owners of automobiles, Defendants Satterberg, and O'Brien, Johanknecht, Cole-Tindall, and Abbot, violated Plaintiff's right to private property, protected by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

1375.    Acting under color of law by acting, or neglecting to take action, under the policy of the King County Prosecutor's Office to not acknowledge to not take the sworn felony complaint provided by Plaintiff, Defendants Satterberg, and O'Brien, violated Plaintiff's right to private property, protected by the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

1376.    As a result of the unlawful conduct, or neglect to take action, of Defendants Satterberg, O'Brien, Johanknecht, Cole-Tindall, Abbot, Durkan, Holmes, Davison, Diaz, Christensen, Ellis, Bruce, Ladd, Willenberg, Bauer, SPD Doe #1, Beseler, Owen, Lerman, Hermsen, and Murphy, Plaintiff was deprived of his rights to equal protection of all the laws and of due process of law, of his right to govern his property as he saw fit, and his right to be

secure in his person and papers, all in violation of the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States.

**WHEREFORE,** Plaintiff demands judgment for the violation of his rights against Defendants named herein this Seventh Cause of Action, jointly and severally, for actual, general, special, punitive damages in the amount of $5,000,000.00 and further demands judgment against these defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## TENTH CAUSE OF ACTION
### Conspiracy Against Rights
42 U.S.C. §§1983; 1985 (2),(3)

1377.    Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1378.    Defendants Fauci, Collins, Walensky, Hahn, Cailiff, and Birx, are state actors employed by agencies of the United States government who have failed to exercise objective reasonableness, and in so doing violated the state and federal constitutions, and clearly established state and federal laws, namely title 18 U.S.C. §§ 4, 241 and 242, causing irreparable harm to Plaintiffs.

1379.    Defendants Inslee and Shah are state actors employed by the State of Washington who have failed to exercise objective reasonableness, and in so doing violated the state and federal constitutions, and clearly established state and federal laws, namely title 18 U.S.C. §§ 4, 241 and 242, or RCW 9A.80.010, causing irreparable harm to Plaintiffs.

1380.    Defendants Constantine, Worsham, Durkan, Holmes,  Satterberg, O'Brien, Rogers, KCJ Doe #1, KCJ Doe #2, KCJ Doe #3, KCJ Doe #4, Holloway,  Keenan, Eagle, O'Donnel, Moore, Fuseini, Anderson, Bliey, Abbot, R.C. McMenamy, S.P. Coffin, I.J. Clark, B.J. McClennen, Jones, Narver, Montgomery, Booker are state actors employed by King County who have failed to exercise objective reasonableness, and in so doing violated the state and federal constitutions, and clearly established state and federal laws, namely title 18 U.S.C. §§ 4, 241 and 242, or RCW 9A.80.010, causing irreparable harm to Plaintiffs.

1381.    Defendants Durkan, Holmes, Davison, Diaz, Christiansen, Ellis, Bruce, Ladd, Willenberg, Bauer, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, O'Dell, Chu, Beseler, SPD Doe #1, SPD Doe #2, and SPD Doe #3, are state actors who have failed to exercise objective reasonableness, and in so doing violated the state and federal constitutions, and clearly established state and federal laws, namely title 18 U.S.C. §§ 4, 241 and 242, or RCW 9A.80.010, causing irreparable harm to Plaintiffs.

1382.    Defendants Bourla, Gates, Cliber, Franklin-Bihary, Owen, Lerman, Murphy, Samuelson, Cooper, and Hermsen, are individuals who have operated, or are operating, in joint action with public servants, and failed to exercise objective reasonableness, and in so doing violated the state and federal constitutions, and clearly established state and federal laws, namely title 18 U.S.C. §§ 4, 241 and 242, causing irreparable harm to Plaintiffs.

1383.    Defendants Inslee, Shah, Constantine, Worsham, Durkan, Holmes, Satterberg, Davison, Rogers, Holloway, Keenan, Eagle, O'Donnel, Moore, Fuseini, Anderson, Bliey, R.C. McMenamy, S.P. Coffin, I.J. Clark, B.J. McClennen, conspired to deter Plaintiff, and others similarly situated, by force, threat or intimidation from attending or accessing King County Superior Court in person, or from testifying in person in King County Family Court Case No. 21-5-00680-6 SEA freely, fully, and truthfully, and did deny Plaintiff's adult daughter the right to appear and testify on behalf of Plaintiffs.

1384.    Defendants Inslee, Shah, Constantine, Worsham, Durkan, Holmes, Satterberg, Davison, Rogers, Holloway, Keenan, Eagle, O'Donnel, Moore, Fuseini, Anderson, Bliey, R.C. McMenamy, S.P. Coffin, I.J. Clark, B.J. McClennen, Cliber, Owen, Lerman, Murphy, and Cooper, conspired to deter Plaintiff, and others similarly situated, by force, threat or intimidation for the purpose of impeding, hindering, obstructing, or defeating, in any

manner, the due course of justice in Washington, with the intent to deny Plaintiff the equal protection of the laws.

1385.    Defendants Fauci, Collins, Walensky, Hahn, Cailiff, and Birx, Inslee, Shaw, Constantine, Worsham, Durkan, Holmes, Satterberg, O'Brien, Rogers, KCJ Doe #1, KCJ Doe #2, KCJ Doe #3, KCJ Doe #4, Holloway, Keenan, Eagle, O'Donnel, Moore, Fuseini, Anderson, Bliey, Abbot, R.C. McMenamy, S.P. Coffin, I.J. Clark, B.J. McClennen, Jones, Narver, Montgomery, Booker, Durkan, Holmes, Davison, Diaz, Christiansen, Boyd, Ellis, Bruce, Ladd, Willenberg, Bauer, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, O'Dell, Chu, Beseler, SPD Doe #1, SPD Doe #2, and SPD Doe #3, Bourla, Gates, Cliber, Franklin-Bihary, Owen, Lerman, Murphy, Samuelson, Cooper, and Hermsen, conspired for the purpose of depriving Plaintiffs, and others similarly situated, either directly or indirectly, of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to Plaintiffs within Washington the equal protection of the laws, whereby Plaintiffs were injured in their persons or property, or deprived of having and exercising their rights protected by the First, Fourth, Fifth, Seventh, Ninth and Fourteenths Amendments to the U.S. Constitution, thereby causing irreparable harm to Plaintiffs.

**WHEREFORE,** Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $666,000,000,000.00 and further demands judgment against all Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## ELEVENTH CAUSE OF ACTION
### Action for Neglect to Prevent
### 42 U.S.C. §§ 1982; 1983; 1985(2),(3); 1986

1386.   Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs with the same force and effect as if fully set forth herein.

1387.   Federal Courts have expressed the required elements for an action under § 1986.

> "Thus, § 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and "transgressions of § 1986 by definition depend on a preexisting violation of § 1985. . . ."*Rogin v. Bensalem Township,*616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). Additionally, a § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed. See *Perez v. Cucci,*725 F. Supp. 209, 254 (D.N.J. 1989) (citations omitted), aff'd, 898 F.2d 142 (3d Cir.

1990)"; Chester J. Antieau Gary E. Bair, *Federal Civil Rights Acts* § 281 (1980 Supp. 1993)."

*Clark v. Clabaugh*, 20 F.3d 1290, 1295-96 (3d Cir. 1994)

1388. Defendants had knowledge of an ongoing conspiracy against Plaintiff.

"The nature of conspiracy typically precludes direct evidence or a "blueprint" of the conspiratorial plan, and firsthand knowledge is not required under § 1986."

*Clark v. Clabaugh*, 20 F.3d 1290, 1296 (3d Cir. 1994)

1389. Defendants need not share the class-based animus of those who could reasonably be expected to carry out actions in furtherance of a conspiracy against Plaintiff's rights under 42 U.S.C. § 1985 (2) (3).

Although discriminatory intent is essential in proving a § 1985(3) conspiracy, "it does not follow that a defendant charged under section 1986 with neglecting to intervene in a section 1985(3) conspiracy must personally share the class-based animus." 3 Joseph G. Cook John L. Sobieski, Jr., *Civil Rights Actions* ¶ 13.10 (1993). Accordingly, we hold that negligence is sufficient to maintain a § 1986 claim.

*Clark v. Clabaugh*, 20 F.3d 1290, 1296 (3d Cir. 1994)

1390. Defendants had sufficient power to prevent the wrongs committed against Plaintiff, wrongs which could have been prevented from occurring by reasonable diligence on the part of the Defendants.

We additionally wish to clarify that § 1986 is not directed towards the person who causes a § 1985 violation; rather, it provides a claim "against any person who, knowing that a violation of § 1985 is about to be committed and possessing power to prevent its occurrence, fails to take action to frustrate its execution." *Rogin,* 616 F.2d at 696. Moreover, § 1986 explicitly

imposes liability for damages that a defendant "by reasonable diligence could have prevented."

*Clark v. Clabaugh*, 20 F.3d 1290, 1298 (3d Cir. 1994)

1391.    Defendants acted in concert to deprive Plaintiffs, either directly or indirectly, of the equal protection of the laws or equal privileges and immunities under the law, or for the purpose of preventing or hindering the constituted authorities of Washington from giving or securing to Plaintiffs within Washington the equal protection of the laws, and in so doing Defendants engaged therein did, or caused to be done, acts in furtherance of coercing Plaintiffs to be subject to medical experimentation without informed consent, whereby Plaintiffs were injured in their persons or property or deprived of having and exercising any right or privileges of a citizen of the United States, and as such Plaintiffs so injured or deprived have an action for the recovery of damages occasioned by such injury or deprivation against Defendants.

1392.    Defendants, having knowledge that the wrongs conspired to be done were about to be committed, and having power to prevent, or aid in the preventing, the commission of the same, neglected or refused to do so, and as such wrongful acts were committed, are liable to Plaintiffs for all damages

caused by such wrongful acts, which Defendants by reasonable diligence could have prevented.

1393.    Plaintiffs have an action for the recovery of punitive damages, as well as compensatory damages, arising from the injuries or deprivation of rights caused by Defendants.

**A. Prevent Coerced Medical Experimentation**

1394.    Defendants Diaz, Christiansen, Ladd, Willenberg, Bauer, Beseler, Holloway, Keenan, Eagle, O'Donnel, Cliber, Owen, and Lerman, having knowledge that minor children throughout Seattle Public Schools, including A.R.W., would be subjected to coerced medical experimentation involving an EUA "medical device" face mask, without informed consent, neglected or refused to prevent such wrongful coercion or medical experimentation upon a 13-year-old boy.

1395.    Defendants Holloway, Keenan, Eagle, O'Donnel, Moore, Diaz, Christiansen, Ladd, Willenberg, Bauer, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, Odell, Beseler, Cliber, Franklin-Bihary, Hermsen, Samuelson, Murphy, Lerman, and Cooper, having knowledge that A.R.W. would likely be subjected to coerced medical experimentation involving an EUA Pfizer BioNTech 162b2 GTP, without informed consent, neglected or

refused to prevent such wrongful coercion or medical experimentation upon a 13-year-old boy.

1396.    Defendants Durkan, Holmes, Satterberg, Abbot, Diaz, Ladd, Willenberg, Alden, Wallace, Abbot, McMenamy, Coffin, I. Clark, McClennen, having knowledge that Plaintiff would be subjected to coerced medical experimentation involving an EUA "medical device" face mask, without informed consent, neglected or refused to prevent such wrongful coercion or medical experimentation.

**B. Prevent Child Abuse, (emotional, mental, parental alienation).**

1397.    Defendants Holloway, Keenan, Eagle, O'Donnel, Moore, Cliber, Franklin-Bihary, Hogg, Weiss, Williams, Alden, Wallace, Beseler, A. Clark, and Odell, having knowledge that A.R.W. would be subjected to continued and ongoing child abuse or neglect, pursuant to WAC 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 (1) (d) (5) (e) (i-iv), neglected or refused to prevent such wrongful abuses of A.R.W. perpetrated by Defendants Owen and Lerman.

**C. Prevent Custodial Interference.**

1398.    Defendants Diaz, Christensen, Ladd, Willenberg, Bauer, Doe One, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, Odell, Beseler, Chu, and Cliber, having knowledge that Defendants Owen, and Lerman had engaged in the violation of RCW 9A.40.060, or RCW 9A.40.070 Custodial Interference

regarding Plaintiffs, and were reasonably expected to do so again, neglected or refused to prevent the wrongful acts of ongoing or future violations of Custodial Interference, perpetrated by Defendants Owen and Lerman.

**D. Prevent Disability Discrimination Abuse in King County Jail.**

1399.    Defendants Diaz, Holmes, Durkan, Ladd, Willenberg, Alden, and Wallace,  having knowledge that Plaintiff would be subjected to coerced or forced medical experimentation involving an EUA "medical device" face mask or mesh spit bag being put over Plaintiff's face or head, neglected or refused to prevent such wrongful acts

**E. Prevent Auto Theft, Possession, and Extortion.**

1400.    Defendants Ladd and Willenberg, having knowledge that Plaintiff would be the victim of the felony taking of Plaintiff's FJ Cruiser by Defendants Owen and Lerman, which Defendants Ladd and Willenberg by reasonable diligence could have prevented, neglected or refused to prevent the wrongful taking of the FJ Cruiser, and in so doing caused Plaintiff harm.

1401.    Defendants Keenan, Eagle, O'Donnel, Diaz, Abbot, Satterberg, O'brien, A. Clark, Beseler, Williams, Cliber, Franklin-Bihary, Boyd, Bauer, Doe One, and Cliber, having knowledge that Plaintiff had been the victim of the felony Extortion for the return of his FJ Cruiser by Defendants Owen and Lerman, and that the Extortion was ongoing, which Defendants Keenan, Eagle,

O'Donnel, Diaz, Abbot, Satterberg, O'brien, A. Clark, Beseler, Williams, Cliber, Franklin-Bihary, Boyd, Bauer, Doe One, and Cliber by reasonable diligence could have prevented, neglected or refused to prevent the wrongful Extortion by Defendants Owen, Lerman, and Hermsen, and in so doing caused Plaintiff harm.

1402.    Defendants Keenan, Eagle, O'Donnel, Diaz, Abbot, Satterberg, O'brien, A. Clark, Beseler, Williams, Cliber, Franklin-Bihary, Russ, having knowledge that Plaintiff would be the victim of continued felony possession of his FJ Cruiser by Defendants Owen and Lerman, which Defendants Keenan, Eagle, O'Donnel, Diaz, Abbot, Satterberg, O'brien, A. Clark, Beseler, Williams, Cliber, Franklin-Bihary, Russ, by reasonable diligence could have prevented, neglected or refused to prevent the wrongful possession by Defendants Owen, Lerman, and in so doing caused Plaintiff harm.

### F.  Prevent Deprivation of Plaintiff's Property Rights to His House

1403.    Defendant Russ, having knowledge that Plaintiff would be the victim of the attempted eviction of Plaintiff from Plaintiff's home by Defendant Owen, which Defendant Russ by reasonable diligence could have prevented, neglected or refused to prevent the wrongful acts by Defendant Owen, and in so doing caused Plaintiff harm.

### G. Prevent Perjury, False Statements and Barratry.

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 292

1404.     Defendants Holloway, Keenan, Eagle, O'Donnel, Moore, Abbot, Franklin-Bihary, Christensen, Ladd, Willenberg, Bauer, Doe One, Hogg, Weiss, Williiams, Doe Two, Doe Three, Alden, Wallace, A. Clark, Odell, and Beseler, having knowledge that Plaintiffs had been the victims of Perjury, False Statements, and Barratry by Defendants Cliber and Owen, and having knowledge that Plaintiffs would be the ongoing and future victims of the wrongful acts of Perjury, False Statements and Barratry perpetrated by Defendants Owen or Cliber, which Defendants Holloway, Keenan, Eagle, Diaz, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, Odell, Beseler, by reasonable diligence could have prevented, neglected or refused to prevent such wrongful acts by Defendants Owen and Cliber, and in so doing caused Plaintiffs irreparable harm.

**H. Prevent violation of 7th amendment Trial by Jury.**

1405.     Defendants Rogers, Satterberg, Abbot, Hogg, Weiss, Williams, Doe Two, Doe Three, Alden, Wallace, A.Clark, and Beseler, having knowledge that Defendants Holloway, Keenan, Eagle, O'Donnel, Moore, Cliber, Owen had violated, or intended to violate, *18 U.S.C. §§ 241, 242* by refusing to acknowledge Plaintiff's right to Trial by Jury in King County Case No. 21-5-00680-6 SEA, which Defendants Rogers, Satterberg, Abbot, Hogg, Weiss, Williams, Doe Two, Doe Three, Alden, Wallace, A.Clark, and Beseler by

reasonable diligence could have prevented, neglected or refused to prevent such wrongful acts, and in so doing caused Plaintiffs irreparable harm.

## I. Prevent violation of 1st amendment right for redress of grievances in public courtrooms.

1406.     Defendants Abbot, Beseler, Hogg, Weiss, Williams, Alden, Wallace, A. Clark, Odell, having knowledge that Plaintiff had been wrongfully denied access to the King County Superior Court clerk's office and court rooms by Defendants Rogers, Holloway, Keenan, O'Donnel, Moore, I. Clark, Coffin, McMenamy and McClennen, and that such wrongful acts were about to be committed, neglected or refused to prevent such wrongful acts, causing Plaintiffs irreparable harm.

*WHEREFORE,* Plaintiffs demand judgment for the violation of their civil rights against all the Defendants, jointly and severally, for actual, general, special, punitive damages in the amount of $150,000,000.00 and further demands judgment against all Defendants, jointly and severally, for additional damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## VERIFICATION

I, Kurt A. Benshoof, Plaintiff and Affiant hereto, do hereby declare that the foregoing accounting of facts are true and correct to the best of my knowledge.

I, Kurt A. Benshoof, Plaintiff and Affiant hereto, do hereby declare that the foregoing accounting of facts are true and correct to the best of my knowledge, and will testify viva voce, in open court, under penalty of perjury of the State of Washington, that all herein be true and correct to the best of my knowledge.

Executed this 9th day of September, in the year 2022, at Seattle, Washington.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY AT COMMON LAW**
CERTIFICATE OF SERVICE

I hereby certify that on September _____9_____, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

/s/ _____

Kurt A. Benshoof, Plaintiff, *Pro Se*

PETITION FOR DECLARATORY JUDGMENT AND EMERGENCY INJUNCTION AND VERIFIED CLAIM FOR DAMAGES - 295